# EXHIBIT L

US 20170220742A1

(19) **United States**
(12) **Patent Application Publication**
**Antony et al.**

(10) **Pub. No.: US 2017/0220742 A1**
(43) **Pub. Date: Aug. 3, 2017**

(54) **NETWORK-BASED SYSTEMS AND METHODS FOR PROVIDING THIRD-PARTY UPDATING FOR HEALTHCARE COMMUNICATIONS**

(71) Applicant: **Audacious Inquiry**, Catonsville, MD (US)

(72) Inventors: **Sandeep Antony**, Columbia, MD (US); **Scott Afzal**, Washington, DC (US); **Evan Carter**, Washington, DC (US); **Christopher Brandt**, Baltimore, MD (US); **Yedong Tang**, Columbia, MD (US)

(21) Appl. No.: **15/010,142**

(22) Filed: **Jan. 29, 2016**

**Publication Classification**

(51) **Int. Cl.**
***G06F 19/00*** (2006.01)

(52) **U.S. Cl.**
CPC .................................. ***G06F 19/322*** (2013.01)

(57) **ABSTRACT**

Networks and methods include computers that receive electronic healthcare information from a provider, identify a patient in the received information, and address and deliver an update to the patient and/or a related party. The address is determined from a database that includes information for the patients, including internal, governmental, and proprietary private databases. The update may be delivered along with a healthcare alert to subscribing parties, such that a patient will be made aware that their healthcare information has been shared and related parties can take action with regard to the patient. The update is customizable with any information from the healthcare information and databases and information from subscribing parties and can be further customized based on the addressee. The update can be generated in real-time or following a delay and delivered via any electronic or hard-copy means by the computer.






FIG. 1
Related Art


100
15
31
32
131
135
135
120
50
50a
50b
160
110
112a
112b
112c
112d
113
114
149
200
165
128
160

FIG. 2


S300
Receive Subscriber Parameters
S301
Receive Healthcare Information
S302
Alerting and/or Updating Condition?
N
S305
Filter Healthcare Information
Y
S303
Generate Alert
S310
Determine Patient, Next-of-Kin, and/or Other Third-Party Addressing based on Healthcare Information, Subscriber Parameters, and/or Other Information
S311
Update Patient, Next-of-Kin and/or Other Third-Party of Generated Alert

FIG. 3

# NETWORK-BASED SYSTEMS AND METHODS FOR PROVIDING THIRD-PARTY UPDATING FOR HEALTHCARE COMMUNICATIONS

## BACKGROUND

**[0001]** Healthcare information, including patient medical records and activities, facility encounters, insurance information, provider institutions, billing data, government healthcare support information, etc., across a large population can be aggregated in a Health Information Exchange (HIE) or similar database. For example, providers, insurers, and/or or governmental bodies may gather relevant healthcare information for all patients, providers, insurers, and other healthcare actors in HIEs. Because of the timing of healthcare information generation, the number of independent actors involved in healthcare administration, and privacy/proprietary aspects of healthcare information, HIEs may be largely computerized and operate with large degrees of autonomy and scalability to communicate amongst several independent users. HIEs may further employ healthcare information standards that permit reliable and secure exchange of healthcare information for millions of patients and users. An example of a related art HIE may be Maryland's CRISP network and associated Master Patient Index (MPI).

**[0002]** FIG. **1** is an illustration of a related health information exchange system **10**. As shown in FIG. **1**, system **10** includes a HIE **15** having a healthcare information routing and demographic matching structure **30**, healthcare information database **21**, and a healthcare information logic structure **20**. Healthcare information routing and demographics matching structure **30** may be a digitized or computer-based system that facilitates entry, gathering, and organization of healthcare information from one or more providers **50**.

**[0003]** For example, providers **50** may be emergency rooms, outpatient clinics, urgent care offices, pharmacies, laboratories, assisted living facilities, visiting nurse networks, etc. Providers **50** are conventionally the only source of healthcare information for HIE **15**, acquired via healthcare information routing and demographics matching structure **30**. For example, a provider **50** may provide clinical feeds **36**, patient Admit-Discharge-Transfer (ADT) messages **35** in a known HL7 standard format, and/or any other healthcare information to healthcare information routing and demographics matching structure **30**. The healthcare information, including content from clinical feeds **36** and ADT messages **35**, may include many different types of relevant healthcare information, like patient biographical information, clinical treatment information, medical history, insurance information, provider activities, lab results, charges for services, emergency contacts, next of kin, etc. as well as nonclinical data like administrative codes, provider system IDS, etc. that typically reflect healthcare information on a per patient and/or per transaction basis. Particularly, ADT messages **35** may be generated and transmitted any time a patient has an encounter with a hospital **50**, such as an admittance, discharge, transfer, to/from/within a hospital, and ADT messages **35** include this encounter information.

**[0004]** As shown in FIG. **1**, healthcare information routing and demographics matching structure **30** may include an interface or router **32** that receives clinical feeds **36** and/or ADT messages **35** from hospitals **50**. The router **32** may process or otherwise prepare data for entry into a database **21** and associated master patient index **31**, which matches patient identifying information with content of database **21** to reconcile patient identity within health information exchange **15**.

**[0005]** Conventionally, while only healthcare providers **50** deliver healthcare information to HIE **15**, subscribing entities **60** may access healthcare information stored in database **21** of HIE **15**. The healthcare information may be indexed by master patient index **31** and accessed through healthcare information logic structure **20** in health information exchange **15** that is interfaced with healthcare information routing and demographics matching structure **30**. Subscribers **60** may be, for example, physicians needing comprehensive healthcare information regarding patients who present at urgent care or offices.

**[0006]** Two mechanisms may be provided in system **10** to provide information to subscribers **60**. In one instance, subscribers **60** can login or otherwise access healthcare information logic structure **20** through a query portal **25**. Subscribers **60** can enter queries **26** into portal **25**, which is interfaced with healthcare information logic structure **20**. Logic structure **20** may properly gather and/or associate data from database **21** with master patient index **31** based on the parameters of query **26** and any access/information rules applicable to system **10**. In another instance, subscribers **60** may be delivered direct notifications **27**, such as via email or alert every time an ADT message **35** or other healthcare update occurs to a patient. As such, information flow through conventional HIE **15** is typically wholesale and in a single direction, from healthcare providers **50** to HIE **15**, which serves as a clearinghouse and organizer for all healthcare information, and then to subscribers **60**.

## SUMMARY

**[0007]** Example methods and embodiments manage healthcare information in computer-based networks between healthcare information sources. Example systems and methods are configured to receive several different types of information about patients based on healthcare events, such as admission flags, CCDA documents, clinical feeds, etc. from a healthcare provider like a hospital or clinic through a networked computer configured to interact with the healthcare provider IT. Example systems are configured to identify the patient that is the subject of the healthcare event based on the received information, and figure out how to contact the patient and/or a related party like a guardian, attorney, relative, etc. Example systems can include or be networked with databases or other information sources that describe such addressing information for the patients, such that example networks can reliably determine who and how to update. With that addressing information, when the received healthcare information reflects a serious healthcare event, like an admission or transfer or discharge at a hospital that requires alerting of other subscribing healthcare providers, insurers, governmental agencies, etc., the computerized system can update the patient or interested other party about the event and sharing of information. The update can be tailored to the identified addressee to give easily-understood information, based on their relationship with the patient. Such updating can be done in parallel with, or independent of, alerting subscribers about the healthcare information.

## BRIEF DESCRIPTIONS OF THE DRAWINGS

**[0008]** Example embodiments will become more apparent by describing, in detail, the attached drawings, wherein like elements are represented by like reference numerals, which are given by way of illustration only and thus do not limit the example embodiments herein.

**[0009]** FIG. **1** is an illustration of a related art health information exchange system.

**[0010]** FIG. **2** is an illustration of an example embodiment healthcare notification system.

**[0011]** FIG. **3** is a flow chart illustrating an example method of healthcare information and notification processing and updating.

## DETAILED DESCRIPTION

**[0012]** This is a patent document, and general broad rules of construction should be applied when reading it. Everything described and shown in this document is an example of subject matter falling within the scope of the claims, appended below. Any specific structural and functional details disclosed herein are merely for purposes of describing how to make and use example embodiments. Several different embodiments not specifically disclosed herein may fall within the claim scope; as such, the claims may be embodied in many alternate forms and should not be construed as limited to only example embodiments set forth herein.

**[0013]** It will be understood that, although the terms first, second, etc. may be used herein to describe various elements, these elements should not be limited by these terms. These terms are only used to distinguish one element from another. For example, a first element could be termed a second element, and, similarly, a second element could be termed a first element, without departing from the scope of example embodiments. As used herein, the term "and/or" includes any and all combinations of one or more of the associated listed items.

**[0014]** It will be understood that when element(s) are referred to in relation to one another, such as being "connected," "coupled," "mated," "attached," or "fixed" to another element(s), the relationship can be direct or with other intervening elements. In contrast, when an element is referred to as being "directly connected" or "directly coupled" to another element, there are no intervening elements present. Other words used to describe the relationship between elements should be interpreted in a like fashion (e.g., "between" versus "directly between," "adjacent" versus "directly adjacent," etc.). Similarly, a term such as "connected" for communications purposes includes all variations of information exchange routes between two devices, including intermediary devices, networks, etc., connected wirelessly or not.

**[0015]** As used herein, the singular forms "a", "an," and "the" are intended to include both the singular and plural forms, unless the language explicitly indicates otherwise with terms like "only a single element." It will be further understood that the terms "comprises," "comprising," "includes," and/or "including," when used herein, specify the presence of stated features, values, steps, operations, elements, and/or components, but do not themselves preclude the presence or addition of one or more other features, values, steps, operations, elements, components, and/or groups thereof.

**[0016]** It should also be noted that the structures and operations discussed below may occur out of the order described and/or noted in the figures. For example, two operations and/or figures shown in succession may in fact be executed concurrently or may be executed in the reverse order, depending upon the functionality/acts involved. Similarly, individual operations within example methods described below may be executed repetitively, individually or sequentially, so as to provide looping or other series of operations. It should be presumed that any embodiment having features and functionality described below, in any workable combination, falls within the scope of example embodiments.

**[0017]** The following co-owned applications are incorporated by reference herein in their entireties: U.S. application Ser. No. 13/844,332 to Antony et al. filed Mar. 15, 2013; U.S. application Ser. No. 14/142,625 to Antony et al. filed Dec. 27, 2013; U.S. application Ser. No. 14/189,225 to Antony et al. filed Feb. 25, 2014; U.S. application Ser. No. 14/189,278 to Antony et al. filed Feb. 25, 2014; U.S. application Ser. No. 14/189,306 to Antony et al. filed Feb. 25, 2014; U.S. application Ser. No. 14/445,562 to Antony et al. filed Jul. 29, 2014; and U.S. application Ser. No. 14/872,445 to Antony et al. filed Oct. 1, 2015. Moreover, the example methods and embodiments of the incorporated documents are useable in whole and in part in addition to, or in replacement of, example systems and methods, including individual components, elements, structures, steps, connections, actions, data structures, functionalities, etc. thereof.

**[0018]** The inventors have recognized that existing healthcare notification systems do not have a method for accurately and consistently notifying patients and relevant third parties outside of the healthcare system, such as next-of-kin, emergency contacts, guardians, etc., when the patient experiences a healthcare encounter, and, more particularly, a healthcare encounter of such importance that healthcare providers are alerted about the encounter, especially in the case of admission to a healthcare facility. Patients are thus often unaware of the clinical significance of the healthcare encounter and whether other parties, such as other treating physicians, are aware of the encounter. Relevant third parties are similarly often unaware of the healthcare encounter, and there may be no way of identifying, let alone notifying, such third parties.

**[0019]** The present invention is computer networks, software, and/or hardware that receive healthcare information and selectively update others based on such receipt. The present invention is not—and the inventors and applicant explicitly disclaim—scope over a bare transitory signal or an abstract idea per se. While transitory signals and general concepts of arranging human behavior, comparing information and using rulesets based thereon, and categorizing information, are useable with or in the present invention, the present invention is limited to particular implementations of those signals and concepts in connection with or to improve existing healthcare computerized information technology. In contrast to the present invention, the few example embodiments and example methods discussed below illustrate just a subset of the variety of different configurations that can be used as and/or in connection with the present invention.

### Example Embodiments

**[0020]** FIG. **2** is a diagram of an example embodiment healthcare notification system **100** that can be physically and

logically configured through proper hardware infrastructure and/or software programming to provide targeted healthcare notifications and/or execute example methods of providing healthcare information. As shown in FIG. **2**, example embodiment healthcare notification cluster **110** may be connected to a source of healthcare information, like a health information exchange (HIE) **15** and/or a healthcare provider **50** in example embodiment system **100**. Healthcare notification cluster **110** and the source may be co-located or remote, and may be connected via a dedicated connection or bus in a same setting or over great distances through potentially shared networks such as VPNs, WANs, LANs, or the Internet, including TCP/IP and email exchanges.

**[0021]** Although example embodiment healthcare notification system **100** includes HIE **15** and/or actual providers **50** as healthcare information sources, it is understood that other types of sources for healthcare information are useable with example embodiments and methods. For example, a healthcare provider network system or other database having different data and interface configuration may be used in place of HIE **15**. Still further, HIE **15** could be fully contained within healthcare notification cluster **110** to provide a centralized system for receiving, storing, processing, and/or delivering desired healthcare information to various subscribing providers **160**. HIE **15** and providers **50**, like a hospital or specialist clinic, may be equally be remote and operated by a distinct actor, such as a private corporation or state-operated database independent from cluster **110**.

**[0022]** As shown in FIG. **2**, healthcare notification cluster **110** is configured to receive subscriber information including subscriber parameters **120** from subscribing providers **160**. Example embodiment healthcare notification system **100** is useable with a wide variety of subscribing entities **160** including both healthcare providers and other types of entities, including primary care physicians, specialists, insurance providers, hospitals, labs, clinics, home healthcare providers, government entities, researchers, etc. Subscribers **160** may really be any party who wants—or may be able to provide unique services with—specific healthcare information and notifications.

**[0023]** Subscriber parameters **120** define at least some services and/or actions to be provided by example embodiment system **100**. For example, subscriber parameters **120** may include a roster of patient information—including patient name(s), hospital identifier, member ID, home address, city, state, zip code, date of birth, gender, ssn, phone numbers, membership status, family members, email addresses, etc. and/or portions thereof—identifying patients relevant to subscribers **160**. For example, patient information submitted in parameters **120** may be associated with patients under the care of a primary care physician subscriber, covered by an insurance company subscriber, and/or under the jurisdiction of a governmental subscriber. Other subscriber information may also be transmitted separately and/or as a part of subscriber parameters **120**, including subscriber name, type, service level, enterprise or tax identification numbers, delivery preferences, etc. described in greater detail below.

**[0024]** Subscriber parameters **120** may be input and/or updated into healthcare notification cluster **110** through a subscriber login interface, manually from delivered subscriber parameters **120** (such as from a spreadsheet via email), and/or automatically generated in cluster **110** based on a ruleset. For example, each subscribing provider **160** may provide subscriber parameters **120** to healthcare notification cluster **110** through any type of communication possible within a computer-processor-based network, including email, direct connection, manual input, etc. Subscribing providers **160** may provide multiple subscriber parameters **120** at signup and/or modify existing subscriber parameters **120**, as their patients and needs and desires for healthcare information change.

**[0025]** Healthcare notification cluster **110** may include an input structure **112** to receive, process, and update/store information from subscriber parameters **120** in accordance with a transmission method used in example embodiment cluster **110**. Input structure **112** may be, for example, a module or subroutine within healthcare notification cluster **110**, a dedicated server with independent processing capability, and/or a common processor and database in notification cluster **110**, depending on the configuration of healthcare notification cluster **110**. In example embodiment healthcare notification cluster **110** of FIG. **2**, several input structures **112***a-d* can be used, each with storage capability. Input structures **112***a-d* may be panels individualized to each subscriber **160**; that is, each subscriber **160** may have a one-to-one assigned input structure **112***x* that stores subscription information, including subscriber parameters **120**, only for the one assigned subscriber.

**[0026]** Subscriber parameters **120** stored by input structure **112** may include any kind of subscription information. As discussed above, subscriber parameters **120** may set out a roster of responsive client identifications. Subscriber parameters **120** may further delimit a variety of circumstances for which subscribing providers **160** desire healthcare information, including any combination of events or message types based on which to create notifications, frequency of notifications, delivery format, type preferences, etc. For example, parameters **120** may include a limiting set of events or circumstances for which subscribing providers **160** desire healthcare information. Further, subscriber parameters **120** may include healthcare information formatting, delivery options, analysis, and/or enhancement selections.

**[0027]** Example embodiment healthcare notification cluster **110** is interfaced with a healthcare information source. For example, cluster **110** may include an HIE interface **131** that is configured to communicate with healthcare information sources, such as MPI **31**, HIE interface **32**, and/or entire HIE **15**. Or, for example, cluster **110** may include a provider connection **135** that is configured to communicate directly with providers **50**, like hospitals, doctor's offices, pharmacies, home healthcare workers, clinics, etc. Thus, cluster **110**, via logic core **113** and/or a separate interface, may recognize and understand how to retrieve, read, and/or write specific data structures or information association regimes present within MPI **31**, such as client IDs, patient-identifying information, relationships among entries and records, etc., stored in MPI **31**.

**[0028]** Similarly, cluster **110**, via logic core **113** and/or a separate interface, may recognize and understand how to receive and process healthcare information directly from providers **50** transmitted via direct provider interface **132**. As a specific example of healthcare information from a provider **50**, a hospital **50** may generate a summary of care document(s) during a patient encounter, like a discharge. The summary of care document may include healthcare information like patient biographical information, insurance

information, treatment information, health history, etc., and may be in a standard electronic health record format, like a Consolidated Clinical Document Architecture (CCDA) message. The CCDA message may be sent directly over interface **132**, such as via email using Direct protocol or other HIPAA-compliant secure communications.

**[0029]** Of course, other information types can be transferred over interface **135**, such as clinical feed information and/or all HL**7** messages from providers **50**, which may be thousands or more of HL7 messages per day including ADT-type messages. Cluster **110**, via logic core **113**, an intake module of direct provider interface **132**, and/or another interface can recognize and be able to process information in specific data formats and information relationships sent directly from providers **50**, including CCDA summary of care documents and ADT messages, for example.

**[0030]** Although interfaces **131** and **135** are shown as separate in FIG. **2**, this is only to describe functionalities. It is understood that, with any interface, direct communications from providers **50** to cluster **110** may be achieved. For example, interface **131** may be directly accessed by providers **50** in HIE **15**, such that provider **50** may still directly provide information to cluster **110**. Similarly, HIE **15** may itself be wholly or part of a provider **50**, and/or wholly or part of cluster **110**, such that providers **50** and/or cluster **110** may assume all functionalities of HIE **15**, either shared or exclusively. In these ways, a direct provider interface **135** may be a single interface **131**.

**[0031]** Healthcare notification cluster **110** in example embodiment system **100** may also include a notification engine **114** controlled by logic core **113**. As with each component of cluster **114**, notification engine may be a functionality wholly programmed in logic core **113** or can be a separate module or even a remote server with its own processor and persistent and transient memory that is programmed or configured hardware to perform notification functionality in accordance with example methods or otherwise.

**[0032]** In view of this flexibility of cluster **110** and the necessarily computerized nature of HIEs and example embodiments and methods, as used herein, "logic core" and "(computer) processor" in cluster **110** are defined to include any and all computer hardware processor(s)—whether divided, remote, co-located, and/or singular—and any associated bus and memory that are configured through programming and/or hardware and structural connections to electronically communicate with healthcare IT systems including HIEs, intake and patient processing systems at healthcare providers, insurers' computer systems, and subscribers' computers. Given the thousands, if not millions, of healthcare encounters and transactions and associated pieces of healthcare information received daily and processed in example methods—including filtering, formatting, selective forwarding, and analysis of such data based on subscriber parameters and/or other stored data—it is further understood that logic core **113** must be sufficiently large and powerful to process such data and execute example methods in "real time"—i.e., instantaneous as perceived by a human user or at least within the timeframe of the task or action that triggers example methods.

**[0033]** Notification engine **114** can prepare healthcare notifications from data anywhere in system **100**, such as data derived from ADT messages via interface **135**, MPI **31**, healthcare analysis stored in cluster **110**, and/or any other healthcare information. Notification engine **114** may further provide the prepared information in a subscriber notification. Healthcare notifications may be delivered to subscribing providers **160** through a report **127** sent via email, over a direct or secure network, through the Direct standard, in HL7 format, via Internet services, or even hard copy, based on profile information **120** or other rules. Based on the method used, return receipt or other feedback on delivery of report **127** may be received in cluster **110**. For example, under Direct protocols, a Direct email message sent to a subscriber **160** containing responsive information from a CCDA received and matched with the subscriber by cluster **110**. The receiving subscriber **160** may send a return receipt, such as a Message Disposition Notification, back to the secure Direct email address of cluster **110** acknowledging receipt. Cluster **110** may store such acknowledgement and/or make it available to the original provider **50** that generated the CCDA that ultimately resulted in the notification **127** being sent.

**[0034]** Healthcare notifications may be structured as narratives, tables, spreadsheets, existing encounter formats, etc. by notification engine **114**. For example, notification engine **114** may compile and email out a report of all healthcare information received, filtered, and/or formatted by logic core **113**. Healthcare notifications may also be prepared and stored with notification engine **114** and provided to subscribing providers **160** only upon their access **128** to healthcare notification cluster **110**; a reminder of a new healthcare notification may still be provided in this instance. Still further, a subscribing provider **160** may receive and/or acknowledge notifications via the Direct standard in real-time from notification engine **114**, which may store or further process such acknowledgements.

**[0035]** Notification engine **114** may further include a contact interface **149** to permit cluster **110** to gather information from contact databases **200** about relevant third parties for patients for whom healthcare information is received. For example, notification engine **114** may gather and/or determine next-of-kin, an individual holding power of attorney, emergency contacts, legal guardian, and/or any other third party that may hold an interest in the status of a patient for whom healthcare information is received from providers **50** but is not a subscriber **160** or otherwise involved in the patient's healthcare. Contact database **200** may include a state motor vehicle database including all drivers' next-of-kin, a local property or marital database listing cohabitants or spouses, and/or donor registries, for example. Cluster **110** is configured through contact interface **149** to search, read, cross-reference and/or gather relevant third-party information from contact database, including providing proper credentials to access database **200**.

**[0036]** Similarly, notification engine **114** may be configured to gather and/or logic core **113** may be configured to provide to notification engine **114**, relevant third party information for patients from internal patient databases, subscriber parameters **120**, healthcare information **135**/**131**, and/or MPI **31**. For example, emergency contacts or a power of attorney holder may be present in association with patients in an ADT message received from healthcare providers **50**, and cluster **110** may match such emergency contacts and/or attorneys with a patient, in the same ADT or in healthcare information elsewise received.

**[0037]** Still further, notification engine **114** and/or logic core **113** may be configured to determine patient addressing from internal or external sources. For example, logic core **113** may determine a patient postal address from a received ADT message or a patient email address from a contact database **200** using received healthcare information **131**/**135** and/or subscriber parameters **120** for the patient. In this way, cluster **110** may determine how to contact a patient for whom healthcare information is received and potentially for whom an alert is generated to subscribers **160** to update the patient about the alert.

**[0038]** Because notification engine **114** and/or logic core **113** may determine addressing or other contact information for relevant contacts **165**, such as next-of-kin, legal guardians, the patient itself, etc., an update may be provided to such contacts **165** at desired junctures, and even when contacts **165** are not subscribers **160** or otherwise requesting alerts, updates, or any other interaction with cluster **110**. For example, notification engine **114** may send an email, generate and mail a postcard, send an SMS, make an automated telephone call, etc. to contacts **165** using determined addressing information for the contact relative to healthcare information received. Such updating may occur when an alert or notification is provided to subscribers **160**, to make patients aware their information was shared or alert care-giving third parties of a patient's status, or at other junctures where an update to an otherwise non-requesting contact **165** is desirable to achieve positive healthcare outcomes.

**[0039]** As referenced above in connection with the flexibility of cluster **110**, logic core **113** and any communications interface **131**, **135**, **127**, **128**, **149**, etc. may be a central routine executed on specifically-configured processor networked to an electronic network, individual and distinct servers and routers with independent storage and processors potentially operating on diverse operating protocols, or any other hardware capable of performing electronic communication. Interfaces in example embodiment system **100** can be over the Internet, including standard communications protocols such as TCP/IP or email, and/or through a programmed application configured to interact with and exchange data in dedicated network or intranet. Servers within example embodiment system **100** may include, for example, conventional domain and/or security and encryption protocols for access and authentication as well as processing capacities to retrieve, deliver, and/or format data for use within example embodiment system **100**.

**[0040]** Similarly, although networked elements of example embodiment system **100** are shown in FIG. **2** as individual components with specific groupings and subcomponents, it is understood that these elements may be co-located in a single device having adequately differentiated data storage and/or file systems and processing configurations. Alternatively, the elements shown in FIG. **2** may be remote and plural, with functionality shared across several pieces of hardware, each communicatively connected at adequate speeds to provide necessary data transfer and analysis, if, for example, more resources or better logistics are available in distinct locations. Given the variety of example functions described herein, healthcare notification cluster **110** may be structured in a variety of ways to provide desired functionality. Other divisions and/or omissions of structures and functionalities **112**, **113**, and **114** among any number of separate modules, processors, servers are useable with example embodiment system **100**, including execution on a single machine or among distant, exclusive servers and processors.

**[0041]** Although the example embodiment system **100** of FIG. **2** is a computer-based system that can be configured with and execute example methods, it is understood that example methods are useable with other network configurations, and system **100** is useable with other methods of healthcare delivery.

## Example Methods

**[0042]** Based on healthcare information received from a healthcare information source and potentially subscriber parameters received from a subscriber, a computerized healthcare notification engine can collect, compile, enhance, analyze, and/or provide specific and well-tailored healthcare notifications to subscribers. In the context of FIG. **2**, healthcare notification cluster **110** includes a logic core **113** interfaced with and/or controlling operation of HIE **15** as well as interfaced directly with providers **50**. Logic core **113** may coordinate actions of example methods, including healthcare message processing and analysis, retrieval of healthcare information, delivering healthcare information in accordance with subscriber parameters, delivering notification alerts to relevant patients and third-parties, enhancement of MPI **31**, and/or several other functions discussed further herein. FIG. **3** is a flow chart illustrating an example method of healthcare information and notification processing. Using an example network **100** from FIG. **2**, logic core **113** may provide healthcare message processing in the example method of FIG. **3**. As such, while an example method is described in connection with FIG. **3**, it is understood that structures and reference characters executing the same may refer back to FIG. **2**.

**[0043]** As shown in FIG. **3**, in S**301**, subscriber parameters **120** are received from one or more subscribing providers **160**. S**300** may be executed before, after, and/or in real time with other actions in example methods, such that subscriber parameters **120** may be updated whenever, automatically or at a discretion of a subscriber **160** or other ruleset or actor. In S**301**, receiving subscriber parameters **120** may further include processing and/or storing such parameters by an input structure **112**, such as in input structure/panel **112***b* associated with the subscriber **160**.

**[0044]** In S**301**, healthcare information is received from a source. For example, incoming notifications/information to HIE **15** may be monitored and/or received by healthcare notification cluster **110** through interface connection **131**. Incoming messages may include standard or enhanced ADT messages **35**, CCDA documents, and/or other information from clinical feeds **36**, for example. In S**301**, several messages from several different sources may be received, and receiving S**301** may include processing and/or storing received healthcare information, for example, to extract relevant patient data and/or decrypt or arrange data therein based on message type and source configuration. Although the default rule for all actions, S**301** and S**300** may occur in any order, given proper persistence of subscriber information and healthcare information in a network executing an example method.

**[0045]** In S**302**, treatment of the received healthcare is determined, including whether to generate an alert based on the same. For example, the received healthcare information in S**301** and received subscriber parameters in S**300** are

compared to determine further treatment of the information. For example, in S**302**, logic core **113** may compare a patient identifier in a received ADT message **35** against client-identifying information, such as a name, address, patient ID, birthdate, SSN, etc. and/or portions thereof, from a roster processed by input structure **112** from client parameters **120** so as to identify messages relating to a responsive client, e.g., one in a roster from a subscriber. Logic core **113** may thus determine which messages are responsive to a provider's roster based on the comparison in S**302**. Further, because partial information and several different types of healthcare information may be compared in S**302**, partial or some incorrect information being present in ADT message **35** or picked up from MPI **31** or incorrectly input into a clinical feed **36** may not prohibit a proper match between received healthcare information and with subscription parameters **120**.

**[0046]** In S**303**, if there is a match from the comparison of S**302** or another indicated alerting condition, the matching received information, potentially corrected and/or enhanced from other information as discussed in the incorporated documents, can be prepared for, forwarded to, or otherwise alerted about to matching subscribers. If there is not a match in S**302** or subscriber parameters indicate so, the received information may be filtered out in S**305**, by being discarded or otherwise held without alert and/or being forwarded to a subscriber. Or for example, logic core **113** may process received healthcare information to discard messages or portions of information containing duplicate, incorrect, or low-value contents in S**305**. Several different matching criteria and alerting conditions are discussed in the incorporated documents as examples of when an alert is generated in S**303** and not generated in S**305**, such that subscribers and other interested parties are selectively fitted with only well-matched alerts from the likely thousands of pieces of healthcare information received each hour in any network.

**[0047]** The indication of an alerting condition in S**302** causes delivery of an alert update to another party in S**311**. Such other parties may include the patient who is the subject of the healthcare information received in S**301**, an emergency contact of the patient, a next-of-kin of the patient, an appointed attorney of the patient, a co-habitant, and/or any other party that may be interested in knowing that the patient has suffered an alerting condition and/or that the patient's information has been shared via the alert in S**303**. In this way, a patient may be updated that a subscriber, such as another healthcare provider, an insurer, a parole officer, a government recordkeeper, their specialist, etc., has been alerted about their admission, transfer, or discharge. This may save the patient time in that they no longer need to contact such parties and/or may facilitate healthcare compliance by the patient who now knows that other providers and/or parties are aware of the triggering healthcare information of the patient. Similarly, an interested third-party, such as a family member, representative, or caretaker can be updated about the alerting condition and better respond to the patient's family and/or estate needs.

**[0048]** Updates about the generated alert must be properly matched and delivered to relevant parties in S**311**. Thus, the identity and/or addressing of such relevant third parties may be determined in S**310** from a variety of sources. For example, an external public or proprietary database may be accessed in S**310** to determine patient relevant third party identify and/or addressing. For example, a Department of Motor Vehicles database **200** may store all driver next-of-kin information and/or emergency contact information, and cluster **110** may access such data, potentially through proper authentication or other access controls, to match known patient information with driver emergency contacts' information. Or, for example, a county deed registry database **200** or marital database **200** may be similarly accessed to determine other individuals names and contact information either living with or married to the patient. As even further examples, an emergency medical contact system **200**, online phone number directory **200**, and/or criminal database **200** may all be used to determine emergency contacts and/or representing officers that correlate with the patient in the healthcare information triggering the alerting condition.

**[0049]** Or, for example, an internal database or derived information may be used in S**310** to determine patient relevant third party identity and/or addressing. For example, if the received healthcare information in S**310** is an HL7 ADT message that triggers an alert in S**302** by reflecting an admission of a patient identified in subscriber parameters, that HL7 ADT message, as well as subscriber parameters for that patient may be searched for emergency contacts or other pertinent third-parties. Similarly, a database in cluster **110** may be maintained associating third-party addressing for all patients identified in received patient parameters, gathered over time from internal and/or external sources. Or, for example, cluster **110** may access next-of-kin information or relative information from MPI **31** that matches a patient in an alerting condition.

**[0050]** All sources may be used together in S**310** to determine multiple relevant third parties, determine addressing for the same, and ensure correctness of addressing. For example, while a received CCDA document **135** causing an alerting condition may only list a patient's insurance ID due to lack of patient responsiveness in a healthcare scenario, that insurance ID may be matched against subscriber parameters **120** associating that insurance ID with a patient name and address. The determined patient name may then be referenced against a public database **200** of known names and addresses in nearby communities, generating another name of a person, perhaps a spouse or relative, living at the same address. This information may be paired to determine a proper mailing or physical address for a next-of-kin in S**310**. Of course, several other different combinations of information pieces from relevant information sources, including governmental, proprietary, and public databases, may be used for cross-referencing, matching, and verifying correct addressing information in S**310**.

**[0051]** While S**310** is shown as occurring only in the instance of an alerting condition, such logic is only for efficiency. Determination of relevant third party or patient information in S**310** may occur at any time, such as each time a parameter or piece of healthcare information is received in S**300** or S**301**. Such determinations may be stored in cluster **110**, HIE **31**, or any other repository that associates the third-party or patient addressing information with alerting conditions for that patient. Similarly, determined addressing information in S**310** may be updated or corrected with incoming parameters, information, and/or accessing third-party addressing information such as database **200** in order to assure that best patient contact information and/or best interested third-party identity and addressing is known and useable in example methods.

**[0052]** In S**311**, an update of the alerting condition is generated and sent to the address determined in S**310**. For example, in FIG. **2**, notification engine **114** or another component of cluster **110** sends a notification to interested party **165** in response to receipt of healthcare information (such as over interfaces **135** or **131**) that triggered an alert in cluster **110**. The interested party **165** is matched in both identity and addressing to the triggering information in cluster **110**, such that only correctly-corresponding and properly-addressed updates are generated in S**311**. In S**311**, the interested party may be the patient itself, who is thus made aware that a separate alert has been sent to subscribers and/or providers in S**303**. Or, for example, in S**311**, the interested party may be an emergency contact, a next-of-kin, a guardian, a legal representative, a responsible officer, a co-habitant, a spouse, etc.

**[0053]** The update may take on any format and include a variety of information. For example, the update may be as simple as "An alert was generated for [patient identity]." The update may also include information from (or outright forward) the healthcare information and/or another database like MPI **31**, database **200**, and/or cluster **110**, such as "[Name] was admitted to [hospital name in healthcare information] for [alerting condition] on [date of healthcare information]." The update may be customized based on recipient. For example, if the recipient is the patient, it may read "Your healthcare information was shared in an alert to subscribers"; or, if the interested third-party is determined to be an emergency contact, the update may present information along the lines of "You are listed as an emergency contact for [Patient identity], who was admitted to [hospital from healthcare information]." In this way, updates may be relatively easy to understand based on their recipient and not necessarily as detailed or medically technical as the alert generated in S**303** or the healthcare information received in S**301**. This may allow recipients of updates to best understand the alerting condition and take appropriate, potentially immediate action based on the altering condition. For example, an attorney may meet the patient/client to (re-)draft a will based on a life-threatening alerting condition, a parent may pick up a child based on a discharge alerting condition, and/or the patient may be updated that its treating physician knows about an emergency room admission for a relevant condition.

**[0054]** Updates may be transmitted in any manner in S**311**, potentially based on addressing information. For example, if addressing information determined in S**310** is a postal or physical address, the update generated in S**311** may be a postcard bearing the update information. Or, for example, the update may be an email or SMS alert sent to an email address or telephone number of a next-of-kin determined in S**310**. Still further, a dedicated connection or online interface may be used to receive or log-in and receive updates for relevant third parties and/or the patient. Updates in S**311** may be sent in real-time, such as nearly instantaneously with receipt of healthcare information in S**301** at a speed only possible with computer automation of condition detection, addressing determination, and update generation. Alternatively, updates in S**311** may be delayed, such as a default delay time to avoid over-complication of medically critical situations or based on the healthcare information, such as a delay in notifying a doctor or next of kin until a discharging healthcare information is received in S**301**.

**[0055]** Although in FIG. **3** a single condition is shown as determined in S**302** to generate an alert in S**303** in combination with an update in S**311**, it is understood that alerts and updates may not be so aligned. An alerting condition determined in S**302** may not always trigger an update in S**311** and vice versa. For example, there may be an additional filter or triggering requirement for updates in S**311**, such as a required level of significance or uniqueness for an update to the patient or interested third-party, so that updates are not reporting low-value information or repetitive. Similarly, for example, alerts may not be generated in S**303** due to additional subscription filters, lack of matching, and any of the various limitations on alerting found in the incorporated documents; in this instance, updates in S**311** may still be generated in response to an alerting condition S**302**, even if the ultimate alert is never sent. Of course, if a patient is to be notified in S**311** only in the instance that an alert is generated in S**303**, such as for compliance with information-sharing regulations or patient request, then S**303** and S**311** may both be mandatory to effect this requirement. Patients and third-parties may also opt-in or opt-out of receiving updates in S**311** (such as by return SMS or through patient intake forms, for example), such that updates in S**311** may not exist when alerting occurs in S**303**. Of course, multiple updates to several different parties may correspond to a single alerting condition, just as multiple alerts to several different subscribers may generate only a single update to a patient or interested third-party.

**[0056]** This paragraph offers an example of S**300**-S**311** taken together. Hundreds of thousands of electronic messages, clinical feed data, ADTs, CCDAs, etc. in various formats including HL7 are received at cluster **110** for thousands of different patients from hundreds of different sources each day, including healthcare providers **50** and/or state-operated HIE **15**. A programmed computer processor in cluster **110** processes each piece of this deluge of healthcare information, identifying and/or storing clinically-relevant information in correct association with each patient treated. Eventually, an admit-type ADT message in HL7 standard is received from a flagship hospital emergency room **50**b for patient John Doe in cluster **110**. In real-time, while the emergency room **50**b is still processing patient John Doe for treatment, cluster **110** pulls the spouse **165** of patient John Doe from a county marital registry **200**, using John Doe's full name and address from a subscriber parameter **120** that matched the ADT to find the spouse. Cluster **110** then updates John Doe's spouse **165** using a telephone number in the marital registry of the admission, using hospital information from the ADT message. Cluster **110** also sends an update to John Doe himself the next day, based on an a home address listed in the ADT message, as a postcard indicating that his admission caused his status to be shared with his spouse and alerted to his insurer. These updates are provided while multitudinous other pieces of healthcare information are received at cluster **110**, each with unique handling.

**[0057]** It is understood that example methods may service any number of distinct providers **50** and/or HIEs **15**, including entire community-or-jurisdiction-level populations with hundreds of providers and millions of patients. Example methods are necessarily computerized, and, indeed, the only way to compare all, numerous received pieces of electronic healthcare information in S**303** for alerting conditions across any reasonable healthcare population is with a programmed

and significantly-powered computer processor and memory. As such, the present invention is strictly computerized and significantly limited to implementations that are highly involved with, and improve the function of, computerized healthcare IT.

**[0058]** As with all healthcare information sharing among separate parties, appropriate safeguards—including encryption, encoding, and/or communications protocols like HL7 and Direct—may be placed on any interface and transmission in example embodiments and methods. It is understood that Direct and HL7 protocols are defined by their standard-setting bodies, explained at http://wiki.directproject.org/ and http://www.hl7.org/implement/standards, with current and future editions of these standards included in the terms "HL7" and "Direct." As an example of Direct protocol, "Applicability Statement for Secure Health Transport," version 1.2, Aug. 3, 2015 is incorporated herein in its entirety by reference. Similarly, because providers **50**, HIEs **15**, subscribers **160**, cluster **110**, and third-parties/patients **165** can all be distinct actors with independent owners and operators with distinct interests in healthcare information, appropriate consents and HIPAA-compliant releases may be secured or required from each independent party before any information exchanging or usage is executed in any example method.

**[0059]** Some example methods being described here and in the incorporated documents, it is understood that one or more example methods may be used in combination and/or repetitively to produce multiple options and functionalities for subscribers. Example methods may be performed by properly programming or hardware configuring notification networks to receive healthcare information and subscriber information and act in accordance with example methods. Similarly, example methods may be embodied on non-transitory computer-readable media that directly instruct computer processors to execute example methods and/or, through installation in persistent memory, configure general-purpose computers connected to subscribers and healthcare information sources into specific healthcare notification networks that execute example methods.

**[0060]** Example methods and embodiments thus being described, it will be appreciated by one skilled in the art that example embodiments may be varied through routine experimentation and without further inventive activity. For example, although. Variations are not to be regarded as departure from the spirit and scope of the exemplary embodiments, and all such modifications as would be obvious to one skilled in the art are intended to be included within the scope of the following claims.

What is claimed is:

**1**. A method of managing healthcare information with a notification system electronically networked with a healthcare information source, the method comprising:

electronically receiving healthcare information about a patient from the healthcare information source;

determining, with a computer processor in the notification system, addressing information for the patient or a third party interested in the patient; and

providing, with the computer processor in the notification system, an update about the patient to the third-party at the addressing information if the healthcare information indicates an alerting condition of the patient, wherein the providing is not executed if the healthcare information does not indicate an alerting condition.

**2**. The method of claim **1**, further comprising:

receiving subscriber parameters identifying a plurality of patients from a plurality of subscribers, wherein the third-party is not a subscriber and has not provided subscriber parameters.

**3**. The method of claim **2**, further comprising:

alerting each subscriber of the plurality of subscribers whose subscriber parameters include the patient in the healthcare information.

**4**. The method of claim **3**, wherein the third party is the patient, and wherein the update indicates that the alerting occurred.

**5**. The method of claim **1**, wherein the third party interested in the patient is at least one of an emergency contact of the patient, a next-of-kin of the patient, and a guardian of the patient.

**6**. The method of claim **1**, wherein the determining the addressing information includes accessing a database including the addressing information stored in connection with the patient.

**7**. The method of claim **6**, wherein the database is a third-party database owned and operated independently from the computer processor.

**8**. The method of claim **7**, wherein the third party interested in the patient is an emergency contact, and wherein the database is a department of motor vehicles database associating the patient with the emergency contact.

**9**. The method of claim **1**, wherein the healthcare information is an HL7 ADT message, and wherein the determining the addressing information uses information in the ADT message.

**10**. The method of claim **9**, further comprising:

receiving a plurality of subscriber parameters from a plurality of subscribers, wherein the alerting condition is based on the subscriber parameters, and wherein the determining the addressing information further uses information in the subscriber parameters.

**11**. The method of claim **1**, further comprising:

if the healthcare information does not indicate an alerting condition of the patient, discarding the healthcare information.

**12**. A method of managing healthcare information in a healthcare network, the method comprising:

receiving, at the healthcare network, subscriber parameters identifying a plurality of patients from a subscriber;

electronically receiving, at the healthcare network, a plurality of ADT messages in the HL7 standard from a computerized healthcare information source;

determining, with a computer processor in the healthcare network, which of the ADT messages match patients from the parameters;

for each ADT message that matches a patient based on the determining, providing, with the computer processor in the healthcare network, a healthcare notification to the subscriber, wherein the healthcare notification identifies the matching patient, and wherein the providing is not executed for ADT messages that do not match patients based on the determining; and

for each healthcare notification provided to a subscriber, providing, with the computer processor, an update to a non-subscriber, wherein the update reflects the receipt of the ADT message.

**13**. The method of claim **12**, wherein the non-subscriber is the patient, and wherein the update indicates that the providing the healthcare notification occurred.

**14**. The method of claim **13**, further comprising:

determining addressing information for the patient from at least one of the ADT message, the subscriber parameters, and an outside database.

**15**. The method of claim **12**, further comprising:

determining addressing information for the non-subscriber from at least one of the ADT message, the subscriber parameters, and an outside database.

**16**. The method of claim **15**, wherein the non-subscriber is an emergency contact, and wherein the outside database is a department of motor vehicle database associating the patient with the emergency contact.

**17**. A computer processor networked with a plurality of healthcare providers, wherein the computer processor is configured to:

electronically receive healthcare information about a patient from the healthcare information source;

determine addressing information for the patient or a third party interested in the patient; and

provide an update about the patient to the third-party at the addressing information if the healthcare information indicates an alerting condition of the patient, wherein the providing is not executed if the healthcare information does not indicate an alerting condition.

**18**. The computer processor of claim **17**, wherein the computer processor is further configured to,

alert each subscriber of the plurality of subscribers whose subscriber parameters include the patient in the healthcare information.

**19**. The computer processor of claim **18**, wherein the third party is the patient, and wherein the update indicates that the alerting occurred.

**20**. The computer processor of claim **17**, wherein the third party interested in the patient is at least one of an emergency contact of the patient, a next-of-kin of the patient, and a guardian of the patient.

* * * * *