**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| AUDACIOUS INQUIRY LLC and COLLECTIVE MEDICAL TECHNOLOGIES, INC., <br><br>         Plaintiffs, <br><br> v. <br><br> CHESAPEAKE REGIONAL INFORMATION SYSTEM FOR OUR PATIENTS and CRISP SHARED SERVICES, INC. AND AFFILIATES, <br><br>         Defendants. | Civil Action No. 25-cv-2264 |

**REPLY IN SUPPORT OF DEFENDANTS'**
**MOTION TO DISMISS AMENDED COMPLAINT**

# TABLE OF CONTENTS

I.     INTRODUCTION ........................................................................................................ 1

II.    ARGUMENT .............................................................................................................. 1

    A.  The Asserted Patents Are Ineligible Under 35 U.S.C. § 101............................................. 1

        1.   The Court must assess patent eligibility independently................................................. 1

        2.   The '194 Patent is ineligible under 35 U.S.C. § 101. ................................................. 2

        3.   The '962 and '475 patents are ineligible under 35 U.S.C. § 101................................. 5

    B.  Assignor Estoppel Is Inapplicable In This Case ............................................................. 7

        1.   It makes no sense to extend assignor estoppel to a joint owner................................... 7

        2.   Plaintiffs conflate *Minerva's* exceptions for pre-application assignments and that for "materially broadened claims."........................................................................... 8

        3.   The "later legal development" exception applies. ..................................................... 9

    C.  Plaintiffs' Unfair Competition Claim Should be Dismissed............................................ 11

III.   CONCLUSION.......................................................................................................... 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abraxis Bioscience, Inc. v. Navinta LLC*,
 625 F.3d 1359 (Fed. Cir. 2010)..................................................................................... 7

*Aloi v. Moroso Inv. Partners, LLC*,
 No. CIV.A. DKC 11-2591, 2012 WL 4341741 (D. Md. Sept. 20, 2012).................................. 8

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
 841 F.3d 1288 (Fed. Cir. 2016)............................................................................. 1, 4, 6

*Bot M8 LLC v. Sony Corp of Am.*,
 4 F.4th 1342 (Fed Cir. 2021) ....................................................................................... 5

*Carson Optical, Inc. v. Prym Consumer USA, Inc.*,
 11 F. Supp. 3d 317 (E.D.N.Y. 2014) ........................................................................... 15

*Carter v. Va. Dep't of Game & Inland Fisheries*,
 No. 3:16-cv-661, 2018 WL 3614975 (E.D. Va. July 27, 2018)............................................. 12

*ChargePoint, Inc. v. SemaConnect, Inc.*,
 920 F.3d 759 (Fed. Cir. 2019)...................................................................................... 6

*Clarilogic, Inc. v. FormFree Holdings Corp.*,
 681 F. App'x 950 (Fed. Cir. 2017) ............................................................................... 5

*CLS Bank Int'l v. Alice Corp. Pty*,
 717 F.3d 1269 (Fed. Cir. 2013)................................................................................... 11

*CLS Bank Int'l v. Alice Corp. Pty, Ltd.*,
 768 F. Supp. 2d 221 (D.D.C. 2011) ............................................................................ 11

*Contour IP Holdings LLC v. GoPro, Inc.*,
 113 F.4th 1373 (Fed. Cir. 2024) .................................................................................. 3

*Desktop Alert, Inc. v. Alertus Techs, LLC*,
 No. 22-cv-337, 2024 WL 3819123 (D. Md. Aug. 14, 2024) ................................................ 4

*Dev. Pros. Inc.-Making Cents Int'l LLC v. Bank of Am., N.A.*,
 No. 1:24-cv-1529 (RDA/LRV), 2025 WL 2734557 (E.D. Va. Sep. 25, 2025)....................... 12

*directPacket Research, Inc. v. Polycom, Inc.*,
 No. 24-1147, 2025 WL 1752247 (Fed. Cir. June 25, 2025).................................................. 6

*Elec. Power Grp. LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016)........................................................................ 2, 5, 6

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
    955 F.3d 1317 (Fed. Cir. 2020)............................................................................... 6

*Fina Oil & Chem. Co. v. Ewen*,
    123 F.3d 1466 (Fed. Cir. 1997)............................................................................... 9

*Halscott Megaro, P.A. v. McCollum*,
    66 F.4th 151 (4th Cir. 2023) ............................................................................ 13, 14

*Harman v. Unisys Corp.*,
    356 F. App'x 638 (4th Cir. 2009) .......................................................................... 11

*In re Bd. of Trs. of the Leland Stanford Junior Univ.*,
    991 F.3d 1245 (Fed. Cir. 2021)................................................................................ 2

*In re Gale*,
    856 F. App'x 887 (Fed Cir. 2021) ........................................................................... 5

*Intell. Ventures I LLC v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017)................................................................................ 7

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017).............................................................................. 10

*James v. j2 Cloud Servs., LLC*,
    887 F.3d 1368 (Fed. Cir. 2018)................................................................................ 7

*JET Sys., LLC v. J.F. Taylor, Inc.*,
    No. DKC 24-1628, 2025 WL 2659842 (D. Md. Sep. 17, 2025) ............................ 12

*Kashdan v. George Mason Univ.*,
    70 F.4th 694 (4th Cir. 2023) .................................................................................. 12

*Kong Co., LLC v. Bounce Enters., LLC*,
    No. 1:22-cv-02001-DDD-SBP, 2025 WL 2208136 (D. Colo. Mar. 27, 2025) ....... 10

*LKQ Corp. v. GM Global Tech. Operations LLC*,
    102 F.4th 1280 (Fed. Cir. 2024) ........................................................................... 10

*Lowy v. Daniel Def., LLC*,
    No. 1:23-cv-1338, 2024 WL 3521508 (E.D. Va. July 24, 2024)............................. 12

*Magnivision, Inc. v. Bonneau Co.*,
    115 F.3d 956 (Fed. Cir. 1997)................................................................................. 2

*Medrad, Inc. v. MRI Devices Corp.*,
   401 F.3d 1313 (Fed. Cir. 2005)................................................................ 1

*Minerva Surgical, Inc. v. Hologic, Inc.*,
   594 U.S. 559 (2021).................................................................... 7, 8, 10

*Murj, Inc. v. Rhythm Mgmt. Grp., LLC*,
   622 F. Supp. 3d 109 (D. Md. 2022) ................................................ 2, 4, 5, 6

*Parker v. Flook*,
   437 U.S. 584 (1978)........................................................................... 2

*People.ai, Inc. v. Clari Inc.*,
   No. 22-1364, 2023 WL 2820794 (Fed. Cir. Apr. 7, 2023) ................................. 4

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
   522 F.3d 1299 (Fed. Cir. 2008).............................................................. 8

*Rivers v. Roadway Express*,
   511 U.S. 298 (1994)..................................................................... 9, 10

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018).............................................................. 6

*Secured Mail Sols., LLC v. Universal Wilde, Inc.*,
   873 F.3d 905 (Fed. Cir. 2017)............................................................... 7

*Two-Way Media Ltd. v. Comcast Cable Commc'ns*,
   *874* F.3d 1329 (Fed. Cir. 2017)......................................................... 5, 6

*Van Buren v. Walmart, Inc.*,
   611 F. Supp. 3d 30 (D. Md. 2020) ..................................................... 11, 12

*Vogel v. RMAC Tr. Series 2016-CTT*,
   No. 1:24-cv-02182 (RDA/LRV), 2025 WL 1969912 (E.D. Va. July 16, 2025) .................. 12

*Wheelz Up, LLC v. Cordero*,
   No. DKC 24-212, 2025 WL 326950 (D. Md. Jan. 28, 2025) ................................. 12

**Statutes**

35 U.S.C. § 101 ...................................................................... *passim*

Fla. Stat. Ann. § 120.57 .................................................................. 13

Fla. Stat. Ann. § 120.57(3)(e) ........................................................... 13

Fla. Stat. Ann. § 120.57(3)(f) ........................................................... 13

**Regulations**

Fla. Admin. Code r. 28-106.206 ................................................................................. 13

Fla. Admin. Code r. 28-106.211 ................................................................................. 13

Fla. Admin. Code r. 28-106.213 ................................................................................. 13

Fla. Admin. Code r. 28-106.217 ................................................................................. 13

## I.    INTRODUCTION

Plaintiffs do not dispute—nor could they—that the proper approach for determining whether the Asserted Patents are directed to patent ineligible subject matter is to consider the result in past cases. Indeed, one of Plaintiffs' most-cited cases, *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, endorses this approach: "[T]he decisional mechanism courts now apply is to examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided…. We shall follow that approach here." 841 F.3d 1288, 1294 (Fed. Cir. 2016). Yet Plaintiffs ignore almost all of the cases relied on by CRISP and CSS, including binding Federal Circuit precedent. Instead they resort to inflating the supposed "technical" nature of the claims (despite their facial abstractness and similarity to ineligible claims) and purported unclaimed benefits. As for the '962 and '475 Patents, Plaintiffs rely on assignor estoppel as a last refuge, but that limited doctrine makes no sense as applied to a joint owner and, regardless, is subject to exceptions even when one takes the allegations in the Complaint as true.

Finally, Plaintiffs' opposition makes plain that they can plead ***no actual facts*** consistent with Rule 11 to support the allegations that CRISP or CSS somehow lied to the Florida AHCA. The allegation is implausible, and, without it, Plaintiffs' unfair competition claim boils down to preempted allegations arising from the alleged patent infringement.

The complaint should be dismissed with prejudice in its entirety.

## II.    ARGUMENT

### A.    The Asserted Patents Are Ineligible Under 35 U.S.C. § 101.

#### 1.    The Court must assess patent eligibility independently.

Not only is this court not bound by a prior patent examiner's determination, it must ***independently*** make its own determination. *See Medrad, Inc. v. MRI Devices Corp.*, 401 F.3d 1313, 1322 (Fed. Cir. 2005) ("[A] court is not bound by the PTO's actions and must make its own

independent determination of patent validity"); *see also Magnivision, Inc. v. Bonneau Co*., 115 F.3d 956, 960 (Fed. Cir. 1997) ("A court may invalidate a patent on any substantive ground, whether or not that ground was considered by the patent examiner.").

Regardless, CRISP and CSS do not merely "recycle" arguments raised before the Examiner, nor did the Examiner have the bounty of precedent this Court now has to guide it. *See* Dkt. 28 at 18. Time and again, courts routinely find claims comparable to those at issue ineligible. Plaintiffs chose not to address most of those cases in opposition, and that silence speaks volumes. It is particularly glaring with respect to *Murj, Inc. v. Rhythm Mgmt. Grp., LLC*, 622 F. Supp. 3d 109 (D. Md. 2022)—a District of Maryland case finding claims similar to the Asserted Patents inelgible and which Plaintiffs wave-off as "materially different" without explanation. In *Murj*, the claims were to a "medical device data platform," that included "integration devices" for gathering data from devices using different "protocols" and aggregating said data into a "unified format" wherein a "portion" of that data could be provided to providers via a portal. *See id*. at 111-12.

## 2. The '194 Patent is ineligible under 35 U.S.C. § 101.

### a) *Alice* Step One: The '194 Patent is directed to an abstract idea.

As explained in the Motion, the '194 Patent claims the abstract idea of gathering and analyzing data. Dkt. 28-1 at 13-14. While Plaintiffs dress up the calculation of "readmission time" as somehow rendering the claims eligible, that is not enough. Many ineligible claims involve calculations—often more complicated than that of the '194 Patent.[1] *See, e.g., Elec. Power Grp. LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016); *see also* Dkt. 28-1 at 13-14. The

---

[1] Indeed, solely claiming mathematical formulas—even for specific purposes—has long been considered "quintessential" ineligible subject matter even before *Alice*. *See Parker v. Flook*, 437 U.S. 584, 595 (1978) ("[[I]f a claim is directed essentially to a method of calculating, using a mathematical formula, even if the solution is for a specific purpose, the claimed method is nonstatutory."); *see also In re Bd. of Trs. of the Leland Stanford Junior Univ.*, 991 F.3d 1245, 1251 (Fed. Cir. 2021) (holding that mathematical calculations included in claim terms that merely "yield[] different or better results[] [do] not render patent eligible subject matter").

calculation here is mere subtraction on a generic processor, as explained in Claim 1: "determining, with the computer processor… a readmission time… wherein the readmission time is a difference in time between the first HL7 ADT message and the second HL7 ADT message." This is abstract.

Plaintiffs argue the '194 Patent solves the problem of "overwhelming volume of irrelevant information that came from disparate sources, such that important information for specific events or patients was not easily discernable and timely delivered to healthcare providers." Dkt. 31 at 16. This is not a technical problem and has nothing to do with computer network operations or any purported improvements thereto. At best, it is a human data entry problem. As discussed in the Motion, the amount and type of data does not matter for abstractness. *See* Dkt. 28-1 at 10. Yet Plaintiffs go on to argue the '194 Patent "solved" this "problem." But the "solution," per Plaintiffs, appears to be that, by using simple math to determine a readmission time, humans need not figure it out themselves. That is not a technical solution and improves no computer system or network.

Plaintiffs' attempt to analogize to the claims upheld in *Contour IP Holdings LLC v. GoPro, Inc.* 113 F.4th 1373 (Fed. Cir. 2024) is misplaced. The claims in *Contour* described improving the functionality of a technical device—"an improved POV [point-of-view] camera"—by configuring it "to record low- and high-quality data streams in parallel, followed by the low-quality data stream's wireless transfer to a remote device." *Id.* at 1379. There is no improvement here.

Plaintiffs reliance on statements that **they themselves made** during patent prosecution is also misplaced. *See* Dkt. 31 at 17. First, these statements often mischaracterized what the claims actually say, but more importantly the Examiner did not actually accept the cited statements. The cited remarks are from August 14, 2018, and the Examiner rejected them and maintained the § 101 rejection in a subsequent office action on October 5, 2018. *See* Dkt. 31-1 at 14-21, 31-34.

      **b)**    *Alice* **Step Two: The '194 Patent lacks an inventive concept.**

Plaintiffs' heavy reliance on *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.* for an inventive concept in the '194 Patent is grossly misplaced. Dkt. 31 at 17-19. Plaintiffs overlook what the Federal Circuit **actually relied on** to find the *Amdocs* claims patent eligible, i.e., that the term "enhanced" as construed required a detailed and specific "distributed" networking architecture that was considered an improvement over existing computer networks. *Amdocs*, 841 F.3d at 1300-01.[2] The '194 Patent claims are not directed to distributed networking or improvements thereto. Instead, they claim generic and conventional computer components with no special purpose structure.

The claims at issue are more like those in *People.ai, Inc. v. Clari Inc*. Indeed, *People.ai* expressly distinguished *Amdocs*, finding that both the problem (slow and error-prone data entry) and the claimed solution (automation of manual data entry) at issue were conventional despite arguments that echo Plaintiffs'. No. 22-1364, 2023 WL 2820794, at *14 (Fed. Cir. Apr. 7, 2023).

The '194 Patent claims are also unlike those in *Desktop Alert, Inc. v. Alertus Techs, LLC*. In *Desktop*, the Court relied on steps "numbered in a sequence or otherwise set to be performed at a prescribed time" and an unconventional "triggering step" that increased the system's polling frequency and speed (*e.g.*, improving the system itself). No. 22-cv-3337, 2024 WL 3819123, at *10 (D. Md. Aug. 14, 2024). The '194 Patent claims include no such ordered steps nor improvements. "Broad, results-oriented language alone cannot pass *Alice* step two." *Murj*, 622 F.Supp.3d at 117.

At base, comparing data to make a determination as covered by the '194 Patent is wholly conventional, akin to claims previously been held ineligible, as CRISP and CSS pointed out in the opening brief with a litany of unrebutted cases. *See* Dkt. 28-1 at 13-14 (collecting cases).

---

[2] The Federal Circuit in *Amdocs* explained that "the claim's enhancing limitation necessarily requires that these generic components operate in an unconventional manner to achieve an improvement in computer functionality," because of its prior claim constructions whereby "we construed 'enhance' as being dependent upon the inventions distributed architecture. We construed 'enhance' as meaning 'to apply a number of field enhancements in a 'distributed fashion.'" *Amdocs*, 841 F.3d at 1536-37 (internal citations omitted).

3.      **The '962 and '475 patents are ineligible under 35 U.S.C. § 101.**

a)  *Alice* **Step One: The '962 Patent is directed to an abstract idea.**

Plaintiffs once again ignore the weight of precedent cited in the Motion, including *Murj* and *Elec. Power*. *See* Dkt. 28-1 at 9-10. In particular, both *Murj* and *Elec. Power* concern the sort of aggregation/multiplexing of data claimed by the '962 Patent, and *Murj* actually involved claims gathering data from disparate sources in disparate formats and—to use Plaintiffs words— "transform[ing]" said input data into a "unified" standard format. *See Murj*, 622 F. Supp. 3d at 111; *see also Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 F. App'x 950, 954 (Fed. Cir. 2017) (finding claim abstract where it included a step for "transforming the data into a desired format").

Meanwhile, Plaintiffs' attempt to distinguish other cases falls flat. *Two-Way Media Ltd. v. Comcast Cable Commc'ns* remains extremely relevant. The claims at issue there explicitly required "converting" a plurality of data streams into data streams that complied with a "network communication protocol." 874 F.3d 1329, 1334-35 (Fed. Cir. 2017). Plaintiffs' attempt to distinguish the claims from *Two-Way* (and of *Bot M8 LLC v. Sony Corp of Am.,* 4 F.4[th] 1342 (Fed Cir. 2021)) as directed to "functional results" ignores that the Asserted Patents are also directed to functional results—no specifics on ***how*** to aggregate/multiplex data or convert it are provided.

Plaintiffs' attempt to distinguish *In re Gale*, 856 F. App'x 887, 889 (Fed Cir. 2021) because it lacks the word "multiplexing" fairs no better. *Gale* found claims for "collecting" and "analyzing" information ineligible, which is akin to "aggregating" or "multiplexing" information in the '962 Patent. The patent does not explain ***how*** one should accomplish said aggregating/multiplexing. As explained in the opening brief, the specification merely equates aggregating and multiplexing, using them interchangeably without further explanation. *See* Dkt. 28-4 at 4:36-38.

b)  *Alice* **Step Two: The '962 Patent lack an inventive concept**

The '962 Patent is not directed to an inventive concept. Plaintiffs attempt to argue that the

'962 Patent claims are like those found eligible in *Amdocs* because "claim 1 covers a universal interface" and the specification discloses "a data stream engine" and "a data cluster." Dkt. 31 at 23-24. However, this reading of *Amdocs* again ignores the claim construction actually relied on by the Federal Circuit. *See* § II.A.1.c, *supra*. What is more, these alleged inventive concepts are ***not actually recited in the asserted claims***. *See Two-Way*, 874 F.3d at 1338 (inventive concept must be found in ***claims***, not the specification); *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("[T]he § 101 inquiry must focus on the language of the Asserted Claims.")

### c)     The '475 Patent is ineligible under *Alice* Step One.

Plaintiffs again ignore the many analogous cases, including *Murj* and *Elec. Power*. *See* Dkt. 31 at 22-23. Nor do Plaintiffs address (nor dispute) that use of specific standards cannot render a claim ineligible—yet appear to argue the opposite.[3] The only case Plaintiffs purport to distinguish is *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317 (Fed. Cir. 2020) on the basis that the Court found no disclosure of structure for "interface component"—yet there is also no disclosed structure (and the opposition identifies none) for the '475 Patent's "interface."

### d)     *Alice* Step Two: The '475 Patent lacks an inventive concept.

Finally, Plaintiffs argue cursorily that the '475 Patent covers an inventive concept based on no more than conclusory statements. *See* Dkt. 31 at 24-25. Like the '962 Patent, Plaintiffs argue the '475 Patent teaches a "cluster" as part of its argument for inventiveness but fails to show that a "cluster" is actually claimed in the patent. *Id.* It is not. Even if a concept in the specification were inventive, it must be claimed for eligibility under §101. *Two-Way*, 874 F.3d at 1338.

---

[3] *See directPacket Research, Inc. v. Polycom, Inc.*, No. 24-1147, 2025 WL 1752247, at *5 (Fed. Cir. June 25, 2025) (recitation of "new and simplified intermediate communication protocol comprised of the common elements of the communication protocols" remains abstract); *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168 (Fed. Cir. 2018) ("[E]ven if a process of collecting and analyzing information is 'limited to particular content' or a particular 'source,' that limitation does not make the collection and analysis other than abstract."); *see also* Dkt. 28-1 at 10, 13.

**B.    Assignor Estoppel Is Inapplicable In This Case**

Application of assignor estoppel against CRISP and CSS is fundamentally inconsistent with *Minerva Surgical, Inc. v. Hologic, Inc.*, 594 U.S. 559 (2021).

### 1.    It makes no sense to extend assignor estoppel to a joint owner.

There is no plausible "dispute," taking the allegations in the complaint as true, that Audacious has always been at least a joint owner of the '962 and '475 Patents. A conclusory self-serving allegation that CRISP "owned" all rights in the parent applications outright and in their entirety is contradicted by the very agreements on which Plaintiffs purport to rely. In particular, the reference to "discoveries" in the 2009 Master Professional Services Agreement ("MSA")—the only basis on which Plaintiffs rely for the proposition that CRISP was the sole original owner of the Asserted Patents—could not have possibly assigned Audacious's original ownership interest to CRISP as a matter of law. Under that agreement, Audacious was "an independent contractor, not… an employee" of CRISP, and only express assignments specifically referring to patent rights or inventions can be effective assignments of patent rights; more generic references will not suffice. *See James v. j2 Cloud Servs., LLC*, 887 F.3d 1368, 1374-75 (Fed. Cir. 2018) (construing agreement that company "shall become the sole owner of all code and compiled software solutions" not to assign contractor's patent rights).[4] The MSA's vague reference to "discoveries" could not assign Audacious's original interest to CRISP and as an original joint owner, Audacious

---

[4] Courts routinely interpret assignment contracts when granting motions to dismiss. Indeed, whether an assignment actually conveys title to a patent often arises when determining if a plaintiff has standing. *See, e.g., Intell. Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1322-24 (Fed. Cir. 2017) (affirming dismissal for lack of standing based on contract interpretation); *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1365 (Fed. Cir. 2010) (reversing denial of dismissal for lack of standing based on contract interpretation). To the extent Plaintiffs complain that the actual agreements are outside the pleadings, that is a problem of their own making. The agreements are properly considered on a motion to dismiss because, as detailed in CRISP and CSS's motion, Plaintiffs put them at issue by relying on them in the Amended Complaint and/or because they are a matter of public record. *See* Dkt. 28-1 at 20, n.8. "[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice or by exhibit'…." *Secured Mail Sols., LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017). Thus, the Court should consider the fact that the MSA, as a matter of law, fails to assign all of Audacious's patent rights to CRISP and acknowledge that Plaintiffs have always been at least joint owners of the patents who cannot rely on assignor estoppel.

could never have reasonably relied on any representation of validity by CRISP.

Plaintiffs' reliance on *Aloi v. Moroso Inv. Partners, LLC*, No. CIV.A. DKC 11-2591, 2012 WL 4341741 (D. Md. Sept. 20, 2012) to argue that contract interpretation issues preclude dismissal is misplaced. In *Aloi*, the relevant contract was so ambiguous the parties even disputed whether the "new company" that allegedly failed to perform existed at all. *Id.* at *9. There is no such ambiguity here, and the motion to dismiss should be granted.

### 2.    Plaintiffs conflate *Minerva's* exceptions for pre-application assignments and that for "materially broadened claims."

Plaintiffs' efforts to overcome the exception that applies when an assignee obtains its rights via a contractually obligated assignment must fail at least because they improperly conflate it with a separate exception for post-assignment changes in claim scope.

*Minerva* describes these as two ***distinct*** exceptions, one where there is a later change in (but not necessarily a broadening of) claim scope and another where an inventor is contractually obligated to assign inventions and the assignee (here, Audacious) is responsible for deciding what patents to seek.[5] In the latter situation, the relative scope of the claims in the first patent application versus later patent applications does not matter. The exception applies whenever the assignor lacks an opportunity to warrant validity as to claims of any scope because he was preemptively obligated to assign all of his rights, regardless of his subjective belief as to patentability.

This obligation to assign exception clearly applies here.[6] There is no dispute that all

---

[5] *Minerva*, 594 U.S. at 576-577 (providing "[o]ne example of non-contradiction… when the assignment occurs before an inventor can possibly make a warranty of validity as to specific patent claims," such as when "[a]n employee assigns to his employer patent rights in any future inventions he develops during his employment; the employer then decides which, if any, of those inventions to patent," and a separate "example" in which a "post-assignment development—a change in patent claims—can remove the rationale for applying assignor estoppel").

[6] The "change in scope" exception also clearly applies. *Minerva* provides that an exception applies when there is "a change in patent claims" that extends the scope of the claims to matter that the relevant inventor or patent owner did not assign. *Minerva*, 594 U.S. at 577. One way claim scope is broadened through the filing of a continuation-in-part application ("CIP"), which necessarily adds "new matter" not present in the parent application. *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 n.3 (Fed. Cir. 2008). Where, as here (*see* Dkt. 28-1 at 21-22), a CIP adds

inventors – including Mr. Horrocks – had a contractual obligation to assign their rights in any purported inventions before the assignments were executed, as expressly stated in the publicly available assignments themselves.[7] *E.g.,* Dkts. 28-10 – Dkt. 28-14. To the extent Plaintiffs now point to alleged "express representations of validity" and "pledges to refrain from 'acting in any manner that may support an invalidity challenge'" in those contractually obligated assignments, such language is irrelevant. There is no authority in *Minerva* or elsewhere for the proposition that an assignee can circumvent the exception for prior obligations to assign simply because the obligated assignments – typically drafted by the assignee itself – contain such boilerplate language.

The agreements Plaintiffs rely on are unambiguous and properly considered, and they are determinative as to the inapplicability of assignor estoppel in this case.

### 3.    The "later legal development" exception applies.

Plaintiffs misconstrue when *Minerva's* "later legal development" exception applies by conflating it with situations where a more strict standard might apply. Plaintiffs principally rely on *Rivers v. Roadway Express*, which not only misses the mark—it underscores Plaintiffs' fundamental misunderstanding of *Minerva*. *Rivers* has nothing to do with assignor estoppel, it is not a patent case at all. 511 U.S. 298 (1994). Rather, *Rivers* dealt with the effective date of statutory amendments and whether the application of those amendments would be "retroactive" under then-established statutory interpretation, an issue that is wholly irrelevant to assignor estoppel and to

---

new inventors, the claims necessarily incorporate features beyond those contributed by inventors of the earlier parent application. After all, an inventor can only be named on a patent if he materially contributed to some aspect of the invention as claimed. *See Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997). By adding inventors in the CIP – a fact that is apparent by comparing the inventors listed on the face of the patents to those identified in the parent applications' file history – Audacious has already represented that the asserted claims that issued from that CIP go beyond what Mr. Horrocks contributed and are therefore broader than what he assigned.

[7] To the extent Plaintiffs alleged that CRISP was responsible for the alleged filing of the three patent applications before the ENS Acquisition Agreement was executed, this is also contradicted by the public record. The assignments make clear that all inventors assigned their rights directly to Audacious, not to CRISP. Dkts. 28-10, 28-11, 28-12, 28-13, 28-14. Nothing in the file histories nor any other public records suggest CRISP was involved in prosecution.

whether the *Alice* test for patent eligibility qualifies as enough of a "later legal development" under *Minerva*. *Id.* at 312-13. Despite Plaintiffs' apparent efforts to use *Rivers* to characterize *Minerva* as requiring a "change in law" comparable to a statutory amendment for any exception to apply, *Minerva* itself has no such requirement. Rather, the exception applies "when a later **legal development** might affect the prior representation of a patent owner at the time of assignment." *Minerva*, 594 U.S. at 577. This cannot reasonably be limited to statutory amendments.

*Alice* was at least a "later legal development" as envisioned by *Minerva*. *Alice* significantly altered inventors' and patent owners' understanding of when a software-based invention is or is not patent eligible—which is what would matter when considering an assignor's "representations" of validity under *Minerva*. At least one court has found the "later legal development" exception applies when a judicial decision clarifies a test for patent validity. *See Kong Co., LLC v. Bounce Enters., LLC*, No. 1:22-cv-02001-DDD-SBP, 2025 WL 2208136, *7-8 (D. Colo. Mar. 27, 2025) (finding that the Federal Circuit's decision in *LKQ Corp. v. GM Global Tech. Operations LLC*, 102 F.4th 1280 (Fed. Cir. 2024) (*en banc*) clarifying the obviousness test for design patent claims represented "a change in the governing law" and thus "the defendants are not estopped")

The same result should follow here, particularly given the robust body of cases recognizing *Alice* as a significant legal development that altered how patent eligibility is assessed, especially for software or computer implemented claims. *See* Dkt. 28-1 at 23-24 (collecting cases). Before *Alice*, it was not clear what eligibility test to apply to software, and it was further well-recognized that "it was and is sometimes difficult to analyze patent eligibility under the framework prescribed by the Supreme Court in *Mayo*." *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1379 (Fed. Cir. 2017). In this context, *Alice* is a later legal development barring estoppel.

Likewise, the fact that *Alice* ultimately affirmed the underlying Federal Circuit decision

10

does not help Plaintiffs—it actually demonstrates how clarifying *Alice* was to the state of the law. While the Federal Circuit ultimately affirmed the district court's holding it only did so in a two-sentence *per curiam* decision, it was deeply divided, with several judges submitting full or partial dissents. *See CLS Bank Int'l v. Alice Corp. Pty*, 717 F.3d 1269, 1273 (Fed. Cir. 2013) (*en banc*). The decision itself offered no binding guidance as to what test (*Mayo* or otherwise) applied when assessing patent eligibility for computer-implemented claims, and the district court decision the Federal Circuit affirmed relied entirely on pre-*Mayo* tests like the "machine or transformation" test. *CLS Bank Int'l v. Alice Corp. Pty, Ltd.*, 768 F. Supp. 2d 221, 234-55 (D.D.C. 2011). The Federal Circuit's decision did not adopt the *Mayo* framework or clarify the law in any way.

Thus, when *Alice* affirmed the ultimate finding of patent ineligibility, it did so only after applying—for the very first time, ever, a test for assessing whether a software patent was directed to an ineligible abstract idea. This was a significant legal development even if (as Plaintiffs argue) this test was adapted from *Mayo*. *Alice* upended earlier expectations or understandings regarding patent eligibility of software patents, and it prevents application of assignor estoppel in this case.

### C.    Plaintiffs' Unfair Competition Claim Should be Dismissed

Plaintiffs' efforts to shore up their conclusory unfair competition claim fairs no better than its patent infringement claims. This claim, too, should be dismissed with prejudice.

First, to the extent Plaintiffs assert that their pleadings—premised as they are on conclusory "information and belief" allegations—are sufficient because pleading on information and belief is permitted under the *Twombley*/*Iqbal* standard in certain circumstances,[8] this misses the point. The issue is not the Amended Complaint includes pleadings on information and belief generally; it is

---

[8] Despite Plaintiffs' contrary arguments, pleading on "information and belief" is not always sufficient. "Under the pleading standard the Supreme Court articulated in *Twombly* and *Iqbal*, a complaint's conclusory allegations based solely 'upon information and belief' are 'insufficient to defeat a motion to dismiss.'" *Van Buren v. Walmart, Inc.*, 611 F. Supp. 3d 30, 36 (D. Md. 2020) (quoting *Harman v. Unisys Corp.*, 356 F. App'x 638, 640-41 (4th Cir. 2009)).

that the Amended Complaint does not contain **actual facts** that make the stated "belief" plausible. As this Court has explained, pleading on information and belief is only appropriate if the plaintiff "has sufficient data to justify interposing an allegation on the subject" of the claim. *Van Buren*, 611 F. Supp. 3d at 37 (quoting 5 C. Wright & A. Miller, Fed. Practice and Procedure, § 1224 (3d ed.)). The pleadings cannot simply "stack allegations 'on information and belief' on top of other allegations 'on information and belief' in an unpersuasive effort to shore up inadequate pleadings;" they must be supported at least by "sources of second-hand information giving rise to any probable inference to support that claim." *Carter v. Va. Dep't of Game & Inland Fisheries*, No. 3:16-cv-661, 2018 WL 3614975, at *9 (E.D. Va. July 27, 2018). Without supporting facts not pled on information and belief, "the allegations veer away from supporting plausible inferences, and turn instead toward unsupportable conclusory talismanic statements." *Id.*

Consistent with these principles, courts in this Circuit routinely dismiss claims supported by allegations pled on information belief without other factual pleadings to support them—as explained in many cases cited in CRISP and CSS's opening brief and not addressed by Plaintiffs.[9]

Plaintiffs attempt to distinguish *Kashdan v. George Mason Univ.*, 70 F.4th 694 (4th Cir. 2023) fails. There, the Fourth Circuit affirmed dismissal because, despite some facts not pled on information and belief, they did not lead to a reasonable inference of liability. *Id.* at 701-02. The court did not find that the plaintiff failed to plead any facts at all, rather that his claims were "not supported by any well-pled facts **that exist independent of his legal conclusions**." *Id.* at 702 (emphasis added). The same is true here. Plaintiffs have failed to identify any facts to support their

---

[9] *See, e.g., Wheelz Up, LLC v. Cordero*, No. DKC 24-212, 2025 WL 326950, at *7 (D. Md. Jan. 28, 2025); *Carter*, 2018 WL 3614975, at *9; *Dev. Pros. Inc.-Making Cents Int'l LLC v. Bank of Am., N.A.*, No. 1:24-cv-1529 (RDA/LRV), 2025 WL 2734557, at *7 (E.D. Va. Sep. 25, 2025); *JET Sys., LLC v. J.F. Taylor, Inc.*, No. DKC 24-1628, 2025 WL 2659842, at *7-8 (D. Md. Sep. 17, 2025); *Vogel v. RMAC Tr. Series 2016-CTT*, No. 1:24-cv-02182 (RDA/LRV), 2025 WL 1969912, at *3 (E.D. Va. July 16, 2025); *Lowy v. Daniel Def., LLC*, No. 1:23-cv-1338, 2024 WL 3521508, *3 (E.D. Va. July 24, 2024).

pleadings on information and belief independent of their conclusory assertion that CSS made false statements or misrepresentations in Florida "on information and belief." *See* Dkt. 24 at ¶¶ 107-108, 114-115. An inference that CSS made false statements or misrepresentations simply does not follow from the allegations ***not*** pled on information and belief. The allegations are not plausible.

Moreover, as to Plaintiffs' allegations regarding the Florida AHCA bid process, Plaintiffs' deficient pleadings on information and belief are further implausible because they are contradicted by information subject to judicial notice. Plaintiff Audacious made virtually the same allegations regarding purported "false statements" and "misrepresentations" during the protest it initiated in Florida, where they were rejected outright. Ironically, Plaintiffs now misrepresent the nature of the protest in an attempt to have the Court ignore its findings, arguing that the protest resulted in no relevant factual findings and, at least implicitly, that Audacious had no opportunity to obtain discovery. Dkt. 31 at 29. But Plaintiffs' characterizations of the protest are inaccurate, as demonstrated by the statute governing the proceedings and the public record.[10]

Given the robust procedures in place, the Florida protest is comparable to a bench trial, and the specific factual findings and legal conclusions arising out of it—not only the existence of the protest—are subject to judicial notice. *See Halscott Megaro, P.A. v. McCollum*, 66 F.4th 151, 157-161 (4th Cir. 2023). Indeed, the Fourth Circuit's decision in *Halscott* is instructive. In *Halscott*,

---

[10] Specifically, the Florida Administrative Procedure Act provides a judicial administrative procedure for handling protests to contract solicitations or awards. Fla. Stat. Ann. § 120.57. These proceedings are conducted "de novo… to determine whether the agency's proposed action is contrary to the agency's governing statutes, the agency's rules or policies, or the solicitation specifications. The standard of proof for such proceedings shall be whether the proposed agency action was clearly erroneous, contrary to competition, arbitrary, or capricious." Fla. Stat. Ann. § 120.57(3)(f). The parties to the protest are allowed to conduct substantial discovery comparable to that permitted by the Florida Rules of Civil Procedure and to present evidence, including testimony elicited under oath, at a full evidentiary hearing before an ALJ. Fla. Admin. Code r. 28-106.206, 28-106.211, 28-106.213. After the hearing, the ALJ issues a recommended order based on the evidence presented, and the parties may submit exceptions. Fla. Stat. Ann. § 120.57(3)(e); Fla. Admin. Code r. 28-106.217. After any exceptions are resolved, the AHCA issues its final order, which the parties may directly appeal to the state appellate courts. Fla. Stat. Ann. § 120.57(3)(e), § 120.68. Such robust procedures were in place for the relevant protest, resulting in substantive findings of fact and law and allowing Audacious to seek discovery and be heard on its allegations of false statements and misrepresentations.

the Fourth Circuit affirmed a district court decision dismissing claims as precluded by a North Carolina administrative order and specifically found that the order was properly subject to judicial notice because it is a publicly available record and "an administrative decision from a body acting in a judicial capacity" *Id.* at 158. Like the AHCA final order, the administrative order in *Halscott* was rendered by a state agency with the authority to hold hearings, make findings of fact and conclusions of law, and to enter orders, which could be appealed to the state court of appeals. *Id.* The order in *Halscott* was issued in accordance with these procedures and was sufficient to render its specific findings of fact and conclusions of law subject to judicial notice.[11] *Id.*

The same reasoning set forth in *Halscott* also applies here. Plaintiffs, through Audacious, had the opportunity to (and in fact did) litigate whether CSS made false statements or misrepresentations in order to win its bid in Florida during the protest proceedings, and to seek discovery on that issue. Yet Audacious failed to present any evidence to support its theories at the evidentiary hearing, leading the ALJ to issue a final order with the following conclusion of law:

> … The **competent, substantial evidence** presented at the final hearing showed that CSS and the CEND system were capable of performing the contract requirements, and provided additional enhancements over the ENS system. There was **no evidence** introduced at the final hearing that demonstrated that CSS provided inaccurate, false, or misleading information in its reply or during negotiations….

Dkt. 28-20 at 35 (emphasis added).

Thus, despite Plaintiffs assertions to the contrary, the protest did not solely "focus[] on the actions of *the state agency*." Dkt. 31 at 29 (original emphasis). Rather, it also considered the very allegations Plaintiffs now raise in this case—i.e., that CSS misrepresented the capabilities or

---

[11] Moreover, such robust procedures are also enough to make the order's findings of fact and conclusions of law subject to collateral estoppel for both the parties to the administrative proceeding and those in privity with them. *Halscott*, 66 F.4th. at 159-60. Thus, while preclusion is not directly at issue on this Motion, if dismissal is not granted, Plaintiffs will nonetheless be collaterally estopped from pursuing their unfair competition claim.

features of the CEND system. After the evidentiary hearing, the ALJ and AHCA found no evidence to support this a claim and concluded that "competent, substantial evidence" actually demonstrated that CSS and CEND *were* capable of doing what was required under the contract and could do so better than ENS. Audacious failed to submit an exception to this conclusion or to exercise its right to timely appeal the final order. Thus, it and CMT cannot prevent the Court from taking judicial notice of these failings now, just so it can relitigate the same unfounded claims under the guise of unfair competition. These unsupported allegations should be disregarded.

When Plaintiffs' deficient allegations regarding the Florida proceedings are disregarded – as they must be – all that is left are their allegation that CSS "misused" patented technology. This is quintessentially preempted, as set forth in CRISP and CSS's motion. The mere fact that Plaintiffs included additional (but deficient) allegations regarding the Florida bid process cannot avoid preemption. Where, as here, a claimant relies on irrelevant and conclusory allegations in an attempt to avoid preemption by federal law, such allegations are properly disregarded and will not prevent a finding of preemption. *See, e.g., Carson Optical, Inc. v. Prym Consumer USA, Inc.*, 11 F. Supp. 3d 317, 330-31 (E.D.N.Y. 2014) (finding unfair competition claim preempted where plaintiff alleged "'an abundance of facts' of wrongful conduct beyond facts constituting patent infringement…, including fraud, misrepresentation, dishonesty and economic pressure" but such allegations were "conclusory" and "insufficient to establish a plausible claim").

Accordingly, Plaintiffs' unfair competition claim fails and must be dismissed.

## III.    CONCLUSION

For the reasons set forth above and in their motion, CRISP and CSS respectfully request that the First Amended Complaint be dismissed in its entirety and with prejudice.

15

Dated: November 3, 2025

Respectfully submitted,

**FOLEY & LARDNER LLP**

By:    */s/Jarren N. Ginsburg*   
    Jarren N. Ginsburg
    D. Md. Bar No. 19688
    FOLEY & LARDNER LLP
    Washington Harbour
    3000 K Street, N.W. Suite 600
    Washington, D.C. 20007-5109
    Telephone: (202) 672-5300
    Facsimile: (202) 672-5399
    jginsburg@foley.com

    Ruben J. Rodrigues *(pro hac vice)*
    FOLEY & LARDNER LLP
    111 Huntington Avenue
    Boston, MA 02199
    Telephone: (617) 342-4000
    Facsimile: (617) 342-4001
    rrodrigues@foley.com

    Sarah E. Rieger *(pro hac vice)*
    FOLEY & LARDNER LLP
    777 East Wisconsin Avenue
    Milwaukee, WI 53202
    Telephone: (414) 271-2400
    Facsimile: (414) 297-4900
    srieger@foley.com

**ATTORNEYS FOR DEFENDANTS CHESAPEAKE REGIONAL INFORMATION SYSTEM FOR OUR PATIENTS, INC. AND CRISP SHARED SERVICES, INC.**