**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**AUDACIOUS INQUIRY LLC**

and

**COLLECTIVE MEDICAL TECHNOLOGIES, INC.**

Plaintiffs,

v.

**CHESAPEAKE REGIONAL INFORMATION SYSTEM FOR OUR PATIENTS**

and

**CRISP, INC. SHARED SERVICES AND AFFILIATES**

Defendants.

Civil Action No. 1:25-CV-02264-JRR

**MEMORANDUM IN SUPPORT OF PLAINTIFFS AUDACIOUS INQUIRY LLC'S AND COLLECTIVE MEDICAL TECHNOLOGIES, INC.'S MOTION TO DISMISS, STRIKE, OR BIFURCATE AND STAY CERTAIN AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

# TABLE OF CONTENTS


**I. INTRODUCTION** ........ 1

**II. BACKGROUND** ........ 3

A. Audacious's Claims Against CRISP ........ 3

B. CRISP's Counterclaims and Affirmative Defenses ........ 4

**III. LEGAL STANDARD** ........ 6

**IV. ARGUMENT** ........ 7

A. The Court Should Dismiss CRISP's Antitrust Counterclaim (Eighth Counterclaim) or, Alternatively, Bifurcate and Stay the Antitrust and Unfair Competition Claims From the Core Patent Dispute ........ 7

1. CRISP Fails to Plausibly Allege a Dangerous Probability of Achieving Monopoly Power ........ 7

2. CRISP Fails to Plausibly Allege Harm to Competition or Cognizable Antitrust Injury ........ 10

3. CRISP Cannot Base Antitrust Liability on Audacious's Protected Petitioning Activity ........ 12

4. Alternatively, CRISP's Antitrust Counterclaim and the Parties' Unfair Competition Claims Should Be Bifurcated and Stayed ........ 16

B. The Court Should Dismiss CRISP's Inequitable Conduct Defenses and Counterclaims (Seventh Affirmative Defense, Third and Sixth Counterclaims) . 19

1. CRISP Fails to Adequately Plead Any Material Representation or Omission 19

2. CRISP Fails to Adequately Plead That Any Person Who Owed a Duty of Candor to the PTO Acted With an Intent To Deceive the PTO ........ 24

C. The Court Should Strike CRISP's Unclean Hands Defense (Ninth Affirmative Defense) ........ 26

D. The Court Should Strike CRISP's Patent Misuse Defense (Tenth Affirmative Defense) ........ 29

E. CRISP's "Equitable Defense" (Fourth Affirmative Defense) and "License Defense" (Sixth Affirmative Defense) Should Also Be Struck. ........ 29

**V. CONCLUSION** ........ 30

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014)....................14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................6

*Audio MPEG, Inc. v. Dell Inc.*,
254 F. Supp. 3d 798 (E.D. Va. 2017)....................16

*Avaya Inc., RP v. Telecom Labs, Inc.*,
838 F.3d 354 (3d Cir. 2016)....................13

*Avid Identification Sys., Inc. v. Crystal Imp. Corp.*,
603 F.3d 967 (Fed. Cir. 2010)....................24

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
237 F.3d 394 (4th Cir. 2001)....................13

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....................8, 21

*Bradley v. Applied Marine Sys. LLC*,
No. 13-cv-03941, 2014 WL 1648726 (N.D. Cal. Apr. 23, 2014)....................25

*Bradshaw v. Hilco Receivables, LLC*,
725 F. Supp. 2d 532 (D. Md. 2010)....................29

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)....................10

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977)....................1, 10, 11

*Bureau of Cons. Fin. Prot. v. Fair Collections & Outsourcing, Inc.*,
No. 19-cv-2817, 2021 WL 2685251 (D. Md. June 30, 2021)....................28

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998)....................29

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002)....................8, 11

*DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*,
No. 23-675-WCB, 2024 WL 639991 (D. Del. Feb. 15, 2024)....................18

*Eden Hannon & Co. v. Sumitomo Tr. & Banking Co.*,
914 F.2d 556 (4th Cir. 1990) ....................13

*EIS, Inc. v. WOW Tech Int'l GmbH*,
No. 19-cv-1227, 2020 WL 7027528 (D. Del. Nov. 30, 2020)....................24

*EMC Corp. v. Pure Storage, Inc.*,
No. 13-cv-1985, 2014 WL 5795557 (D. Del. Nov. 5, 2014)....................24

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009).................... *passim*

*G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*,
344 F.R.D. 446 (D. Md. 2023)....................17

*Go Med. Indus. Pty, Ltd. v. Inmed Corp.*,
300 F. Supp. 2d 1297 (N.D. Ga. 2003) ....................21

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016) ....................23

*Hall v. Virginia*,
385 F.3d 421 (4th Cir. 2004) ....................9

*Hammer v. Peninsula Poultry Equip. Co.*,
No. 12-cv-1139, 2013 WL 97398 (D. Md. Jan. 8, 2013)....................7

*Hedley v. ABHE & Svoboda, Inc.*,
No. 14-cv-2935, 2015 WL 4626880 (D. Md. July 31, 2015) ....................9

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
335 F.3d 303 (4th Cir. 2003) ....................15

*Illumina, Inc. v. BGI Genomics Co.*,
No. 19-cv-03770, 2020 WL 571030 (N.D. Cal. Feb. 5, 2020) ....................26

*Impact Engine, Inc. v. Google LLC*,
No. 19-cv-01301, 2020 WL 3414627 (S.D. Cal. June 22, 2020) ....................21

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
280 F. Supp. 3d 691 (D. Md. 2017)....................17

*Janssens v. Freedom Med., Inc.*,
No. 10-cv-2042, 2011 WL 1642575 (D. Md. Apr. 29, 2011)....................28

*Loren Data Corp. v. GXS, Inc.*,
501 F. App'x 275 (4th Cir. 2012) ....................12

*M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*,
981 F.2d 160 (4th Cir. 1992) ....................7

*Malibu Media, LLC v. Doe*,
No. 13-cv-0512, 2015 WL 1402286 (D. Md. Mar. 25, 2015) ....................2, 27, 28

*Merkle Press Inc. v. Merkle*,
519 F. Supp. 50 (D. Md. 1981) ....................11

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
No. 09-cv-2657, 2011 WL 2415014 (D. Md. June 10, 2011) ....................6

*MJ Enter. Holdings, Inc. v. Spiffy Franchising, LLC*,
No. 1:24-CV-3194-RDB, 2025 WL 775515 (D. Md. Mar. 10, 2025) ....................18

*Nobelpharma AB v. Implant Innovations, Inc.*,
141 F.3d 1059 (Fed. Cir. 1998) ....................15

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
695 F.3d 1285 (Fed. Cir. 2012) ....................19

*Pac. Life Ins. Co. v. Wells Fargo Bank, NA*,
702 F. Supp. 3d 370 (D. Md. 2023) ....................18

*Pediamed Pharms., Inc. v. Breckenridge Pharm., Inc.*,
419 F. Supp. 2d 715 (D. Md. 2006) ....................27

*Princo Corp. v. Int'l Trade Comm'n*,
616 F.3d 1318 (Fed. Cir. 2010) (en banc) ....................3

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993) ....................13

*Prowess, Inc. v. RaySearch Lab'ys, AB*,
953 F. Supp. 2d 638 (D. Md. 2013) ....................22

*Sanofi-Aventis v. Apotex Inc.*,
659 F.3d 1171 (Fed. Cir. 2011) ....................29

*Senju Pharm. Co. v. Apotex, Inc.*,
921 F. Supp. 2d 297 (D. Del. 2013) ....................25

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993) ....................7

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
No. 12-441-RGA, 2014 WL 2622240 (D. Del. June 11, 2014) ....................23

*Therapearl, LLC v. Rapid Aid Ltd.*,
No. 13-cv-2792, 2014 WL 4794905 (D. Md. Sept. 25, 2014)....8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) (en banc)....2, 19, 22, 25

*Thompson Everett, Inc. v. Nat'l Cable Advert., L.P.*,
57 F.3d 1317 (4th Cir. 1995) ....10

*Titan Sys., LLC v. SRI Int'l*,
787 F. Supp. 3d 72 (D. Md. 2025)....6, 28

*Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*,
762 F.3d 1338 (Fed. Cir. 2014)....14, 15

*Unimed Pharms. LLC v. Perrigo Co.*,
No. 13-cv-236, 2015 WL 106851 (D. Del. Jan. 6, 2015) ....21

*Virginia Panel Corp. v. MAC Panel Co.*,
133 F.3d 860 (Fed. Cir. 1997)....29

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
382 U.S. 172 (1965)....13, 15

*Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*,
No. 08-cv-2202, 2009 WL 10682454 (D. Md. Apr. 6, 2009)....16, 18

*Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*,
728 F.3d 354 (4th Cir. 2013) ....12

*Windsurfing Int'l Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986)....29

*Ziemkiewicz v. R+L Carriers, Inc.*,
No. 13-cv-00438, 2013 WL 2299722 (D. Md. May 24, 2013)....16

**Statutes**

35 U.S.C. § 271(d) ....3

35 U.S.C. § 282(a) ....14

**Other Authorities**

37 C.F.R. § 1.78....20

Fed. R. Civ. P. 9(b) ....2, 6, 19

Fed. R. Civ. P. 10(c) ....21

Fed. R. Civ. P. 12(b)(6)....................................................................................................6

Fed. R. Civ. P. 12(f)....................................................................................................2, 6

Fed. R. Civ. P. 42(b)....................................................................................................7, 16

L.R. 103.1(d)....................................................................................................1

M.P.E.P. § 210....................................................................................................20

M.P.E.P. § 211.05....................................................................................................23

# TABLE OF ABBREVIATIONS

| Abbreviation | Full Name |
|---|---|
| ’194 Patent | U.S. Patent No. 11,114,194 |
| ’475 Patent | U.S. Patent No. 12,047,475 |
| ’962 Patent | U.S. Patent No. 10,938,962 |
| AHCA | Florida Agency for Healthcare Administration |
| Asserted Patents | ’194 Patent, ’475 Patent, and ’962 Patent |
| Audacious | Plaintiff Audacious Inquiry LLC and Collective Medical Technologies, Inc. |
| CC | Defendants’ Answer and Counterclaims (D.I. 45) |
| CRISP | Defendants Chesapeake Regional Information System for our Patients and CRISP, Inc. Shared Services and Affiliates |
| CSS | Defendant CRISP, Inc. Shared Services and Affiliates |
| CEND | CRISP Event Notification Delivery software, sold by CSS |
| D.I. | Docket Index |
| ENS | Event Notification Service software, sold by Audacious |
| HIE | Health Information Exchange |
| M.P.E.P. | PTO’s Manual of Patent Examining Procedure (MPEP) |
| PTO | United States Patent and Trademark Office |

## I. INTRODUCTION

After CRISP terminated its long-standing license with Audacious, it kept practicing the Asserted Patents anyway and began competing unfairly in violation of Maryland law, prompting this suit. Having failed to convince the Court to dismiss Audacious's claims, CRISP now hopes to expand the complexity, cost, and duration of the case. It does so by asserting counterclaims for attempted monopolization and inequitable conduct, and defenses of unclean hands, patent misuse, license, and "equity," all built on threadbare allegations. The Court should dismiss, strike, and/or stay CRISP's "kitchen sink" counterclaims and defenses for at least the following reasons.[1]

*First*, CRISP's attempted monopolization counterclaim fails to allege the essential elements of an antitrust claim. Although CRISP defines a nationwide market for HIE notification services, its factual allegations of market power concern only Florida, where CSS itself won the state's HIE contract through a competitive procurement. CRISP does not plausibly explain how Audacious has a dangerous probability of achieving monopoly power in the alleged nationwide market—or even in Florida. Nor does CRISP plausibly connect its alleged business losses and transition difficulties to harm to the competitive process. The antitrust laws protect competition, not individual competitors from every commercial injury. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488-89 (1977). And finally, CRISP bases its claim in large part on

[1] This motion is filed in response to the "Corrected" Answer and Counterclaims which CRISP filed on September 25, 2026 (D.I. 45) after a Clerk's Order (D.I. 44) noting that CRISP's 78-page answer filed on the previous day exceeded the page limits for pleadings in this district under L.R. 103.1(d) by 38 pages. This is not the first time CRISP has been admonished for violating this Court's rules. Specifically, in its opinion on CRISP's motion to dismiss, the Court noted that "[t]hroughout their papers, Defendants utilize footnotes in a manner that essentially splits arguments both above and below the line" and that "[i]ncluding substantive arguments in footnotes is generally disfavored as it obscures the arguments presented to the court (and for Plaintiffs' response)." D.I. 39 at n.1. CRISP's "Corrected" Answer and Counterclaims is the latest example of its scattershot and unfocused approach to litigating this case which has unnecessarily multiplied the issues and created needless burdens on both Audacious and the Court.

Audacious's petitioning activity in Florida and in this Court, which is protected by the *Noerr-Pennington* doctrine, and CRISP does not plausibly allege that any exception applies. The Court should dismiss the antitrust counterclaim, or alternatively, bifurcate and stay that counterclaim and the parties' unfair competition claims pending resolution of the core patent dispute.

*Second*, CRISP asks the Court to impose the drastic remedy of finding Audacious's patents unenforceable for inequitable conduct—a penalty that the Federal Circuit has famously called the "atomic bomb of patent law." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc). Because the charge is so grave, a party asserting it must plead with particularity under Rule 9(b) the who, what, when, where, and how of the alleged fraud, and facts supporting a reasonable inference of specific intent to deceive the PTO. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). CRISP's allegations do not meet that standard. Instead, CRISP nominally alleges that (1) an Audacious attorney improperly represented to the PTO Examiner that the issued patent claims were entitled to a March 16, 2013 priority date; and (2) that representation was material because Audacious did not disclose the commercially available ENS system during prosecution. Documents attached to or integral to the Counterclaims refute both allegations: Audacious made no misrepresentation about priority, and it disclosed the ENS system during prosecution. Moreover, whether the claims are entitled to the March 16, 2013 filing date is a question of validity, not inequitable conduct, and CRISP is barred by assignor estoppel from raising it. Further, CRISP pleads no facts supporting a reasonable inference that anyone acted with intent to deceive.

*Third*, the Court should strike CRISP's affirmative defenses of unclean hands, patent misuse, license, and "equity" under Rule 12(f). Unclean hands only applies when the alleged unclean conduct has an "immediate and necessary relation" to the controversy in issue. *Malibu*

*Media, LLC v. Doe*, No. 13-cv-0512, 2015 WL 1402286, at *3 (D. Md. Mar. 25, 2015). CRISP's allegation that Audacious treated one of its third-party partners unfairly more than ten years ago has no relation to Audacious's claims for willful infringement and unfair competition. Patent misuse fares no better. It applies only where a patentee impermissibly broadens the scope of its patent grant with anticompetitive effect, such as by conditioning a patent license on the purchase of a separate staple good. *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010) (en banc); *see* 35 U.S.C. § 271(d). CRISP alleges no such facts. Finally, CRISP's license and "equity" defenses plead no facts at all, and so fail to give Audacious fair notice of what the defenses are or why they apply.

## II. BACKGROUND

### A. Audacious's Claims Against CRISP

The inventions claimed in the Asserted Patents, which Audacious developed in collaboration with CRISP, cover technical solutions that facilitate the exchange of patient health information between health care institutions and other interested parties. D.I. 24 at ¶ 4. After more than ten years of licensing the patents from Audacious, CRISP declined to renew its license in May 2024 and then launched a copycat product called CEND that competes directly with Audacious's ENS system. *Id.* ¶¶ 8, 103. CRISP also redirected customers from Audacious's ENS system to CEND by misrepresenting the capabilities of CEND. *Id.* ¶¶ 8, 106.

Audacious filed suit in July 2025, asserting that CRISP infringes three patents and that CRISP has engaged in acts of unfair competition in violation of Maryland law. D.I. 1. CRISP filed a motion to dismiss (D.I. 28), which this Court granted-in-part (D.I. 40). The Court rejected CRISP's assertion that assignor estoppel was inapplicable at the pleading stage, allowing this case to proceed on two of the three Asserted Patents and Audacious's unfair competition claim.

### B. CRISP's Counterclaims and Affirmative Defenses

CRISP seeks to drastically expand the case with misplaced theories of attempted monopolization, inequitable conduct, patent misuse, unclean hands, license, and "equity."

CRISP's Eighth Counterclaim alleges attempted monopolization of a purported nationwide market for "health information exchange ADT event-notification services for healthcare providers." CC ¶ 160. CRISP's factual allegations of market power, however, concern only Audacious's position in Florida; as to other states, CRISP alleges only that, "[o]n information and belief," Audacious possesses "similar" power through "similar exclusive arrangements" in other states. *Id.* ¶ 161. CRISP's own account of the Florida HIE procurement alleges that Florida solicited a new HIE vendor, conducted a competitive process, and selected CSS for the contract (over Audacious and others). *Id.* at 20-21 (¶¶ 13, 15). CRISP further alleges that the transition to CSS was already underway in 2025. *Id.* at 21 (¶ 18).

CRISP bases its antitrust theory in large part on Audacious's challenge to that procurement and its enforcement of the Asserted Patents, characterizing those proceedings as sham litigation and alleging that the patents were procured through fraud. *Id.* ¶¶ 142-147, 165. CRISP also alleges that Audacious's communications and conduct impeded CSS's transition. *Id.* ¶¶ 21, 25, 31-35, 151-152. CRISP's resulting injuries allegedly include lost profits, increased costs, operational delays, and harm to CRISP's ability to compete. *Id.* ¶¶ 47, 167. CRISP separately asserts that it and unspecified others have been foreclosed from competing and that customers have experienced higher prices, lower quality, reduced interoperability, and suppressed innovation. *Id.* ¶ 166.

CRISP alleges in its Third and Sixth Counterclaims and Seventh Affirmative Defense that the '962 and '475 Patents are unenforceable due to inequitable conduct based on a "deliberate strategy of threading CIPs through different families [that] created the misleading appearance that the claims were entitled to a March 15, 2013 priority date, when in fact no disclosure supported

them before November 9, 2017 at earliest." CC ¶ 74. CRISP's theory hinges on a false premise—that Audacious's attorney falsely represented to the PTO Examiner that the issued claims are entitled to the March 15, 2013 priority date, and that the alleged representation was material to patentability and was made with a specific intent to deceive the Examiner. *Id.* ¶ 79. He made no such representation; as discussed below. *See* D.I. 45-11 at 2, 45-15 at 2, 45-17 at 6 (37 C.F.R. § 1.78(d)(6) Statements cited in Counterclaims).

As for unclean hands, CRISP asserts that "prior to founding or developing the ENS system that is the subject of this action, Audacious, acting at least through its executive Scott Afzal, entered into a contractual relationship with Axolotl Corp. ('Axolotl') under which Audacious contracted with Axolotl to develop and license a health information exchange product substantially similar to the systems described in the Patents-in-Suit." CC at 17 (¶ 12). According to CRISP, "[t]he conduct Audacious engaged in with respect to Axolotl echoes the claims Audacious now alleges constitutes unfair competition by CRISP Maryland and CSS," in that Audacious "contracted with Axolotl to develop and license health information exchange technology, gained access to Axolotl's technology and methods, terminated the relationship, and then developed and commercialized its own competing product." *Id*. at 17 (¶ 15). This alleged conduct—which Audacious disputes—has absolutely no relation to CRISP's acts of unfair competition, much less an "immediate and necessary" relation as needed to sustain an unclean hands defense.

Finally, CRISP lobs a patent misuse defense (Tenth Affirmative Defense) based on "Plaintiff's unfair and anticompetitive schemes." CC at 18 (¶ 18). CRISP alleges no specific facts to support this defense beyond the facts alleged in its unfair competition and attempted monopolization counterclaims. A defense of patent misuse, however, must be predicated on acts that serve to broaden the scope of patent rights. CRISP has not alleged any such facts here.

CRISP's license and "equitable" defenses (Fourth and Sixth Affirmative Defenses) fare no better as the Answer lacks facts sufficient to give notice of these defenses.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a court should dismiss a counterclaim that fails to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept allegations as true, that tenet "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the pleader has not shown an entitlement to relief. *Id.* at 679. These pleading requirements apply equally to counterclaims and affirmative defenses. *Titan Sys., LLC v. SRI Int'l*, 787 F. Supp. 3d 72, 77-78, 80 (D. Md. 2025) ("applying the *Twombly-Iqbal* pleading standard" to affirmative defenses).

A party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Inequitable conduct counterclaims and affirmative defenses alike must satisfy Rule 9(b). *See Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318, 1325 (Fed. Cir. 2009); *see also Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, No. 09-cv-2657, 2011 WL 2415014, at *3-4 (D. Md. June 10, 2011) (striking inequitable conduct defenses and counterclaim allegations that "do nothing more than recite the generic elements").

Under Rule 12(f), a court may "strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). A defense that "might confuse the issues" and "would not, under the facts alleged, constitute a valid defense to the action," "can and should be deleted." *Mike's Train House*, 2011 WL 2415014, at *2 (citation omitted). The same is true for any defense that fails to allege facts sufficient to give fair notice of its grounds. *See Titan Sys.*, 787 F. Supp. 3d at 80 (striking unclean

hands defense pleaded without supporting facts); *Hammer v. Peninsula Poultry Equip. Co.*, No. 12-cv-1139, 2013 WL 97398, at *7 (D. Md. Jan. 8, 2013) (striking affirmative defenses "pled in a conclusory fashion and without enough facts to show that the defenses are plausible").

## IV. ARGUMENT

### A. The Court Should Dismiss CRISP's Antitrust Counterclaim (Eighth Counterclaim) or, Alternatively, Bifurcate and Stay the Antitrust and Unfair Competition Claims From the Core Patent Dispute

CRISP's attempted monopolization counterclaim fails for three independent reasons. First, CRISP does not plausibly allege a dangerous probability that Audacious will achieve monopoly power in the relevant market. Second, CRISP does not plausibly allege antitrust injury, meaning harm to competition rather than to CRISP alone. Third, the counterclaim rests largely on Audacious's petitioning activity, which the *Noerr-Pennington* doctrine immunizes from antitrust liability, and CRISP does not plausibly allege that the sham litigation exception applies. The Court should therefore dismiss the counterclaim. Alternatively, if any part of it survives, the Court should bifurcate and stay it, together with the parties' unfair competition claims, until the core patent dispute is resolved. *See* Fed. R. Civ. P. 42(b).

#### 1. CRISP Fails to Plausibly Allege a Dangerous Probability of Achieving Monopoly Power

To state a claim for attempted monopolization, CRISP must plausibly allege (1) anticompetitive conduct, (2) a specific intent to monopolize, and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). For the final element, "[d]emonstrating the dangerous probability of monopolization in an attempt case . . . requires inquiry into the relevant product and geographic market and the defendant's economic power in that market." *Id.* at 459. That probability "must be shown to be substantial and real." *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 168

(4th Cir. 1992). CRISP fails to plausibly allege that Audacious has a dangerous probability of successfully achieving a monopoly in the relevant market. CRISP's counterclaim fails this element for two independent reasons. It pleads no facts showing market power in the nationwide market it alleges, and its allegations about Florida show the opposite of a dangerous probability.[2]

First, CRISP's market allegations are mismatched. CRISP alleges that "[t]he relevant market is the market for health information exchange ADT event-notification services for healthcare providers *in the United States* (the 'HIE Notification Market')." CC ¶ 160 (emphasis added). Yet its factual allegations of Audacious's supposed monopoly power concern only Florida. *Id.* ¶ 161. The sole allegation about the rest of the country is a single sentence, made "[o]n information and belief," that Audacious has "similar" power "in other states where it has [sic] entered into similar exclusive arrangements." *Id.* CRISP does not allege Audacious's national market share, customer share, revenue share, or any concentration data, or any other facts suggesting that Audacious could control the national market. Without such facts, the allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see Dickson v. Microsoft Corp.*, 309 F.3d 193, 212-13 (4th Cir. 2002) ("by failing to allege Compaq's and Dell's market share or power, Gravity has failed to set forth factual allegations necessary to support the basic elements of its § 1 and § 2 claims"); *Therapearl, LLC v. Rapid Aid Ltd.*, No. 13-cv-2792, 2014 WL 4794905, at *8 n.10 (D. Md. Sept. 25, 2014) (dismissing monopolization or attempted monopolization claim where the pleading "says nothing about how much of the market [defendant] controls, and includes no specific allegations").

Public records also suggest CRISP could not cure this defect by amendment. State HIE

---

[2] Audacious accepts CRISP's product market definition for purposes of this motion only and does not concede that it is plausibly defined. The Court need not decide that question because CRISP's claim fails even under its own definition.

contracts are public, and they show that other states' HIEs have not contracted with Audacious. CRISP itself is the designated HIE for Maryland, and its affiliate CSS provides HIE technology in Rhode Island. *See* Ex. 1 (Vermont HIE contract with Vermont Information Technology Leaders, Inc.); Ex. 2 (identifying CRISP as "the State-Designated HIE" for Maryland); Ex. 3 (identifying "CRISP Shared Services" as the Rhode Island HIE technology provider).[3]

Second, even a Florida-only market fails on CRISP's own allegations. CRISP alleges that (1) four companies competed for the Florida HIE contract, CC at 21 ¶ 15; (2) CSS won it, *id.*; (3) PCC and Audacious lost in that competitive process, *id*. at 19 ¶ 1; and (4) the transition to CSS was already under way in 2025, *id.* at 21 ¶ 18. On those allegations, the competitive process worked: a CRISP affiliate won the contract over PCC, Audacious, and two other bidders. CRISP does not explain how Audacious could have a dangerous probability of monopolizing Florida after losing the only contract at issue there.

CRISP's allegations also place the decision with the State, not with Audacious. Florida's Agency for Health Care Administration ("AHCA") decided to seek a new vendor, issued a procurement, and awarded the contract to CSS. *See, e.g.*, CC at 20-21 ¶ 13 ("AHCA raised concerns with PCC's platform, and rather than acceding to PCC's demands, and in anticipation of the existing contract's expiration in August 2025, AHCA issued an Invitation to Negotiate Procurement ('INP') for a new Florida HIE vendor on or around May 6, 2024."); *id*. at 21 ¶ 15 ("On January 23, 2025, after a competitive negotiation process involving four participants, AHCA

---

[3] "Ex." refers to the Exhibits to the Declaration of Kevin J. DeJong in Support of the instant Motion, filed concurrently herewith. The Court can take judicial notice of the exhibits, as they are government contracts and information on state government websites. *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (taking judicial notice, on review of a Rule 12(b)(6) dismissal, of information publicly available on an official government website); *Hedley v. ABHE & Svoboda, Inc.*, No. 14-cv-2935, 2015 WL 4626880, at *2 n.5 (D. Md. July 31, 2015) (taking judicial notice of government contract documents as public records in a Rule 12(b) analysis).

posted its intended award of the new Florida HIE contract to CSS."). A party that has just lost a state's competitive procurement, and does not control who that state selects, has no dangerous probability of monopolizing that state's market. CRISP therefore fails to plausibly allege a dangerous probability of monopoly power even in Florida.

#### 2. CRISP Fails to Plausibly Allege Harm to Competition or Cognizable Antitrust Injury

CRISP does not plausibly allege antitrust injury, that is, harm to competition rather than harm to CRISP alone. "[T]he antitrust laws . . . were enacted for 'the protection of competition, not competitors.'" *Brunswick*, 429 U.S. at 488 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)). Thus, "only injury caused by damage to the competitive process may form the basis of an antitrust claim." *Thompson Everett, Inc. v. Nat'l Cable Advert., L.P.*, 57 F.3d 1317, 1325 (4th Cir. 1995). And the injury must be "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick*, 429 U.S. at 489. Even "an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) (citation omitted). CRISP's allegations fall short of this standard whether the market is the nationwide market CRISP pleads or is limited to Florida.

CRISP identifies two categories of harm: (1) injuries to its own business, and (2) conclusory allegations of harm to CRISP and "others." Neither suffices.

*Harm to CRISP's business.* CRISP alleges that Audacious's conduct caused (a) delay and disruption in the Florida transition; (b) provider confusion, lost time, increased support costs, and diverted CSS resources; (c) interference with CSS's relationships with AHCA and Florida providers; (d) costs of responding to Audacious's communications and defending this action; (e) reputational harm; and (f) lost revenue and profits from delayed or diverted provider relationships.

CC ¶ 47; *see also id.* ¶ 167 (alleging "antitrust injury" consisting of "lost profits, increased costs, delay in establishing competitive operations, and harm to [CRISP's] ability to compete"). Each is a harm to CRISP's business. None is tied to harm to competition in the alleged market. Item (d) in particular arises from Audacious's petitioning activity and cannot be antitrust injury for the reasons in Section IV.A.3, *infra*. The remaining items describe the ordinary friction of a vendor transition, not injury flowing from what allegedly makes Audacious's conduct anticompetitive. *See Brunswick*, 429 U.S. at 489 (antitrust injury "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation"). Courts dismiss antitrust claims that allege only harm to a competitor. *See Dickson*, 309 F.3d at 206 ("[H]arm to one or many competitors will not suffice.") (citation omitted); *Merkle Press Inc. v. Merkle*, 519 F. Supp. 50, 53-54 (D. Md. 1981) (dismissing Sherman Act claim where plaintiff alleged lost business but no injury to competition).

CRISP may respond that delaying a new entrant's operations is itself exclusionary harm. But CRISP's own allegations show that AHCA chose CSS through a competitive procurement, that CSS holds the contract, and that the transition was already moving forward in 2025. CC at 21 ¶¶15, 18. CRISP pleads no facts showing that the State or any provider lost a choice, that any rival was excluded from the market, or that a delay in one provider's transition reduced competition.

*Conclusory allegations of market-wide harm.* CRISP tries to supply the missing link by asserting that it and unspecified "others" have been "substantially foreclosed from competing" and that unnamed customers have suffered "higher prices, lower product and service quality, reduced interoperability, and suppressed innovation." CC ¶166. These assertions recite anticompetitive effects without facts connecting them to the alleged conduct. The specific burdens CRISP pleads elsewhere, namely potential duplicative intermediary charges, provider confusion, and obstacles

to CSS's onboarding and data connections, *id.* ¶¶21, 25, 31-35, 151-152, affect particular providers and CSS in Florida. Even accepted as true, they do not show impairment of the competitive process in the national market, or, as shown above, in Florida.

The "higher prices" theory, CC ¶ 166, also lacks factual support. CRISP pleads no price increase and identifies no customer that paid more. Its own allegations show that the Florida HIE operates under a contract with "no payments . . . made to or from the State of Florida," funded by subscriber fees "overseen by AHCA and other Florida agencies." CC at 21 ¶17. CRISP does not explain how Audacious, which lost that contract, could raise prices in a market whose fees a state agency oversees.

The Fourth Circuit's decision in *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275 (4th Cir. 2012), illustrates the point. The plaintiff there argued that "smaller EDI consumers are harmed by [defendant] GXS's exclusionary conduct because accessing the GXS Network through another Network is more expensive." *Id.* at 283. The court rejected that argument because the plaintiff "offer[ed] no facts to support its conclusory assertion that smaller EDI consumers have been denied access or are otherwise unable to obtain EDI services because of cost." *Id.* The same is true here: CRISP offers no facts that any customer was harmed. Because CRISP pleads harm to itself, not to competition, the counterclaim fails for this independent reason.

### 3. CRISP Cannot Base Antitrust Liability on Audacious's Protected Petitioning Activity

CRISP's attempted monopolization counterclaim rests in large part on Audacious's petitioning activity: its protest of AHCA's contract award in Florida and its prosecution of this action. *See* CC ¶¶ 142-47, 165-66. The *Noerr-Pennington* doctrine immunizes petitioning of courts and administrative agencies from antitrust liability. *See Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 362 (4th Cir. 2013). CRISP tries to avoid

that immunity by invoking the sham-litigation exception and the fraudulent-procurement exception recognized in *Walker Process*, but it plausibly pleads neither. To the extent the counterclaim rests on petitioning, it should be dismissed. Its remaining allegations fail for the reasons below.

**a. CRISP Does Not Plausibly Allege Sham Litigation**

The sham litigation exception applies only if the challenged proceeding is first shown to be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) ("*PRE*"). Only if that showing is made may a court ask whether the petitioner subjectively intended to injure a competitor through the process itself. *Id.* at 60-61. An objectively reasonable effort to litigate "cannot be sham regardless of subjective intent." *Id.* at 57.

*The AHCA protest.* CRISP calls the protest "meritless" and "unnecessary," CC ¶ 142(a), but identifies no factual or legal defect that would have made it objectively baseless. That AHCA [or the reviewing tribunal] rejected the protest does not suffice. *See Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 399 (4th Cir. 2001) ("Lawsuits are not objectively baseless simply because a litigant lost."); *PRE*, 508 U.S. at 60 n.5 (courts must "resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation") (cleaned up).

*This lawsuit.* The question is whether the lawsuit is objectively baseless, not whether any one claim in it might be: "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*." *PRE*, 508 U.S. at 60; *see also Eden Hannon & Co. v. Sumitomo Tr. & Banking Co.*, 914 F.2d 556, 564-65 (4th Cir. 1990) (suit "hardly a sham" where plaintiff succeeded on one claim and lost others); *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 413 (3d Cir. 2016) (rejecting claim-by-claim application

of the sham exception). CRISP cannot plausibly allege that every count of the Amended Complaint is objectively baseless. The Court has allowed Audacious's unfair competition claim and its infringement claims on the '962 and '475 Patents to proceed, holding that Audacious's assignor estoppel allegations are plausible and rejecting CRISP's contrary legal arguments at the pleading stage. D.I. 39 at 27, 46-47. A suit that has survived a motion to dismiss in those respects is one an objective litigant could reasonably expect to succeed in.

*Even claim by claim, the theory fails.* CRISP relies on the Court's dismissal of the '194 Patent claims under § 101, alleging that "no reasonable litigant would have expected a different result." CC ¶ 143. That allegation restates the legal standard and pleads no supporting facts. The '194 Patent was presumed valid when asserted, 35 U.S.C. § 282(a), and its claims issued after the Examiner considered and withdrew a § 101 rejection under *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014). *See* D.I. 24-4 at 42. That the Court later reached a different conclusion, after full briefing and a detailed analysis, D.I. 39 at 27-43, shows that eligibility was a contested legal question, not that the assertion was baseless when made. *See Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1345 (Fed. Cir. 2014) ("Given the presumption of patent validity and the burden on the patent challenger to prove invalidity by clear and convincing evidence, it will be a rare case in which a patentee's assertion of its patent in the face of a claim of invalidity will be so unreasonable as to support a claim that the patentee has engaged in sham litigation.").

CRISP's allegations about the '962 and '475 Patents are equally conclusory. CRISP pleads no facts supporting its assertion that "no reasonable litigant could realistically expect the claims to withstand validity challenges." CC ¶ 144. And the Court has already held that assignor estoppel raises questions that cannot be resolved on the pleadings. CC ¶ 46; D.I. 39 at 21-27. A claim the Court found sufficiently plausible to proceed cannot be one on which "no reasonable litigant could

realistically expect success on the merits." *Tyco*, 762 F.3d at 1343 (citation omitted). CRISP's prediction that it will prevail on validity and estoppel is a merits argument, not an allegation of objective baselessness.

CRISP's licensing-based theory fares no better. CC ¶¶ 146-47. "[T]he mere existence of a possible . . . defense" does not make patent litigation a sham. *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 312 (4th Cir. 2003). CRISP offers no facts explaining why Audacious could not reasonably dispute that the alleged license covers the accused conduct. Particularly here where CRISP terminated its long-standing license to the Asserted Patent. D.I. 24 ¶¶ 100-03; *see also id.* ¶¶ 7-8.

#### b. CRISP Does Not Plausibly Allege *Walker Process* Fraud

"[T]he enforcement of a patent procured by fraud on the Patent Office may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965). CRISP's theory rests on the same allegations as its inequitable conduct counterclaim. *See* CC ¶ 165. As shown in Section IV.B, *infra*, those allegations do not plausibly plead a material misrepresentation or omission, or a specific intent to deceive the PTO. *Walker Process* fraud is a more demanding standard than inequitable conduct, so a claim that fails the lesser standard necessarily fails this one. *See Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059, 1070-71 (Fed. Cir. 1998) ("A finding of *Walker Process* fraud requires higher threshold showings of both intent and materiality than does a finding of inequitable conduct."). And even a well-pleaded *Walker Process* theory would still require the other elements of a § 2 claim, including a dangerous probability of monopoly power, which CRISP does not plead for the reasons in Section IV.A.1, *supra*.

#### 4. Alternatively, CRISP's Antitrust Counterclaim and the Parties' Unfair Competition Claims Should Be Bifurcated and Stayed

Should the Court allow CRISP's antitrust counterclaim to survive, Audacious respectfully requests that the Court bifurcate and stay CRISP's antitrust claim (Eighth Counterclaim) and the parties' unfair competition claims (Audacious's Count IV and CRISP's Seventh Counterclaim), pending resolution of the core patent infringement case.

Rule 42(b) permits a court to order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Courts have "broad discretion" in making that decision. *Ziemkiewicz v. R+L Carriers, Inc.*, No. 13-cv-00438, 2013 WL 2299722, at *2 (D. Md. May 24, 2013). In patent cases, separating patent issues from antitrust issues is a "now-standard practice." *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, No. 08-cv-2202, 2009 WL 10682454, at *3 (D. Md. Apr. 6, 2009) (quoting *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986)); *see also Audio MPEG, Inc. v. Dell Inc.*, 254 F. Supp. 3d 798, 805 (E.D. Va. 2017). Each Rule 42(b) consideration favors that course here.

*Economy.* CRISP's antitrust counterclaim is premised on "the objectively baseless assertion of the [Asserted Patents] and sham litigation" and on "inequitable conduct and fraudulent procurement." CC ¶ 165. Those theories depend on the validity, enforceability, and merit of the Asserted Patents, which the patent phase will decide. If Audacious prevails on infringement, validity, or enforceability, CRISP's sham-litigation theory is substantially undermined. The inequitable conduct counterclaim will be tried in the patent phase, and a *Walker Process* theory cannot succeed without the fraud finding that inequitable conduct requires. Resolving the patent claims first will therefore narrow or eliminate the antitrust phase. *See Walter Kidde*, 2009 WL 10682454, at *3. Trying everything together would lengthen the trial and increase costs for the parties and the Court.

CRISP's counterclaim also rests on Audacious's protest of the AHCA award and its communications to Florida providers. CC ¶¶ 142-47. Those allegations do not depend on the patent outcome. But whether communications asserting patent rights were wrongful turns largely on whether the patents are valid and enforceable. Those allegations are therefore best addressed after the patent phase.

*Distinct evidence for the unfair competition claims.* If the Court is inclined to bifurcate, Audacious is also amenable to bifurcating the parties' unfair competition claims. Both parties' unfair competition claims implicate a wider range of facts and discovery that are distinct and separate from the patent claims because "[w]hat constitutes unfair competition in a given case is governed by its own particular facts and circumstances." *G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*, 344 F.R.D. 446, 450 (D. Md. 2023) (quotation marks and citation omitted). Audacious alleges that CRISP deceptively migrated Maryland users from Audacious's system to CRISP's CEND system and misrepresented CEND's capabilities to AHCA. D.I. 24 ¶¶ 108-09. CRISP alleges that Audacious undermined the Florida transition to CEND through its AHCA protest and communications to providers. CC ¶¶ 165-66,. Proving these claims will require documents and witnesses concerning the Florida procurement, the Maryland migration, and events before and after them. The patent claims will largely concern the accused CRISP system. As noted above, Audacious is prepared to have its own Count IV tried in the second phase.

*Avoiding prejudice.* CRISP alleges that Audacious engaged in "sham litigation by which it asserts facially invalid patent claims." CC ¶ 142(d). Asking one jury to decide which claims are valid and whether asserting them was unlawful risks inviting the inference that enforcing the patents is itself wrongful. That risk is especially acute because petitioning is generally immune from antitrust liability under *Noerr-Pennington*. *See Intell. Ventures I LLC v. Cap. One Fin. Corp.*,

280 F. Supp. 3d 691, 697 n.6 (D. Md. 2017) ("Under the *Noerr-Pennington* doctrine, '[t]hose who petition government for redress,' including by filing suit in court, 'are generally immune from antitrust liability.'" (citations omitted)). Separate phases let the jury evaluate the patent claims on their own evidence, and let any second phase proceed with the patent outcome already known.

*Discovery on the antitrust counterclaim should also be stayed.* "District courts enjoy substantial discretion in managing discovery." *Pac. Life Ins. Co. v. Wells Fargo Bank, NA*, 702 F. Supp. 3d 370, 376 (D. Md. 2023). In considering whether there is good cause to order a stay, courts in this district assess the following considerations: (1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party. *MJ Enter. Holdings, Inc. v. Spiffy Franchising, LLC*, No. 1:24-CV-3194-RDB, 2025 WL 775515, at *2 (D. Md. Mar. 10, 2025). Each factor weighs in favor of a stay here. Bifurcation of the antitrust claim, and a stay of related discovery, would allow the parties to first focus on the patent issues that could drastically narrow the scope of the case. This provides judicial economy by potentially eliminating unnecessary discovery disputes and motions before this Court, and eliminates hardship to Audacious in time and expense incurred in discovery and motion practice. There is also no prejudice to CRISP if discovery on its antitrust claim is stayed. Accordingly, the Court should stay discovery on CRISP's antitrust claim. *Walter Kidde*, 2009 WL 10682454, at *3 (staying discovery on issues related only to antitrust cases); *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, No. 23-675-WCB, 2024 WL 639991, at *6 (D. Del. Feb. 15, 2024) ("…[A]llowing discovery relating to the antitrust counterclaim to go forward at this juncture would add significantly to the expense and delay in resolving the action, given the complexity associated with antitrust discovery.").

Accordingly, Audacious respectfully requests that the Court bifurcate the unfair

competition and antitrust claims pending the resolution of the parties' patent claims and defenses.

**B. The Court Should Dismiss CRISP's Inequitable Conduct Defenses and Counterclaims (Seventh Affirmative Defense, Third and Sixth Counterclaims)**

CRISP has not plead facts plausibly showing that the Asserted Patents are unenforceable for inequitable conduct. Because the defense sounds in fraud, a party asserting it must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Exergen*, 575 F.3d at 1327-28 (requiring the who, what, when, where, and how of the alleged misrepresentation or omission before the PTO). Substantively, inequitable conduct requires that "information material to patentability was withheld from the PTO, or material misinformation was provided to the PTO, with the intent to deceive or mislead the patent examiner into granting the patent." *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290 (Fed. Cir. 2012) (citing *Therasense*, 649 F.3d at 1290-92). The materiality required is "but-for materiality." *Therasense*, 649 F.3d at 1291. And at the pleading stage, a party must allege facts "from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29.

**1. CRISP Fails to Adequately Plead Any Material Representation or Omission**

**a. CRISP Has Not Presented Any Plausible Evidence that Applicants Misrepresented the Priority Date**

The pillar of CRISP's inequitable conduct theory is that Audacious "misrepresented and obscured the priority date" for the '962 and '475 Patents. CC ¶¶ 67, 132. By CRISP's telling, Audacious created a "complex priority chain designed to obscure that the claims were not supported by the earliest applications." *Id.* ¶ 69. Specifically, CRISP alleges that "[e]ach application . . . asserted an unsupported early priority" (*id.* ¶ 79), that each patent application

"expressly and falsely represented that the '887 Application 'claims the benefit of the filing date of a nonprovisional application filed prior to March 16, 2013'" and, that "the claimed subject matter was not entitled to those priority dates" (*id.*).

CRISP's own exhibits refute these allegations. In each application, Audacious submitted a statement under 37 C.F.R. § 1.78 (the "Rule 1.78 Statement") informing the Examiner that:

> This nonprovisional application is filed on or after March 16, 2013 and claims the benefit of the filing date of a nonprovisional application filed prior to March 16, 2013, ***and also contains, or contained at any time, a claim to a claimed invention that has an effective filing date as defined in § 1.109 that is on or after March 16, 2013***.

D.I. 45-11 at 2, 45-15 at 2, 45-17 at 6. CRISP quotes only the first half of that statement and omits the rest. The omitted portion tells the Examiner that at least one claim in the application is *not* entitled to a March 16, 2013 date.

The Rule 1.78 Statement tracks the language of 37 C.F.R. § 1.78(d)(6), which governs "transition applications": applications filed on or after March 16, 2013 that claim the benefit of an application filed before that date and contain at least one claim with an effective filing date on or after it. *See* M.P.E.P. § 210. Under that rule, an "[a]pplicant is not required to identify how many or which claims in the transition application have an effective filing date on or after March 16, 2013, or identify the subject matter in the transition application not also disclosed in the priority or benefit application. Applicant is only required to state that there is a claim in the transition application that has an effective filing date on or after March 16, 2013." *Id.* Audacious followed that rule. Contrary to CRISP's allegation, Audacious never represented that any specific claim or subject matter was entitled to a March 16, 2013 date. A statement that an application "claims the benefit" of an earlier filing does not represent that every claim is entitled to that date.

Because inequitable conduct sounds in fraud, CRISP must plead its theory with particularity, *Exergen*, 575 F.3d at 1327-28, and its allegations must also "raise a right to relief above the speculative level" and move its claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570. A court need not accept allegations that are contradicted by exhibits to the pleading. *See* Fed. R. Civ. P. 10(c). Here, CRISP's central factual allegation is contradicted by the Rule 1.78 Statements attached to its Counterclaims. Audacious never represented that the "claimed subject matter" was entitled to a date on or before March 16, 2013. To the contrary, it told the Examiner that the applications contained at least one claim with a later effective filing date. CRISP's priority-date theory of inequitable conduct should therefore be dismissed. *See, e.g.*, *Unimed Pharms. LLC v. Perrigo Co.*, No. 13-cv-236, 2015 WL 106851, at *2 (D. Del. Jan. 6, 2015) (dismissing inequitable conduct allegation where accused infringer failed to plead a plausible basis to find any misleading statements).

Without a plausible misrepresentation, CRISP's real complaint is that the issued claims lack written description support in the original March 2013 application. That is, at most, a dispute about validity, which CRISP is estopped from raising under assignor estoppel. It is not inequitable conduct. The Examiner had everything needed to determine the priority date, including the earlier applications and the Rule 1.78 Statements. As another court put it, "[w]ithout some allegation of misrepresented fact or material omission in the written description made or withheld to allow the claims to issue, there is no fraud." *Impact Engine, Inc. v. Google LLC*, No. 19-cv-01301, 2020 WL 3414627, at *2 (S.D. Cal. June 22, 2020). CRISP likewise alleges no misrepresented fact, so its inequitable conduct theory should be dismissed. *See Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1310-11 (N.D. Ga. 2003) (rejecting inequitable conduct based on allegations regarding priority date where the "examiner has before him everything necessary to render a

decision on the issue of priority," and "[t]hus, there is no material misrepresentation based on [the patentee's] claim for a 1979 priority date").

#### b. CRISP Has Failed to Plead Sufficient Facts to Demonstrate that the Alleged Priority Date Misrepresentation Was Material to Patentability

CRISP alleges that Audacious's purported misrepresentation about the priority date was material because the commercially available ENS system would have rendered the pending claims unpatentable. *See* CC ¶ 75. That theory fails for three reasons.

*First*, CRISP's allegations are conclusory. CRISP asserts only that some version of ENS "constituted prior art under the correct effective filing date of November 9, 2017," CC ¶¶ 111, 112, without identifying which version, when it became prior art, or whether it included the claimed features. A party alleging inequitable conduct based on prior art must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found—i.e., the 'what' and 'where' of the material omissions." *Exergen*, 575 F.3d at 1329 (citation omitted). Without those facts, CRISP cannot plausibly allege that the PTO would not have allowed the claims but for the alleged misrepresentation. *See Therasense*, 649 F.3d at 1291. Just calling a system "prior art" does not suffice. *See Prowess, Inc. v. RaySearch Lab'ys, AB*, 953 F. Supp. 2d 638, 650-51 (D. Md. 2013) (dismissing inequitable conduct counterclaim where defendants "have not identified which patent claims the references are relevant to, or which claim limitations are absent from the information of record").

*Second*, the prosecution record undercuts CRISP's theory, because the ENS system was disclosed to the Examiner. During prosecution of the '962 Patent, Audacious submitted a declaration from inventor Scott Afzal which stated that:

> Audacious Inquiry has successfully developed and implemented a healthcare alerting platform and service called ENS (Encounter Notification System or Service) for several large, state-wide clients, including Maryland, Florida, Utah, and Delaware, starting in August 2012 by the inventors of application 14/142,625. . . . The ENS as implemented functions in accordance with claim 1 in the 14/142,625 application[.]

Ex. 4[4], A57-66 at A58-59. The Examiner thus knew of ENS and its 2012 commercial use, yet did not reject the claims over it. *See* M.P.E.P. § 211.05 ("if the claims of a continuation-in-part application which are only entitled to the continuation-in-part filing date "read on" published, publicly used or sold, or patented subject matter (e.g., as in a genus-species relationship) a rejection under 35 U.S.C. 102 would be proper."). The specification of the 2013 priority application[5] also told the Examiner about related systems, noting that "Maryland's CRISP network" is an example of a "related art health information exchange," Ex. 5 at 1 (¶1), and that the inventors' system had advantages over "existing encounter notification systems," *id.* at 7 (¶16). CRISP's failure to say what is different about the unspecified version of ENS it relies on is especially telling against that record.

*Third*, to the extent CRISP contends that some other version of ENS was material, it does not allege "why" that information was not cumulative of what the Examiner already had. *Exergen*, 575 F.3d at 1329-30; *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, No. 12-441-RGA, 2014 WL 2622240, at *1 (D. Del. June 11, 2014) ("The pleading must also show that the omitted information is not cumulative of the information already on the record by identifying the particular claim limitations that are absent from the record.").

---

[4] The Court can consider the declaration because it is an attachment to the Appellant's Brief cited by CRISP as Ex. R and is therefore part of the prosecution history. Ex. 4 is a complete version of the Appellant's Brief and attachments, publicly available from the PTO website.

[5] The Court may consider the 2013 priority application because it is integral to CRISP's counterclaim, *see* CC ¶¶ 68, 72, 79, and its authenticity is not in dispute. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

**2. CRISP Fails to Adequately Plead That Any Person Who Owed a Duty of Candor to the PTO Acted With an Intent To Deceive the PTO**

CRISP must also plead facts showing that a specific individual who owed a duty of candor to the PTO knew of material information, or of the falsity of a material misrepresentation, and withheld or misrepresented it with a specific intent to deceive the PTO. *Exergen*, 575 F.3d at 1328-29. CRISP's allegations do not meet that standard.

*Mr. Brandt.* CRISP's allegations about Audacious's CEO, Mr. Brandt, fail at the threshold because CRISP pleads no facts showing that he was "substantively involved" in prosecuting the '962 and '475 Patents. Whether "the individual involved in the alleged misconduct owed a duty of candor to the PTO" is a "threshold inquiry in the inequitable conduct analysis." *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967, 976 (Fed. Cir. 2010). That duty extends only to "(1) each named inventor, (2) each attorney or agent that prepares or prosecutes the application, and (3) every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor or assignee." *Id.* at 973 (citing 37 C.F.R. § 1.56(c)). Involvement is "substantive" when it "relates to the content of the application or decisions related thereto" and is not "wholly administrative or secretarial in nature." *Id.* at 974 (citation omitted). Mr. Brandt is not a named inventor or an attorney, and CRISP's only allegation of involvement is that he signed a Power of Attorney form submitted to the PTO. CC ¶ 78. Appointing counsel is an administrative act that says nothing about the content of the applications or any decision about them. CRISP's allegations about Mr. Brandt therefore cannot support its inequitable conduct theory. *See EIS, Inc. v. WOW Tech Int'l GmbH*, No. 19-cv-1227, 2020 WL 7027528, at *9-11 (D. Del. Nov. 30, 2020) (dismissing inequitable conduct claim where complaint failed to plead sufficient facts to show that a CEO was "substantively involved in the preparation or prosecution of the application"); *EMC Corp. v. Pure Storage, Inc.*, No. 13-cv-1985,

2014 WL 5795557, at *1-2 (D. Del. Nov. 5, 2014) (striking inequitable conduct defense that failed to plead sufficient facts to show that lawyers named on a power of attorney form were substantively involved in prosecution).

*Mr. Brandt and Mr. Afzal.* CRISP alleges that Mr. Brandt and Mr. Afzal "knew or should have known that the claims of the '962 and '475 Patents were not entitled to a March 15, 2013 priority date because the earlier applications did not provide written-description support for the claimed limitations." CC ¶ 91. That allegation fails for two reasons. First, "should have known" is not enough. *Therasense*, 649 F.3d at 1290 (a "should have known" standard does not satisfy the intent requirement). Second, the allegation of actual knowledge is conclusory. It depends on the premise that Mr. Brandt and Mr. Afzal knew that the earlier applications lacked written description support, but CRISP pleads no facts showing that either man, neither of whom is alleged to be a patent attorney, held that view or understood the legal standard for written description and priority. Nor does CRISP allege facts showing that either man knew what was said to the PTO about priority. *See Bradley v. Applied Marine Sys. LLC*, No. 13-cv-03941, 2014 WL 1648726, at *4 (N.D. Cal. Apr. 23, 2014) (where inequitable conduct "turns on the effective filing date," the pleader "must allege facts that support a reasonable inference" that the individual knew the true effective filing date); *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 308 (D. Del. 2013) (no reasonable inference where no facts showed that "any individual with knowledge of the written description also had knowledge of the falsity of any material misrepresentation" and acted with intent to deceive). Moreover, Audacious's Rule 1.78 Statements told the Examiner that at least one claim had a later effective filing date, which is the opposite of what a party intending to deceive the PTO would do.

*Mr. Alley.* CRISP's allegations about Audacious's prosecuting attorney, Mr. Alley, also fail. CRISP alleges that he had an intent to deceive by pursuing a "contradictory strategy of claiming narrow constructions to overcome prior art while asserting broad priority." CC ¶ 93. As shown above, however, Audacious never asserted broad priority for the issued claims. *See supra* Section IV.B.1(a). And attorney argument about prior art cannot support an inequitable conduct claim in any event, because it is submitted to an Examiner who is "free to accept or reject the patentee's arguments distinguishing its invention from the prior art." *Illumina, Inc. v. BGI Genomics Co.*, No. 19-cv-03770, 2020 WL 571030, at *2 (N.D. Cal. Feb. 5, 2020) (quoting *Innogenetics, N.V. v. Abbott Lab'ys*, 512 F.3d 1363, 1379 (Fed. Cir. 2008)). CRISP's allegations about Mr. Alley therefore cannot support its inequitable conduct theory.

*Generalized allegations.* CRISP also fails to allege facts supporting an inference that anyone acted with specific intent to deceive. Much of CRISP's pleading attributes knowledge and intent to "Audacious" generally. *See, e.g.*, CC ¶ 76 ("Audacious knew of this commercial activity"); *id.* ¶ 85 ("Audacious acted with the specific intent to deceive"); *id.* ¶ 86 ("Audacious's prosecution statements demonstrate its awareness . . . ."). Those allegations are insufficient because a pleading must "name the specific individual" who acted with the requisite knowledge and intent. *Exergen*, 575 F.3d at 1329.

### C. The Court Should Strike CRISP's Unclean Hands Defense (Ninth Affirmative Defense)

CRISP's Ninth Affirmative Defense asserts that Audacious's unfair competition claim (Count IV) is barred by unclean hands because "prior to founding or developing the ENS system," Audacious allegedly contracted with a non-party, Axolotl Corp., "gained access to Axolotl's proprietary technology, methods, and know-how," and then terminated that relationship and developed ENS "based on what it had learned during its dealings with Axolotl." D.I. 45 at 17

(¶¶ 12-14). CRISP does not allege that it had any part in those dealings or was injured by them. Its theory is instead that Audacious's alleged conduct toward Axolotl "echoes" the conduct Audacious alleges against CRISP, such that Audacious "itself engaged in the sort of conduct it now alleges constitutes unfair competition." *Id.* at 17-18 (¶¶ 15-16). That is not a cognizable unclean hands defense. Although the doctrine "does not demand that its suitors shall have led blameless lives . . . it does require that they shall have acted fairly and without fraud or deceit ***as to the controversy in issue***." *Pediamed Pharms., Inc. v. Breckenridge Pharm., Inc.*, 419 F. Supp. 2d 715, 727 (D. Md. 2006) (citation and internal quotation omitted). The doctrine bars recovery "[o]nly when some unconscionable act of one coming for relief has immediate and necessary relation to the equity that the party seeks." *Malibu Media, LLC v. Doe*, No. 13-cv-0512, 2015 WL 1402286, at *3 (D. Md. Mar. 25, 2015) (citations and internal quotation omitted).

Measured against that rule, the Ninth Defense fails on its face. As this Court summarized Audacious's unfair competition claim, "Plaintiffs allege Defendants made false claims about their competing product to induce customers away from Plaintiffs and to Defendants, including ENS users in place when Defendants were still licensing ENS, and that Defendants' false representations deceived Plaintiffs' major customer, AHCA, resulting in Plaintiffs' lost bid." D.I. 39 at 46. Nothing Audacious is alleged to have done with Axolotl bears on any of that. Nor does CRISP allege that Audacious's dealings with Axolotl injured it—a further defect, because "[a]n unclean hands defense requires that [the defendant] show [it was] injured by [the plaintiff's] conduct." *Pediamed*, 419 F. Supp. 2d at 727; *see id.* at 728 ("The Fourth Circuit has made clear that in order to use the unclean hands defense, Defendants must show they were injured by Plaintiff's conduct."). The only connection CRISP identifies is that the two sets of allegations

"echo[]" one another, CC at 17 (¶ 15), which is simply an assertion that Audacious may not complain because, supposedly, it once did something similar to someone else.

The Court should strike CRISP's unclean hands defense because the allegations regarding Axolotl have no immediate and necessary relation to CRISP's unfair conduct, nor was CRISP injured by any alleged dealings with Axolotl. *See, e.g.*, *Malibu Media*, 2015 WL 1402286, at *3 (striking defense premised on plaintiff's own alleged uploading of its films to torrent sites where defendant "fail[ed] to identify inequitable conduct that [was] connected or related to the matters before the Court in this action"); *Janssens v. Freedom Med., Inc.*, No. 10-cv-2042, 2011 WL 1642575, at *3 n.1 (D. Md. Apr. 29, 2011) (rejecting unclean hands defense where plaintiff's alleged "instructing [defendant] to use a competitor's confidential information" was "not immediately and necessarily related to the torts committed by [defendant]").

CRISP's defense rests entirely on allegations made "upon information and belief" and closes with CRISP's reservation of "the right to supplement this defense as discovery proceeds," CC at 17-18 (¶¶ 12-14, 17)—confirming that it is a vehicle for discovery into a non-party's dealings with Audacious more than a decade ago rather than a defense to anything in this case, and that CRISP has not pleaded "the specific elements required to establish the defense," *Malibu Media*, 2015 WL 1402286, at *3 (citing *Prowess*, 953 F. Supp. 2d at 655). Leaving it in the pleadings would "affect the scope of discovery" and prejudice Audacious for no legitimate purpose. *Bureau of Cons. Fin. Prot. v. Fair Collections & Outsourcing, Inc.*, No. 19-cv-2817, 2021 WL 2685251, at *4 (D. Md. June 30, 2021) (citation omitted); *see Titan Sys.*, 787 F. Supp. 3d at 81.

### D. The Court Should Strike CRISP's Patent Misuse Defense (Tenth Affirmative Defense)

A defense of patent misuse only applies if a patent holder has acted to "impermissibly broaden[] the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986) (citation omitted). The classic examples of patent misuse are (i) "tying" arrangements, in which a license to a patent is conditioned on purchase of a separate, staple good, and (ii) certain arrangements requiring post-expiration royalties. *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997). This case presents neither, and the Federal Circuit has cautioned that "the body of misuse law and precedent need not be enlarged into an open-ended pitfall for patent-supported commerce." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998).

CRISP does not contend that Audacious has sought to enforce the '962 and '475 Patents past their expiration or beyond the scope of what they claim, but rather contends that Audacious has engaged in "unfair and anticompetitive schemes." CC at 18. The Court should strike CRISP's patent misuse defense because it has pleaded no facts to support an inference that Audacious sought to broaden impermissibly the scope of the patent grants. *See Sanofi-Aventis v. Apotex Inc.*, 659 F.3d 1171, 1182 (Fed. Cir. 2011) (affirming denial of leave to amend to add patent misuse defense based on allegations of "wrongful commercial conduct" that did not impermissibly broaden the physical or temporal scope of the patent).

### E. CRISP's "Equitable Defense" (Fourth Affirmative Defense) and "License Defense" (Sixth Affirmative Defense) Should Also Be Struck.

Finally, CRISP's "equitable defense" (Fourth Affirmative Defense) and "license defense" (Sixth Affirmative Defense) should be struck because they are nothing more than boilerplate allegations devoid of any specific facts. *Bradshaw v. Hilco Receivables, LLC*, 725 F. Supp. 2d

532, 537 (D. Md. 2010) (striking boilerplate defenses "stated in a conclusory manner" that "fail[ed] to provide fair notice to Bradshaw of the factual grounds upon which they rest").

## V. CONCLUSION

For all the reasons set forth herein, CRISP's antitrust attempted monopolization counterclaim (Eighth Counterclaim), inequitable conduct counterclaims (Third and Sixth Counterclaims) and defense (Seventh Affirmative Defense), equitable defense (Fourth Affirmative Defense), license defense (Sixth Affirmative Defense), unclean hands defense (Ninth Affirmative Defense), and patent misuse defense (Tenth Affirmative Defense) should be dismissed or struck.

Dated: October 16, 2026

Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
William C Jackson (*pro hac vice* forthcoming)
**GOODWIN PROCTER LLP**
1900 N Street, N.W.
Washington, D.C. 20036-1612
Telephone: (202) 346-4444
Fax: (202) 346-4444
WJackson@goodwinlaw.com
BBurgess@goodwinlaw.com

Srikanth K. Reddy (*pro hac vice*)
Kevin J. DeJong (*pro hac vice*)
Anna Zhou (*pro hac vice* forthcoming)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
Fax: (617) 523-1231
SReddy@goodwinlaw.com
KDeJong@goodwinlaw.com
AZhou@goodwinlaw.com

*Attorneys for Plaintiffs Audacious Inquiry LLC and Collective Medical Technologies, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on October 16, 2026.

*/s/ Brian T. Burgess*
Brian T. Burgess