**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| **AUDACIOUS INQUIRY LLC**<br><br>and<br><br>**COLLECTIVE MEDICAL TECHNOLOGIES, INC.**<br><br>Plaintiffs,<br><br>v.<br><br>**CHESAPEAKE REGIONAL INFORMATION SYSTEM FOR OUR PATIENTS**<br><br>and<br><br>**CRISP, INC. SHARED SERVICES AND AFFILIATES**<br><br>Defendants. | Civil Action No. 1:25-CV-02264-JRR |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS AUDACIOUS INQUIRY LLC'S AND COLLECTIVE MEDICAL TECHNOLOGIES, INC.'S MOTION TO DISMISS, STRIKE, OR BIFURCATE AND STAY CERTAIN AMENDED AFFIRMATIVE DEFENSES AND COUNTERCLAIMS**

# TABLE OF CONTENTS

**I. INTRODUCTION** ........ 1

**II. BACKGROUND** ........ 3

A. Audacious's Claims Against CRISP ........ 3

B. CRISP's Counterclaims and Affirmative Defenses ........ 3

**III. LEGAL STANDARD** ........ 5

**IV. ARGUMENT** ........ 6

A. The Court Should Dismiss CRISP's Antitrust Counterclaim (Eighth Counterclaim) or, Alternatively, Bifurcate and Stay the Antitrust and Unfair Competition Claims From the Core Patent Dispute ........ 6

1. CRISP Fails to Plausibly Allege a Dangerous Probability of Achieving Monopoly Power ........ 7

2. CRISP Fails to Plausibly Allege Harm to Competition or Cognizable Antitrust Injury ........ 11

3. CRISP Cannot Base Antitrust Liability on Audacious's Protected Petitioning Activity ........ 14

4. Alternatively, CRISP's Antitrust Counterclaim and the Parties' Unfair Competition Claims Should Be Bifurcated and Stayed ........ 17

B. The Court Should Dismiss CRISP's Inequitable Conduct Defenses and Counterclaims (Seventh Affirmative Defense, Third and Sixth Counterclaims) . 20

1. CRISP Again Fails to Adequately Plead Any Material Representation or Omission ........ 21

2. CRISP Again Fails to Adequately Plead That Any Person Who Owed a Duty of Candor to the PTO Acted With an Intent To Deceive the PTO ........ 26

C. The Court Should Strike CRISP's Patent Misuse Defense (Tenth Affirmative Defense) ........ 29

**V. CONCLUSION** ........ 30

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Accordant Energy, LLC v. Vexor Tech., Inc.*,
No. 17-cv-411, 2017 WL 4169635 (N.D. Ohio Sept. 19, 2017) ....27

*In re Aflibercept Pat. Litig.*,
No. 24-cv-3103, 2026 WL 1961865 (N.D.W. Va. July 7, 2026) ....30

*Alice Corp. Pty. v. CLS Bank Int'l*,
573 U.S. 208 (2014)....16

*Asetek Holdings, Inc. v. CoolIT Sys., Inc.*,
No. C-12-4498 EMC, 2013 WL 6326619 (N.D. Cal. Dec. 3, 2013)....22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....5

*Audio MPEG, Inc. v. Dell Inc.*,
254 F. Supp. 3d 798 (E.D. Va. 2017) ....18

*Avaya Inc., RP v. Telecom Labs, Inc.*,
838 F.3d 354 (3d Cir. 2016)....15

*Avid Identification Sys., Inc. v. Crystal Imp. Corp.*,
603 F.3d 967 (Fed. Cir. 2010)....27, 28

*Baltimore Scrap Corp. v. David J. Joseph Co.*,
237 F.3d 394 (4th Cir. 2001) ....15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)....8

*Bradley v. Applied Marine Sys. LLC*,
No. 13-cv-03941, 2014 WL 1648726 (N.D. Cal. Apr. 23, 2014)....28

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*,
509 U.S. 209 (1993)....11

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*,
429 U.S. 477 (1977)....1, 11, 12

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
157 F.3d 1340 (Fed. Cir. 1998)....30

*Carefirst of Maryland, Inc. v. Johnson & Johnson*,
745 F. Supp. 3d 288 (E.D. Va. 2024) ....17

*Dickson v. Microsoft Corp.*,
309 F.3d 193 (4th Cir. 2002) ....................8, 12

*DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*,
No. 23-cv-675, 2024 WL 639991 (D. Del. Feb. 15, 2024)....................20

*Eden Hannon & Co. v. Sumitomo Tr. & Banking Co.*,
914 F.2d 556 (4th Cir. 1990) ....................15

*EIS, Inc. v. WOW Tech Int'l GmbH*,
No. 19-cv-1227, 2020 WL 7027528 (D. Del. Nov. 30, 2020)....................28

*EMC Corp. v. Pure Storage, Inc.*,
No. 13-cv-1985, 2014 WL 5795557 (D. Del. Nov. 5, 2014)....................28

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009).................... *passim*

*G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*,
344 F.R.D. 446 (D. Md. 2023)....................19

*Go Med. Indus. Pty, Ltd. v. Inmed Corp.*,
300 F. Supp. 2d 1297 (N.D. Ga. 2003) ....................24

*Goines v. Valley Cmty. Servs. Bd.*,
822 F.3d 159 (4th Cir. 2016) ....................25

*Hall v. Virginia*,
385 F.3d 421 (4th Cir. 2004) ....................8

*Hedley v. ABHE & Svoboda, Inc.*,
No. 14-cv-2935, 2015 WL 4626880 (D. Md. July 31, 2015) ....................8

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
335 F.3d 303 (4th Cir. 2003) ....................16

*Ill. Tool Works Inc. v. Indep. Ink, Inc.*,
547 U.S. 28 (2006)....................10

*Illumina, Inc. v. BGI Genomics Co.*,
No. 19-cv-03770, 2020 WL 571030 (N.D. Cal. Feb. 5, 2020) ....................29

*Impact Engine, Inc. v. Google LLC*,
No. 19-cv-01301, 2020 WL 3414627 (S.D. Cal. June 22, 2020) ....................24, 27

*Intell. Ventures I LLC v. Cap. One Fin. Corp.*,
280 F. Supp. 3d 691 (D. Md. 2017)....................19

*Loren Data Corp. v. GXS, Inc.*,
501 F. App'x 275 (4th Cir. 2012) ....................................................................................14

*M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*,
981 F.2d 160 (4th Cir. 1992) ..........................................................................................7

*Merkle Press Inc. v. Merkle*,
519 F. Supp. 50 (D. Md. 1981)........................................................................................12

*Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*,
No. 09-cv-2657, 2011 WL 2415014 (D. Md. June 10, 2011)............................................6

*MJ Enter. Holdings, Inc. v. Spiffy Franchising, LLC*,
No. 1:24-CV-3194-RDB, 2025 WL 775515 (D. Md. Mar. 10, 2025).................................20

*Outside the Box Innovations, LLC v. Travel Caddy, Inc.*,
695 F.3d 1285 (Fed. Cir. 2012).......................................................................................21

*Pac. Life Ins. Co. v. Wells Fargo Bank, NA*,
702 F. Supp. 3d 370 (D. Md. 2023) ..................................................................................20

*Princo Corp. v. Int'l Trade Comm'n*,
616 F.3d 1318 (Fed. Cir. 2010).........................................................................................2

*Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*,
508 U.S. 49 (1993)......................................................................................................14, 15

*Prowess, Inc. v. RaySearch Lab'ys, AB*,
953 F. Supp. 2d 638 (D. Md. 2013) ..................................................................................26

*Senju Pharm. Co. v. Apotex, Inc.*,
921 F. Supp. 2d 297 (D. Del. 2013)...................................................................................29

*Spectrum Sports, Inc. v. McQuillan*,
506 U.S. 447 (1993)..........................................................................................................7

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
No. 12-cv-441, 2014 WL 2622240 (D. Del. June 11, 2014) ..............................................26

*Therapearl, LLC v. Rapid Aid Ltd.*,
No. 13-cv-2792, 2014 WL 4794905 (D. Md. Sept. 25, 2014)............................................8

*Therasense, Inc. v. Becton, Dickinson & Co.*,
649 F.3d 1276 (Fed. Cir. 2011) (en banc)...................................................................*passim*

*Thompson Everett, Inc. v. Nat'l Cable Advert., L.P.*,
57 F.3d 1317 (4th Cir. 1995) ............................................................................................11

*Titan Sys., LLC v. SRI Int'l*,
787 F. Supp. 3d 72 (D. Md. 2025) ....................5

*Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*,
762 F.3d 1338 (Fed. Cir. 2014) ....................16

*Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*,
540 U.S. 398 (2004) ....................11

*Virginia Panel Corp. v. MAC Panel Co.*,
133 F.3d 860 (Fed. Cir. 1997) ....................30

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
382 U.S. 172 (1965) ....................10, 12, 14, 17

*Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*,
No. 08-cv-2202, 2009 WL 10682454 (D. Md. Apr. 6, 2009) ....................18, 20

*Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*,
728 F.3d 354 (4th Cir. 2013) ....................14

*Windsurfing Int'l Inc. v. AMF, Inc.*,
782 F.2d 995 (Fed. Cir. 1986) ....................29

*Ziemkiewicz v. R+L Carriers, Inc.*,
No. 13-cv-00438, 2013 WL 2299722 (D. Md. May 24, 2013) ....................18

**Statutes**

35 U.S.C. § 271(d)(3) ....................30

35 U.S.C. § 282(a) ....................16

**Other Authorities**

37 C.F.R. § 1.78 ....................22

37 C.F.R. § 1.78(d)(6)(i) ....................22

Fed. R. Civ. P. 9(b) ....................6, 20

Fed. R. Civ. P. 12(f) ....................6

Fed. R. Civ. P. 42(b) ....................6, 17, 18

M.P.E.P. § 201.08 ....................22

M.P.E.P. § 210 ....................23

M.P.E.P. § 211.05 ....................................................................................................25

## TABLE OF ABBREVIATIONS

| Abbreviation | Full Name |
|---|---|
| ’194 Patent | U.S. Patent No. 11,114,194 |
| ’475 Patent | U.S. Patent No. 12,047,475 |
| ’962 Patent | U.S. Patent No. 10,938,962 |
| AHCA | Florida’s Agency for Healthcare Administration |
| Asserted Patents | ’194 Patent, ’475 Patent, and ’962 Patent |
| Audacious | Plaintiffs Audacious Inquiry LLC and Collective Medical Technologies, Inc. |
| CC | Defendants’ Amended Answer and Counterclaims (D.I. 51) |
| CRISP | Defendants Chesapeake Regional Information System for our Patients and CRISP, Inc. Shared Services and Affiliates |
| CEND | CRISP Event Notification Delivery software, sold by CSS |
| CSS | Defendant CRISP, Inc. Shared Services and Affiliates |
| D.I. | Docket Index |
| ENS | Event Notification Service software, sold by Audacious |
| HIE | Health Information Exchange |
| M.P.E.P. | PTO’s Manual of Patent Examining Procedure (MPEP) |
| PTO | United States Patent and Trademark Office |

## I. INTRODUCTION

After CRISP terminated its long-standing license with Audacious, it kept practicing the Asserted Patents anyway and began competing unfairly in violation of Maryland law, prompting this suit. Having failed to convince the Court to dismiss Audacious's claims, CRISP now hopes to expand the complexity, cost, and duration of the case. It does so by asserting counterclaims and defenses for attempted monopolization, inequitable conduct, and patent misuse, all built on allegations that still do not meet the pleading standard after CRISP's amendment. The Court should dismiss, strike, and/or stay CRISP's counterclaims and defenses for the following reasons.

*First*, CRISP's attempted monopolization counterclaim still fails to allege the essential elements of an antitrust claim, even after CRISP had an opportunity to amend. CRISP now pleads both a nationwide market and, alternatively, a Florida market, but the claim fails under either definition. CRISP's allegations of market power concern only Florida, where CSS itself won the state's HIE contract through a competitive procurement. CRISP does not plausibly explain how Audacious has a dangerous probability of achieving monopoly power in either market. Its new theories, based on the hypothetical breadth of the Asserted Patents and on PCC's position in an *unrelated* market, do not fill that gap. Nor does CRISP plausibly connect its alleged business losses and transition difficulties to harm to the competitive process. The antitrust laws protect competition, not individual competitors from every commercial injury. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488-89 (1977). And finally, CRISP bases its claim in large part on Audacious's petitioning activity in Florida and in this Court, which is protected by the *Noerr-Pennington* doctrine, and CRISP does not plausibly allege that any exception applies. Alternatively, the Court should bifurcate and stay that counterclaim and the parties' unfair competition claims pending resolution of the core patent dispute.

*Second*, CRISP asks the Court to impose the drastic remedy of finding Audacious's patents unenforceable for inequitable conduct—a penalty that the Federal Circuit has famously called the "'atomic bomb' of patent law." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) (en banc) (citation omitted). Because the charge is so grave, a party asserting it must plead with particularity under Rule 9(b) the who, what, when, where, and how of the alleged fraud, and facts supporting a reasonable inference of specific intent to deceive the PTO. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). With its amendment, CRISP has abandoned its allegation that Audacious submitted a false statement to the PTO. CRISP's new vague allegations of "omissions and misrepresentations" still do not meet the pleading standard. CRISP nominally alleges that (1) Audacious did not disclose to the Examiner that the issued patent claims were not entitled to a March 15, 2013 priority date; and (2) the omission was material because the ENS system was not disclosed as prior art during prosecution. Whether the claims are entitled to the March 15, 2013 filing date is a question of validity, not inequitable conduct, and CRISP is barred by assignor estoppel from raising it. And CRISP's exhibit to its own counterclaim shows that the ENS system was in fact disclosed as prior art to the Examiner. Further, CRISP pleads no facts supporting a reasonable inference that anyone acted with intent to deceive.

*Third*, the Court should strike CRISP's affirmative defense of patent misuse, which applies only where a patentee impermissibly broadens the scope of its patent with anticompetitive effect, such as by conditioning a patent license on the purchase of a separate staple good. *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1328 (Fed. Cir. 2010). CRISP alleges no such facts.

CRISP has now had two bites at the apple to attempt to plead its counterclaims and defenses. CRISP should not be allowed yet another opportunity to amend. The Court should dismiss CRISP's counterclaims and defenses of antitrust, inequitable conduct, and patent misuse.

## II. BACKGROUND

### A. Audacious's Claims Against CRISP

The inventions claimed in the Asserted Patents, which Audacious developed in collaboration with CRISP, cover technical solutions that facilitate the exchange of patient health information between health care institutions and other interested parties. D.I. 24 ¶¶ 4, 6. After more than ten years of licensing the patents from Audacious, CRISP declined to renew its license in May 2024 and then launched a copycat product called CEND that competes directly with Audacious's ENS system. *Id.* ¶¶ 8, 103. CRISP also redirected customers from Audacious's ENS system to CEND by misrepresenting the capabilities of CEND. *Id.* ¶¶ 8, 10-11, 106.

Audacious filed suit in July 2025, asserting that CRISP infringes three patents and that CRISP has unfairly competed in violation of Maryland law. D.I. 1. CRISP filed a motion to dismiss (D.I. 28), which this Court granted-in-part (D.I. 40). The Court rejected CRISP's assertion that assignor estoppel was inapplicable at the pleading stage, allowing this case to proceed on two of the Asserted Patents and Audacious's unfair competition claim. D.I. 39 at 27, 43, 47.

### B. CRISP's Counterclaims and Affirmative Defenses

CRISP seeks to drastically expand the case with misplaced theories of attempted monopolization, inequitable conduct, and patent misuse. CRISP amended its pleading (CC) after Audacious moved to dismiss and strike those counterclaims and defenses (D.I. 47).

CRISP's Eighth Counterclaim alleges attempted monopolization of a purported nationwide market for "health information exchange ADT event-notification services for healthcare providers" and, alternatively, a Florida-only market. *Id.* ¶¶ 148-149. CRISP's allegations of market power, however, still concern only Audacious's position in Florida; as to other states, CRISP alleges only that, "[o]n information and belief," Audacious possesses "similar" power through "similar exclusive arrangements" in other states. *Id.* ¶ 150. CRISP now adds allegations

about non-party PCC's electronic health record business, and contends that the Asserted Patents would "confer [Audacious] 100% market share." *Id.* ¶¶ 152-153. CRISP's own account of the Florida HIE procurement alleges that Florida solicited a new HIE vendor, conducted a competitive process, and selected CSS for the contract (over Audacious and others). *Id.* at 22-23 (¶¶ 13, 15). CRISP further alleges that the transition to CSS was underway in 2025 and that Audacious's Florida contract was to "terminate no later than August 1, 2026." *Id.* at 23 (¶¶ 16, 18).

CRISP bases its antitrust theory in large part on Audacious's challenge to that procurement and its enforcement of the Asserted Patents, characterizing those proceedings as sham litigation and alleging that the patents were procured through fraud. *Id.* ¶¶ 129, 156. CRISP also alleges that Audacious's communications and conduct impeded CSS's transition. *Id.* at 23-24 (¶ 21); *id.* ¶¶ 33, 35. CRISP's resulting injuries allegedly include lost profits, increased costs, operational delays, and harm to CRISP's ability to compete. *Id.* ¶ 158. CRISP separately asserts that it and unspecified others have been foreclosed from competing and that customers have experienced higher prices, lower quality, reduced interoperability, and suppressed innovation. *Id.* ¶ 157. CRISP now attributes that harm to the Asserted Patents, which it alleges "[o]n information and belief" are used "to exclude or deter rival bidders," *id.*, but it identifies no such bidder.

CRISP alleges in its Third and Sixth Counterclaims and Seventh Affirmative Defense that the '962 and '475 Patents are unenforceable due to inequitable conduct because, "[b]y threading the claims back to the [March 2013] Application through different families, Audacious created the misleading appearance that the claims were entitled to a March 15, 2013 priority date and that ENS therefore was not prior art." CC ¶ 61. CRISP no longer alleges that Audacious "expressly and falsely" represented the applications' priority date, *see* D.I. 51-1 at 43-44, and acknowledges that Audacious informed the Examiner that "the application contains, or contained at any time, a claim

with an effective filing date on or after March 16, 2013." CC ¶ 66. CRISP also acknowledges that Audacious's ENS system was disclosed to the Examiner as being publicly available in August 2012. CC ¶ 79. CRISP instead complains that Audacious "failed to disclose that ENS was prior art under the claims' true effective filing date"—but, by CRISP's own account, "ENS was prior art to the asserted claims if, and only if, those claims were not entitled to the . . . March 15, 2013 filing date," which CRISP alleges turns on "written-description support." *Id.* ¶¶ 55, 58.

Finally, CRISP lobs a patent misuse defense (Tenth Affirmative Defense) based on vague "unfair and anticompetitive schemes." CC at 19-20 (¶ 22). CRISP now adds that Audacious "sought to impermissibly broaden" the patents' scope by "(a) using an unsupported claim of priority to March 15, 2013" and "(b) asserting the patents against CRISP Maryland's activities within its perpetual, paid-up license." *Id.* at 20 (¶ 22). Even if true (which Audacious disputes), neither allegation is a basis for patent misuse.

## III. LEGAL STANDARD

Under Rule 12(b)(6), a court should dismiss a counterclaim that fails to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept allegations as true, that tenet "is inapplicable to legal conclusions," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Where the well-pleaded facts "do not permit the court to infer more than the mere possibility of misconduct," the pleader has not shown an entitlement to relief. *Id.* at 679. These pleading requirements apply equally to counterclaims and affirmative defenses. *Titan Sys., LLC v. SRI Int'l*, 787 F. Supp. 3d 72, 77-78, 80 (D. Md. 2025) ("applying the *Twombly-Iqbal* pleading standard" to affirmative defenses).

A party alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Inequitable conduct counterclaims and affirmative defenses alike must satisfy Rule 9(b). *See Exergen*, 575 F.3d at 1318, 1325; *Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, No. 09-cv-2657, 2011 WL 2415014, at *3-4 (D. Md. June 10, 2011).

Under Rule 12(f), a court may "strike from a pleading an insufficient defense." Fed. R. Civ. P. 12(f). A defense that "might confuse the issues" and "would not, under the facts alleged, constitute a valid defense to the action," "can and should be deleted." *Mike's Train House*, 2011 WL 2415014, at *2 (citation omitted).

## IV. ARGUMENT

### A. The Court Should Dismiss CRISP's Antitrust Counterclaim (Eighth Counterclaim) or, Alternatively, Bifurcate and Stay the Antitrust and Unfair Competition Claims From the Core Patent Dispute

CRISP's attempted monopolization counterclaim fails for three independent reasons. First, CRISP still does not plausibly allege a dangerous probability that Audacious will achieve monopoly power in the relevant market. Second, CRISP still does not plausibly allege antitrust injury, meaning harm to competition rather than to CRISP alone. Third, the counterclaim rests largely on Audacious's petitioning activity, which the *Noerr-Pennington* doctrine immunizes from antitrust liability, and CRISP does not plausibly allege that the sham litigation exception applies. CRISP's amended pleading fails to cure these issues. Because CRISP still fails to state an antitrust claim after amendment, the Court should dismiss the counterclaim with prejudice. Alternatively, if any part of it survives, the Court should bifurcate and stay it, together with the parties' unfair competition claims, until the core patent dispute is resolved. *See* Fed. R. Civ. P. 42(b).

### 1. CRISP Fails to Plausibly Allege a Dangerous Probability of Achieving Monopoly Power

To state a claim for attempted monopolization, CRISP must plausibly allege (1) anticompetitive conduct, (2) a specific intent to monopolize, and (3) a dangerous probability of achieving monopoly power. *Spectrum Sports, Inc. v. McQuillan*, 506 U.S. 447, 456 (1993). For the final element, "[d]emonstrating the dangerous probability of monopolization in an attempt case . . . requires inquiry into the relevant product and geographic market and the defendant's economic power in that market." *Id.* at 459. That probability "must be shown to be substantial and real." *M & M Med. Supplies & Serv., Inc. v. Pleasant Valley Hosp., Inc.*, 981 F.2d 160, 168 (4th Cir. 1992). CRISP fails to plausibly allege that Audacious has a dangerous probability of successfully achieving a monopoly in either market it now raises in its amended pleading. CRISP pleads no facts showing market power in the nationwide market, the facts pled regarding the alternative Florida market show the opposite of a dangerous probability, and its new theories based on the Asserted Patents and on PCC's position in a different market cannot fill the gap.[1]

First, CRISP's market allegations are mismatched. CRISP alleges that "[t]he relevant market is the market for health information exchange ADT event-notification services for healthcare providers *in the United States* (the 'National HIE Notification Market')." CC ¶ 148 (emphasis added). Yet its factual allegations of Audacious's supposed monopoly power concern only Florida. *Id.* ¶ 150. The sole allegation about the rest of the country is a single conclusory sentence, made "[o]n information and belief," that Audacious has "similar" power "in other states where it has [sic] entered into similar exclusive arrangements." *Id.* CRISP does not allege

[1] Audacious accepts CRISP's product market definition for purposes of this motion only and does not concede that it is plausibly defined. The Court need not decide that question because CRISP's antitrust claim fails even under either of CRISP's alternative definitions.

Audacious's national market share, customer share, revenue share, or any concentration data, or any other facts suggesting that Audacious could control the national market. Without such facts, the allegations do not "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see Dickson v. Microsoft Corp.*, 309 F.3d 193, 212-13 (4th Cir. 2002) ("[B]y failing to allege Compaq's and Dell's market share or power, Gravity has failed to set forth factual allegations necessary to support the basic elements of its § 1 and § 2 claims."); *Therapearl, LLC v. Rapid Aid Ltd.*, No. 13-cv-2792, 2014 WL 4794905, at *8 n.10 (D. Md. Sept. 25, 2014) (dismissing monopolization or attempted monopolization claim where the pleading "says nothing about how much of the market [defendant] controls, and includes no specific allegations").

Despite having the opportunity to amend, CRISP still fails to cure this defect. CRISP alleges that HIE services are procured state by state, with each state agency selecting its own vendor through "dedicated contracts." CC ¶ 148. Further, state HIE contracts are public, and they show that a number of states' HIEs have not contracted with Audacious. CRISP itself is the designated HIE for Maryland, and its affiliate CSS provides HIE technology in Rhode Island. *See* Ex. 1 (Vermont HIE contract with Vermont Information Technology Leaders, Inc.); Ex. 2 (identifying CRISP as "the State-Designated HIE" for Maryland); Ex. 3 (identifying "CRISP Shared Services" as the Rhode Island HIE technology provider).[2] Thus, CRISP's own allegations and publicly available information undercut an alleged nationwide HIE market and Audacious's ability to monopolize such a market.

---

[2] "Ex." refers to the Exhibits to the Declaration of Kevin J. DeJong, filed concurrently herewith. The Court can take judicial notice of Exs. 1-3, as they are government contracts and information on state government websites. *Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (taking judicial notice, on review of a Rule 12(b)(6) dismissal, of information publicly available on an official government website); *Hedley v. ABHE & Svoboda, Inc.*, No. 14-cv-2935, 2015 WL 4626880, at *2 n.5 (D. Md. July 31, 2015) (taking judicial notice of government contract documents as public records in a Rule 12(b) analysis).

Second, CRISP's alternative Florida market, CC ¶ 149, fails on CRISP's own allegations. CRISP alleges that (1) four companies competed for the Florida HIE contract, *id.* at 23 (¶ 15); (2) CSS won it, and the award was upheld over Audacious's protest, *id.*; (3) Audacious's Florida contract was to terminate "no later than August 1, 2026," *id.* at 23 (¶ 16); and (4) CSS is "the competitor that won the AHCA contract to replace Counterclaim-Defendants as the exclusive provider of HIE services in Florida," *id.* ¶ 155. On those allegations, the competitive process worked: a CRISP affiliate won the contract over Audacious and other bidders. CRISP does not explain how Audacious could have a dangerous probability of monopolizing Florida after losing the only contract at issue there and where CRISP is now the "exclusive provider."

CRISP's allegations also place the decision with the State, not with Audacious. AHCA decided to seek a new vendor, issued a procurement, and awarded the contract to CSS. *See, e.g.*, CC at 22-23 (¶ 13) ("AHCA raised concerns with PCC's platform, and rather than acceding to PCC's demands, and in anticipation of the existing contract's expiration in August 2025, AHCA issued an Invitation to Negotiate Procurement ('INP') for a new Florida HIE vendor on or around May 6, 2024."); *id*. at 23 (¶ 15) ("On January 23, 2025, after a completive [*sic*] negotiation process involving four participants, AHCA posted its intended award of the new Florida HIE contract to CSS."). A party that has just lost a state's competitive procurement, and does not control who that state selects, has no dangerous probability of monopolizing that state's market. CRISP therefore fails to plausibly allege a dangerous probability of monopoly power even in Florida.

CRISP's amended allegation that Audacious has "sought to maintain control over the provision of HIE services in Florida" through an intermediary model and its "evergreen" contract position, CC ¶ 150, does not save CRISP's claim for a Florida-only market. CRISP itself alleges that the intermediary model required providers to sign CSS's agreement and to pay CSS, *id.* ¶ 24.

AHCA also confirmed that the arrangement was optional, needed only by an organization that "wish[es] to use an intermediary rather than directly connect to the new Florida HIE platform." *Id.* ¶ 29. And AHCA rejected Audacious's "evergreen" interpretation. *Id.* ¶ 33. CRISP fails to explain how Audacious's offer to serve as an ***optional*** intermediary for customers of Florida's exclusive HIE vendor, and a contract position that Florida rejected, could give rise to a plausible inference that Audacious has the ability to control prices or exclude competition in Florida.

Third, CRISP's new theory that the Asserted Patents create a dangerous probability of monopoly power fails as a matter of law. CRISP alleges that, "if interpreted as broadly as Counterclaim-Defendants allege," the patents "would effectively foreclose every potential competitor" and confer "100% market share." CC ¶ 153. But CRISP does not actually allege that the patents are that broad—elsewhere it insists they are narrow, *id.* ¶¶ 73-75—and a hypothetical premised on Audacious's litigation position is not an allegation of market power. Moreover, a patent does not, by itself, confer market power. *Ill. Tool Works Inc. v. Indep. Ink, Inc.*, 547 U.S. 28, 45-46 (2006). Instead, *Walker Process* requires a court to "appraise the exclusionary power of the illegal patent claim in terms of the relevant market." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 177 (1965). CRISP pleads no facts relevant to that appraisal: it does not allege which market participants' systems would fall within the claims, or what share of any market the claims would foreclose. In any event, enforcing a presumptively valid patent is not monopolization; patent enforcement can support § 2 liability only through sham litigation or *Walker Process* fraud, which CRISP fails to plead. *Infra* § IV.A.3.

Finally, CRISP's new allegations about PCC's position in the electronic health record market concern a different market altogether. Power in one market does not establish a dangerous probability of monopolizing another; leveraging is not an independent basis for § 2 liability absent

a dangerous probability of success in the second market. *See Verizon Commc'ns Inc. v. L. Offs. of Curtis V. Trinko, LLP*, 540 U.S. 398, 415 n.4 (2004). CRISP's only purported link between the two markets is an allegation that, "[o]n information and belief," PCC sought "to channel the data and provider relationships of its EHR customers into those platforms." CC ¶ 152. That conclusory allegation says nothing about Audacious's share of, or power in, any HIE notification market.

**2. CRISP Fails to Plausibly Allege Harm to Competition or Cognizable Antitrust Injury**

CRISP still does not plausibly allege antitrust injury, that is, harm to competition rather than harm to CRISP alone. "[T]he antitrust laws . . . were enacted for 'the protection of competition, not competitors.'" *Brunswick*, 429 U.S. at 488 (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)). Thus, "only injury caused by damage to the competitive process may form the basis of an antitrust claim." *Thompson Everett, Inc. v. Nat'l Cable Advert., L.P.*, 57 F.3d 1317, 1325 (4th Cir. 1995). And the injury must be "of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful." *Brunswick*, 429 U.S. at 489. Even "an act of pure malice by one business competitor against another does not, without more, state a claim under the federal antitrust laws." *Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 225 (1993) (citation omitted). CRISP's allegations fall short of this standard whether the market is a nationwide market or is limited to Florida.

CRISP identifies two categories of harm: (1) injuries to its own business, and (2) conclusory allegations of harm to CRISP and "others." Neither suffices.

*Harm to CRISP's business.* CRISP alleges that Audacious's conduct caused (a) delay and disruption in the Florida transition; (b) provider confusion, lost time, increased support costs, and diverted CSS resources; (c) interference with CSS's relationships with AHCA and Florida providers; (d) costs of responding to Audacious's communications and defending this action; (e)

reputational harm; and (f) lost revenue and profits from delayed or diverted provider relationships. CC ¶ 39; *see also id.* ¶ 158 (alleging "antitrust injury" consisting of "lost profits, increased costs, . . . delay in establishing competitive operations, and harm to [CRISP's] ability to compete"). Each is a harm to CRISP's business. None is tied to harm to competition in the alleged market. Item (d) in particular arises from Audacious's petitioning activity and cannot be antitrust injury for the reasons in Section IV.A.3, *infra*. CRISP's invocation of attorneys' fees, CC ¶ 157, does not save its claim. Even if defense costs could constitute antitrust injury in a *Walker Process* case, CRISP fails to plausibly allege either basis for overcoming petitioning immunity—sham litigation or fraudulent patent procurement. The remaining items describe the ordinary friction of a vendor transition, not injury flowing from what allegedly makes Audacious's conduct anticompetitive. *See Brunswick*, 429 U.S. at 489 (antitrust injury "should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation"). Courts dismiss antitrust claims that allege only harm to a competitor. *See Dickson*, 309 F.3d at 206 ("[H]arm to one or many competitors will not suffice.") (citation omitted); *Merkle Press Inc. v. Merkle*, 519 F. Supp. 50, 53-54 (D. Md. 1981) (dismissing Sherman Act claim where plaintiff alleged lost business but no injury to competition).

CRISP may assert that delaying a new entrant's operations is itself exclusionary harm. But CRISP's own allegations show that AHCA chose CSS through a competitive process, that CSS holds the contract, and that the transition was moving forward in 2025. CC at 23 (¶¶ 15, 18); *id.* ¶ 155. CRISP pleads no facts showing that the State or any provider lost a choice, that any rival was excluded from the market, or that a delay in one provider's transition reduced competition.

*Conclusory allegations of market-wide harm.* CRISP tries to supply the missing link by asserting that it and unspecified "others" have been "substantially foreclosed from competing" and

that unnamed customers have suffered "higher prices, lower product and service quality, reduced interoperability, and suppressed innovation." CC ¶ 157. These assertions recite anticompetitive effects without facts connecting them to the alleged conduct. The specific burdens CRISP pleads elsewhere, namely potential duplicative intermediary charges, provider confusion, and obstacles to CSS's onboarding and data connections, *id.* ¶¶ 25, 33, 139, affect particular providers and CSS in Florida. Even accepted as true, they do not show impairment of the competitive process in the national market, or, as shown above, in Florida.

CRISP's amended pleading adds more of the same. CRISP now alleges that the Asserted Patents "threaten every actual and potential competitor," and that, "[o]n information and belief," Audacious uses them "to exclude or deter rival bidders from state procurements and from contracts with healthcare providers nationwide," which "enables [Audacious] to raise subscriber fees and degrade service quality." CC ¶ 157. But CRISP fails to identify even a single rival bidder that was deterred, a single procurement affected, a single provider that lost an option, or a single fee that increased. And the only rival that CRISP does identify, CSS, won the very procurement at issue. *Id.* ¶ 155. In short, CRISP fails again to provide any factual allegations giving rise to a plausible inference of market-wide harm.

CRISP's "higher prices" theory, CC ¶ 157, also lacks factual support. CRISP pleads no price increase and identifies no customer that paid more. Its own allegations show that the Florida HIE operates under a "zero-dollar contract with no payments to or from the State of Florida," funded by subscriber fees "overseen by AHCA and other Florida agencies." CC at 23 (¶ 17). CRISP does not explain how Audacious, which lost that contract, could raise prices in a market whose fees a state agency oversees.

The Fourth Circuit's decision in *Loren Data Corp. v. GXS, Inc.*, 501 F. App'x 275 (4th Cir. 2012) illustrates the point. The plaintiff there argued that "smaller EDI consumers are harmed by [defendant] GXS's exclusionary conduct because accessing the GXS Network through another Network is more expensive." *Id.* at 283. The court rejected that argument because the plaintiff "offer[ed] no facts to support its conclusory assertion that smaller EDI consumers have been denied access or are otherwise unable to obtain EDI services because of cost." *Id.* The same is true here: CRISP offers no facts that any customer was harmed. Because CRISP pleads harm to itself, not to competition, the counterclaim fails for this independent reason.

**3. CRISP Cannot Base Antitrust Liability on Audacious's Protected Petitioning Activity**

CRISP's attempted monopolization counterclaim rests in large part on Audacious's petitioning activity: its protest of AHCA's contract award in Florida and its prosecution of this action. *See* CC ¶¶ 155-57. The *Noerr-Pennington* doctrine immunizes petitioning of courts and administrative agencies from antitrust liability. *See Waugh Chapel S., LLC v. United Food & Com. Workers Union Loc. 27*, 728 F.3d 354, 362 (4th Cir. 2013). CRISP tries to avoid that immunity by invoking the sham-litigation and fraudulent-procurement exceptions recognized in *Walker Process*, but it plausibly pleads neither. To the extent the counterclaim rests on petitioning, it should be dismissed. CRISP's remaining allegations fail for the reasons below.

**a. CRISP Does Not Plausibly Allege Sham Litigation**

The sham litigation exception applies only if the challenged proceeding is first shown to be "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Pro. Real Est. Invs., Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993) ("*PRE*"). Only if that showing is made may a court ask whether the petitioner subjectively

intended to injure a competitor through the process itself. *Id.* at 60-61. An objectively reasonable effort to litigate "cannot be sham regardless of subjective intent." *Id.* at 57.

*The AHCA protest.* CRISP calls the protest "meritless" and "unnecessary," CC ¶ 129(a), but identifies no factual or legal defect that would have made it objectively baseless. That Florida's administrative tribunal upheld the award does not suffice, particularly where, by CRISP's own account, the protest resulted in a one-year extension. *See* CC at 23 (¶ 15); *Baltimore Scrap Corp. v. David J. Joseph Co.*, 237 F.3d 394, 399 (4th Cir. 2001) ("Lawsuits are not objectively baseless simply because a litigant lost."); *PRE*, 508 U.S. at 60 n.5 (courts must "resist the understandable temptation to engage in post hoc reasoning by concluding that an ultimately unsuccessful action must have been unreasonable or without foundation") (cleaned up).

*This lawsuit.* The question is whether the lawsuit is objectively baseless, not whether any one claim in it might be: "If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under *Noerr*." *PRE*, 508 U.S. at 60; *see also Eden Hannon & Co. v. Sumitomo Tr. & Banking Co.*, 914 F.2d 556, 564-65 (4th Cir. 1990) (suit "hardly a sham" where plaintiff succeeded on one claim and lost others); *Avaya Inc., RP v. Telecom Labs, Inc.*, 838 F.3d 354, 413 (3d Cir. 2016) (rejecting claim-by-claim application of the sham exception). CRISP cannot plausibly allege that every count of the Amended Complaint is objectively baseless. The Court has allowed Audacious's unfair competition claim and its infringement claims on the '962 and '475 Patents to proceed, holding that Audacious's assignor estoppel allegations are plausible and rejecting CRISP's contrary legal arguments at the pleading stage. D.I. 39 at 27, 46-47. A suit that has survived a motion to dismiss in those respects is one an objective litigant could reasonably expect to succeed in.

*Even claim by claim, the theory fails.* CRISP relies on the Court's dismissal of the '194 Patent claims under § 101, alleging that "no reasonable litigant would have expected a different result." CC ¶ 130. That allegation restates the legal standard and pleads no supporting facts. The '194 Patent was presumed valid when asserted, 35 U.S.C. § 282(a), and its claims issued after the Examiner considered and withdrew a § 101 rejection under *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208 (2014). *See* D.I. 24-4 at 4-6, 42. That the Court later reached a different conclusion, after full briefing and a detailed analysis, D.I. 39 at 27-43, shows that eligibility was a contested legal question, not that the assertion was baseless when made. *See Tyco Healthcare Grp. LP v. Mut. Pharm. Co.*, 762 F.3d 1338, 1345 (Fed. Cir. 2014) ("Given the presumption of patent validity and the burden on the patent challenger to prove invalidity by clear and convincing evidence, it will be a rare case in which a patentee's assertion of its patent in the face of a claim of invalidity will be so unreasonable as to support a claim that the patentee has engaged in sham litigation.").

CRISP's allegations about the '962 and '475 Patents are equally conclusory. CRISP pleads no facts supporting its assertion that "no reasonable litigant could realistically expect the claims to withstand validity challenges." CC ¶ 131. And the Court has already held that assignor estoppel raises questions that cannot be resolved on the pleadings. D.I. 39 at 21-27. A claim the Court found sufficiently plausible to proceed cannot be one on which "no reasonable litigant could realistically expect success on the merits." *Tyco*, 762 F.3d at 1343 (citation omitted). CRISP's prediction that it will prevail on validity and estoppel is a merits argument, not an allegation of objective baselessness.

CRISP's licensing-based theory fares no better. CC ¶¶ 133-35. "[T]he mere existence of a possible . . . defense" does not make patent litigation a sham. *IGEN Int'l, Inc. v. Roche Diagnostics GmbH*, 335 F.3d 303, 312 (4th Cir. 2003). CRISP offers no facts explaining why

Audacious could not reasonably dispute that the alleged license covers the accused conduct; that is particularly so where CRISP itself terminated its long-standing license to the Asserted Patents. D.I. 24 ¶¶ 100-03; *see also id.* ¶¶ 7-8. CRISP's amended allegation that the license was "modified over time and by the actions of the parties," CC ¶ 133, further underscores that the scope of any license is a disputed question—the exact opposite of an objectively baseless claim.

**b. CRISP Does Not Plausibly Allege *Walker Process* Fraud**

"[T]he enforcement of a patent procured by fraud on the [PTO] may be violative of § 2 of the Sherman Act provided the other elements necessary to a § 2 case are present." *Walker Process Equip.*, 382 U.S. at 174. CRISP's theory rests on the same allegations as its inequitable conduct counterclaim. CC ¶ 156. Those allegations do not plausibly plead a material misrepresentation or omission, or a specific intent to deceive the PTO. *Infra* § IV.B. *Walker Process* fraud applies the same standards for intent and materiality as inequitable conduct, so a claim that fails to adequately plead inequitable conduct also necessarily fails this one. *Carefirst of Maryland, Inc. v. Johnson & Johnson*, 745 F. Supp. 3d 288, 312 n.10 (E.D. Va. 2024). And even a well-pleaded *Walker Process* theory would still require the other elements of a § 2 claim, including a dangerous probability of monopoly power, which CRISP does not plead. *Supra* § IV.A.1.

**4. Alternatively, CRISP's Antitrust Counterclaim and the Parties' Unfair Competition Claims Should Be Bifurcated and Stayed**

Should the Court allow CRISP's antitrust counterclaim to survive, Audacious respectfully requests that the Court bifurcate and stay CRISP's antitrust claim (Eighth Counterclaim) and the parties' unfair competition claims (Audacious's Count IV and CRISP's Seventh Counterclaim), pending resolution of the core patent infringement case.

Rule 42(b) permits a court to order separate trials "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). Courts have "broad discretion" in making

that decision. *Ziemkiewicz v. R+L Carriers, Inc.*, No. 13-cv-00438, 2013 WL 2299722, at *2 (D. Md. May 24, 2013). In patent cases, separating patent issues from antitrust issues is a "now-standard practice." *Walter Kidde Portable Equip., Inc. v. Universal Sec. Instruments, Inc.*, No. 08-cv-2202, 2009 WL 10682454, at *3 (D. Md. Apr. 6, 2009) (quoting *In re Innotron Diagnostics*, 800 F.2d 1077, 1084 (Fed. Cir. 1986)); *see also Audio MPEG, Inc. v. Dell Inc.*, 254 F. Supp. 3d 798, 805 (E.D. Va. 2017). Each Rule 42(b) consideration favors that course here.

*Economy.* CRISP's antitrust counterclaim is premised on "the objectively baseless assertion of the [Asserted Patents] and sham litigation" and on "inequitable conduct and fraudulent procurement." CC ¶ 156. Those theories depend on the validity, enforceability, and merit of the Asserted Patents, which the patent phase will decide. If Audacious prevails on infringement, validity, or enforceability, CRISP's sham-litigation theory is substantially undermined. The inequitable conduct counterclaim will be tried in the patent phase, and a *Walker Process* theory cannot succeed without the fraud finding that inequitable conduct requires. Resolving the patent claims first will therefore narrow or eliminate the antitrust phase. *See Walter Kidde*, 2009 WL 10682454, at *3. Trying everything together would lengthen the trial and increase costs for the parties and the Court. CRISP's amended allegation that the Asserted Patents would provide Audacious with 100% market share further supports resolving the patent issues first because that theory depends on the scope of the patent claims. CC ¶ 153.

CRISP's counterclaim also rests on Audacious's protest of the AHCA award and its communications to Florida providers. CC ¶ 129(a)-(c). Those allegations do not depend on the patent outcome. But whether communications asserting patent rights were wrongful turns largely on whether the patents are valid and enforceable. Those allegations are therefore best addressed after the patent phase.

*Distinct evidence for the unfair competition claims.* If the Court is inclined to bifurcate, Audacious is also amenable to bifurcating the parties' unfair competition claims. Both parties' unfair competition claims implicate a wider range of facts and discovery that are distinct and separate from the patent claims because "[w]hat constitutes unfair competition in a given case is governed by its own particular facts and circumstances." *G. W. Aru, LLC v. W. R. Grace & Co.-Conn.*, 344 F.R.D. 446, 450 (D. Md. 2023) (quotation marks and citation omitted). Audacious alleges that CRISP deceptively migrated Maryland users from Audacious's system to CRISP's CEND system and misrepresented CEND's capabilities to AHCA. D.I. 24 ¶¶ 106, 108-09. CRISP alleges that Audacious undermined the Florida transition to CEND through its AHCA protest and communications to providers. CC ¶ 129 (a)-(c). Proving these claims will require documents and witnesses concerning the Florida procurement, the Maryland migration, and events before and after them. The patent claims will largely concern the accused CRISP system. As noted above, Audacious is prepared to have its own Count IV tried in the second phase.

*Avoiding prejudice.* CRISP alleges that Audacious engaged in "sham litigation by which it asserts facially invalid patent claims." CC ¶ 129(d). Asking one jury to decide which claims are valid and whether asserting them was unlawful risks inviting the inference that enforcing the patents is itself wrongful. That risk is especially acute because petitioning is generally immune from antitrust liability under *Noerr-Pennington*. *See Intell. Ventures I LLC v. Cap. One Fin. Corp.*, 280 F. Supp. 3d 691, 697 n.6 (D. Md. 2017) ("Under the *Noerr-Pennington* doctrine, '[t]hose who petition government for redress,' including by filing suit in court, 'are generally immune from antitrust liability.'" (citations omitted)). Separate phases let the jury evaluate the patent claims on their own evidence, and let any second phase proceed with the patent outcome already known.

*Discovery on the antitrust counterclaim should also be stayed.* "District courts enjoy

substantial discretion in managing discovery." *Pac. Life Ins. Co. v. Wells Fargo Bank, NA*, 702 F. Supp. 3d 370, 376 (D. Md. 2023). In considering whether there is good cause to order a stay, courts in this district assess the following considerations: (1) the interests of judicial economy; (2) hardship and equity to the moving party if the action is not stayed; and (3) potential prejudice to the non-moving party. *MJ Enter. Holdings, Inc. v. Spiffy Franchising, LLC*, No. 1:24-CV-3194-RDB, 2025 WL 775515, at *2 (D. Md. Mar. 10, 2025). Each factor weighs in favor of a stay here. Bifurcation of the antitrust claim, and a stay of related discovery, would allow the parties to first focus on the patent issues that could drastically narrow the scope of the case. This provides judicial economy by potentially eliminating unnecessary discovery disputes and motions before this Court, and eliminates hardship to Audacious in time and expense incurred in discovery and motion practice. There is also no prejudice to CRISP if discovery on its antitrust claim is stayed. Accordingly, the Court should stay discovery on CRISP's antitrust claim. *Walter Kidde*, 2009 WL 10682454, at *3 (staying discovery on issues related only to antitrust claims); *DSM IP Assets, B.V. v. Honeywell Int'l, Inc.*, No. 23-cv-675, 2024 WL 639991, at *6 (D. Del. Feb. 15, 2024) (staying discovery on antitrust claim as it "would add significantly to the expense and delay in resolving the action, given the complexity associated with antitrust discovery.").

Accordingly, Audacious respectfully requests that the Court bifurcate the unfair competition and antitrust claims pending the resolution of the parties' patent claims and defenses.

### B. The Court Should Dismiss CRISP's Inequitable Conduct Defenses and Counterclaims (Seventh Affirmative Defense, Third and Sixth Counterclaims)

CRISP has not pleaded facts plausibly showing that the Asserted Patents are unenforceable for inequitable conduct. Because the defense sounds in fraud, a party asserting it must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Exergen*, 575 F.3d at 1327-28 (requiring the who, what, when, where, and how of the alleged

misrepresentation or omission before the PTO). Substantively, inequitable conduct requires that "information material to patentability was withheld from the PTO, or material misinformation was provided to the PTO, with the intent to deceive or mislead the patent examiner into granting the patent." *Outside the Box Innovations, LLC v. Travel Caddy, Inc.*, 695 F.3d 1285, 1290 (Fed. Cir. 2012) (citing *Therasense*, 649 F.3d at 1290-92). The materiality required is "but-for materiality." *Therasense*, 649 F.3d at 1291. And at the pleading stage, a party must allege facts "from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Exergen*, 575 F.3d at 1328-29.

### 1. CRISP Again Fails to Adequately Plead Any Material Representation or Omission

#### a. CRISP Has Again Not Pleaded Any False or Misleading Representation Regarding the Priority Date, and Its Omission Theory Fails as a Matter of Law

The pillar of CRISP's inequitable conduct theory is that Audacious "misrepresented and obscured the priority date" for the '962 and '475 Patents. CC ¶ 55. By CRISP's telling, Audacious created a "complex priority chain" that was "designed to obscure that the claims were not supported by the earliest applications." *Id.* ¶ 57. In its original counterclaim, CRISP alleged that Audacious made false statements to the PTO regarding the priority date of the Asserted Patents. D.I. 45 at 39 (¶ 79). CRISP has now abandoned that theory and amended its counterclaim to rely on purported "omissions and express misrepresentations." CC ¶ 64. But after a second bite at the apple, CRISP fails to identify any specific "express misrepresentation," as required under the heightened pleading standard set forth in *Exergen*. 575 F.3d at 1327-28. And CRISP's "omission" theory—that Audacious omitted "that none of the claims ultimately allowed was supported by the '332 Application [filed on March 15, 2013]," CC ¶ 66—fails as a matter of law because there is

no allegation that Audacious failed to follow the PTO rules on disclosing priority, and a dispute on priority is an issue for invalidity, not inequitable conduct.

Audacious was transparent with the PTO that the applications that issued as the asserted patents included new subject matter not contained in the original priority application filed in March 2013. Both applications claimed priority to the ’887 Application, which CRISP itself pleads was filed as a continuation-in-part, CC ¶ 76, and a continuation-in-part by definition “add[s] matter not disclosed in the prior-filed application.” M.P.E.P. § 201.08.[3] During prosecution of the ’962 Patent, Audacious submitted a statement under 37 C.F.R. § 1.78 (the “Rule 1.78 Statement”) informing the Examiner that:

> This nonprovisional application is filed on or after March 16, 2013 and claims the benefit of the filing date of a nonprovisional application filed prior to March 16, 2013, and also contains, or contained at any time, a claim to a claimed invention that has an effective filing date as defined in § 1.109 that is on or after March 16, 2013.

CC, Ex. O at 2 (D.I. 51-16 at 2). Because the application for the ’475 Patent was a continuation of the ’962 Patent application (CC ¶ 56 n.1), a Rule 1.78(d) statement was not required for that application. 37 C.F.R. § 1.78(d)(6)(i). In short, by including the 1.78(d) statement with the ‘962 Patent application, Audacious informed the Examiner that at least one claim in each application was *not* entitled to the earlier March 16, 2013, date.

The Rule 1.78 Statement tracks the language of 37 C.F.R. § 1.78(d)(6), which governs “transition applications”: applications filed on or after March 16, 2013, that claim the benefit of an application filed before that date and contain at least one claim with an effective filing date on

[3] The M.P.E.P. is the official guide used by the USPTO to direct patent examiners and practitioners on U.S. patent laws, rules, and procedures, available online at https://www.uspto.gov/web/offices/pac/mpep/index.html. The Court may take judicial notice of provisions of the M.P.E.P. *See, e.g.*, *Asetek Holdings, Inc. v. CoolIT Sys., Inc.*, No. C-12-4498 EMC, 2013 WL 6326619, at *4 (N.D. Cal. Dec. 3, 2013).

or after it. *See* M.P.E.P. § 210. As the M.P.E.P. explains, an "'[a]pplicant is not required to identify how many or which claims in the transition application have an effective filing date on or after March 16, 2013, or identify the subject matter in the transition application not also disclosed in the priority or benefit application. Applicant is only required to state that there is a claim in the transition application that has an effective filing date on or after March 16, 2013.'" *Id.* Audacious followed that rule, and CRISP does not allege otherwise.

In an attempt to salvage its inequitable conduct theory, CRISP has lodged a new allegation that "Rule 1.78(d)(6) required only a generic statement; Rule 1.56 independently required Audacious to disclose information it knew to be material, and compliance with the former did not discharge the latter." CC ¶ 66. This is a legal conclusion, not an allegation of fact, and it is wrong as a matter of law. The Federal Circuit has soundly rejected the proposition that Rule 1.56 applies in evaluating inequitable conduct. *Therasense*, 649 F.3d at 1294-95 ("Because Rule 56 sets such a low bar for materiality, adopting this standard would inevitably result in patent prosecutors continuing the existing practice of disclosing too much prior art of marginal relevance and patent litigators continuing to charge inequitable conduct in nearly every case as a litigation strategy.").

Without a specific misrepresentation or a cognizable omission, CRISP's real complaint is that the issued claims lack written description support in the original March 2013 application. That is, at most, a dispute about invalidity, which CRISP is estopped from raising under assignor estoppel. It is not inequitable conduct. The Examiner had everything needed to determine the priority date, including the earlier applications and the Rule 1.78 Statement. *See* CC, Ex. O. As another court put it, "[w]ithout some allegation of misrepresented fact or material omission in the written description made or withheld to allow the claims to issue, there is no fraud." *Impact Engine, Inc. v. Google LLC*, No. 19-cv-01301, 2020 WL 3414627, at *2 (S.D. Cal. June 22, 2020)

(rejecting inequitable conduct theory "that claims of the continuation patents . . . are not supported by their common specification"). CRISP likewise alleges no misrepresented fact, so its inequitable conduct theory should be dismissed. *See Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1310-11 (N.D. Ga. 2003) (rejecting inequitable conduct based on allegations regarding priority date where the "examiner has before him everything necessary to render a decision on the issue of priority," and "[t]hus, there is no material misrepresentation based on [the patentee's] claim for a 1979 priority date"). If CRISP's priority theory was cognizable, then nearly all defendants would raise inequitable conduct when faced with a patent with a disputed priority date, reviving the "absolute plague" of inequitable conduct allegations that the Federal Circuit sought to prevent. *Therasense*, 649 F.3d at 1289 ("Left unfettered, the inequitable conduct doctrine has plagued not only the courts but also the entire patent system.").

**b. CRISP Has Again Failed to Plead Sufficient Facts to Demonstrate That the Alleged Priority Date Omission Was Material to Patentability**

CRISP alleges that Audacious's purported omission about the priority date was material because the commercially available ENS system would have rendered the pending claims unpatentable. *See* CC ¶¶ 62-63. That theory fails for three reasons.

*First*, the prosecution record undercuts CRISP's theory, because the ENS system and other commercial systems were disclosed to the Examiner as prior art. During prosecution of the '962 Patent, Audacious submitted a declaration from inventor Scott Afzal which stated that:

> Audacious Inquiry has successfully developed and implemented a healthcare alerting platform and service called ENS (Encounter Notification System or Service) for several large, state-wide clients, including Maryland, Florida, Utah, and Delaware, starting in August 2012 by the inventors of application 14/142,625. . . . The ENS as implemented functions in accordance with claim 1 in the 14/142,625 application[.]

CC, Ex. R at A58. The Examiner thus knew of ENS and its 2012 commercial use, yet did not reject the claims over it. CC ¶ 67; *see also* M.P.E.P. § 211.05 ("if the claims of a continuation-in-part application which are only entitled to the continuation-in-part filing date 'read on' published, publicly used or sold, or patented subject matter (e.g., as in a genus-species relationship) a rejection under 35 U.S.C. 102 would be proper."). The specification of the 2013 priority application[4] also told the Examiner about related systems, noting that "Maryland's CRISP network" is an example of a "related art health information exchange," Ex. 4 at [0001], and that the inventors' system had advantages over "existing encounter notification systems," *id.* at ¶ [0016].

In its original counterclaim, CRISP failed to acknowledge that ENS was disclosed to the Examiner, D.I. 45 at 39 (¶ 80), as pointed out in Audacious' original motion to dismiss, D.I. 47-1 at 30-31. CRISP now acknowledges that ENS was disclosed, but according to CRISP, it was disclosed "only as the inventors' own commercial embodiment of the claimed invention, never as prior art." CC ¶ 67. That is simply not true, as shown in Ex. R to CRISP's counterclaims, which explicitly states (shown above) that ENS was implemented in August 2012, before the earliest priority date of March 2013. CC, Ex. R at A58. This Court should ignore CRISP's inaccurate allegation that is contradicted by the exhibit in the record. *Goines*, 822 F.3d at 166 (recognizing the exhibit-prevails rule, which provides that "in the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails") (citation omitted).

*Second*, CRISP's allegations are conclusory. CRISP asserts only that "[u]nder the claims' true effective filing date, Audacious's own ENS system was invalidating prior art," CC ¶ 62, without identifying which version, when that version became prior art, or whether it included the

---

[4] The Court may consider the 2013 priority application because it is integral to CRISP's counterclaim, *see* CC ¶ 55, and its authenticity is not in dispute. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016).

claimed features. A party alleging inequitable conduct based on prior art must "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found—i.e., the 'what' and 'where' of the material omissions." *Exergen*, 575 F.3d at 1329 (citation omitted). Without those facts, CRISP cannot plausibly allege that the PTO would not have allowed the claims but for the alleged misrepresentation. *See Therasense*, 649 F.3d at 1291. Just calling a system "prior art" does not suffice. *See Prowess, Inc. v. RaySearch Lab'ys, AB*, 953 F. Supp. 2d 638, 650-51 (D. Md. 2013).

*Third*, to the extent CRISP contends that some other version of ENS was material, it does not allege "why" that information was not cumulative of what the Examiner already had. *Exergen*, 575 F.3d at 1329-30; *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, No. 12-cv-441, 2014 WL 2622240, at *1 (D. Del. June 11, 2014) ("The pleading must also show that the omitted information is not cumulative of the information already on the record by identifying the particular claim limitations that are absent from the record.").

### 2. CRISP Again Fails to Adequately Plead That Any Person Who Owed a Duty of Candor to the PTO Acted With an Intent To Deceive the PTO

CRISP must also plead facts showing that a specific individual who owed a duty of candor to the PTO knew of material information, or of the falsity of a material misrepresentation, and withheld or misrepresented it with a specific intent to deceive the PTO. *Exergen*, 575 F.3d at 1328-29. CRISP's allegations do not meet that standard.

CRISP's theory is that Mr. Brandt, Mr. Afzal, and Mr. Alley intended to deceive the PTO by "procur[ing] patent rights to which [Audacious] was not entitled" because the claims purportedly did not have written description support in the original application. CC ¶¶ 72, 80. "This assertion does not support a claim of fraudulent intent to deceive the PTO," as "[t]here is only disagreement that the examiner, who was in full possession of the written description,

wrongly concluded that the requirements for § 112 were met when the claims were allowed." *Impact Engine*, 2020 WL 3414627, at *2.

CRISP's allegation that the purportedly "complex priority" chain is evidence of intent to deceive also fails. CC ¶¶ 57, 76. As one court stated, in response to an allegation that "a series of continuation and continuation-in-part patent applications and the histories reveal a complex and lengthy effort . . . to avoid a multitude of prior art references," such allegations "fall far short" of alleging intent to deceive given that "[m]any patent prosecutions involve the submission of continuation applications with complex histories." *Accordant Energy, LLC v. Vexor Tech., Inc.*, No. 17-cv-411, 2017 WL 4169635, at *4 (N.D. Ohio Sept. 19, 2017).

Furthermore, CRISP's allegations fail to adequately plead intent to deceive for the following additional reasons.

*Mr. Brandt.* CRISP's allegations about Audacious's Managing Partner, Mr. Brandt, fail at the threshold because CRISP pleads no facts showing that he was "substantively involved" in prosecuting the '962 and '475 Patents. Whether "the individual involved in the alleged misconduct owed a duty of candor to the PTO" is a "threshold inquiry in the inequitable conduct analysis." *Avid Identification Sys., Inc. v. Crystal Imp. Corp.*, 603 F.3d 967, 976 (Fed. Cir. 2010). That duty extends only to "(1) each named inventor, (2) each attorney or agent that prepares or prosecutes the application, and (3) every other person who is substantively involved in the preparation or prosecution of the application and who is associated with the inventor or assignee." *Id.* at 973 (citing 37 C.F.R. § 1.56(c)). Involvement is "substantive" when it "relates to the content of the application or decisions related thereto" and is not "wholly administrative or secretarial in nature." *Id.* at 974 (citation omitted). Mr. Brandt is not a named inventor or an attorney, and CRISP's only allegation of involvement is that he signed a Power of Attorney form submitted to the PTO. CC

¶ 65. Appointing counsel is an administrative act that says nothing about the content of the applications or any decision about them. CRISP's allegations about Mr. Brandt therefore cannot support its inequitable conduct theory. *See EIS, Inc. v. WOW Tech Int'l GmbH*, No. 19-cv-1227, 2020 WL 7027528, at *9-11 (D. Del. Nov. 30, 2020) (dismissing inequitable conduct claim where complaint failed to plead sufficient facts to show that a CEO was "substantively involved in the preparation or prosecution of the application"); *EMC Corp. v. Pure Storage, Inc.*, No. 13-cv-1985, 2014 WL 5795557, at *1-2 (D. Del. Nov. 5, 2014) (striking inequitable conduct defense that failed to plead sufficient facts to show that lawyers named on a power of attorney form were substantively involved in prosecution).

*Mr. Brandt and Mr. Afzal.* CRISP alleges that Mr. Brandt and Mr. Afzal "knew that the claims of the '962 and '475 Patents were not entitled to a March 15, 2013 priority date because the earlier applications did not provide written-description support for the claimed limitations." CC ¶ 78. That allegation fails for two reasons. First, the allegation of actual knowledge is conclusory. It depends on the premise that Mr. Brandt and Mr. Afzal knew that the earlier applications lacked written description support, but CRISP pleads no facts showing that either of the men, neither of whom is alleged to be a patent attorney, held that view or understood the legal standard for written description and priority. Second, CRISP does not allege facts showing that either man even knew what was said to the PTO about priority. *See Bradley v. Applied Marine Sys. LLC*, No. 13-cv-03941, 2014 WL 1648726, at *4 (N.D. Cal. Apr. 23, 2014) (where inequitable conduct "turns on the effective filing date," the pleader "must allege facts that support a reasonable inference" that the individual knew the true effective filing date); *Senju Pharm. Co. v. Apotex, Inc.*, 921 F. Supp. 2d 297, 308 (D. Del. 2013) (no reasonable inference where no facts showed that "any individual with knowledge of the written description also had knowledge of the falsity of any

material misrepresentation" and acted with intent to deceive). Moreover, Audacious's Rule 1.78 Statement for the '962 Patent told the Examiner that at least one claim had a later effective filing date, which is the opposite of what a party intending to deceive the PTO would do. *See* CC ¶ 66; *id.*, Ex. O at 2.

*Mr. Alley.* CRISP's allegations about Audacious's prosecuting attorney, Mr. Alley, also fail. CRISP alleges that he had an intent to deceive by pursuing a "contradictory strategy of claiming narrow constructions to overcome prior art while asserting broad priority." CC ¶ 80. As shown above, however, Audacious never asserted broad priority for the issued claims. *See supra* § IV.B.1(a). And attorney argument about prior art or claim construction cannot support an inequitable conduct claim in any event, because it is submitted to an Examiner who is "free to accept or reject the patentee's arguments distinguishing its invention from the prior art." *Illumina, Inc. v. BGI Genomics Co.*, No. 19-cv-03770, 2020 WL 571030, at *2 (N.D. Cal. Feb. 5, 2020) (quoting *Innogenetics, N.V. v. Abbott Lab'ys*, 512 F.3d 1363, 1379 (Fed. Cir. 2008)). CRISP's allegations about Mr. Alley therefore cannot support its inequitable conduct theory.

### C. The Court Should Strike CRISP's Patent Misuse Defense (Tenth Affirmative Defense)

A defense of patent misuse only applies if a patent holder has acted to "impermissibly broaden[] the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir. 1986) (citation omitted). The classic examples of patent misuse are (i) "tying" arrangements, in which a license to a patent is conditioned on purchase of a separate, staple good, and (ii) certain arrangements requiring post-expiration royalties. *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 869 (Fed. Cir. 1997). This case presents neither, and the Federal Circuit has cautioned that "the body of misuse law and

precedent need not be enlarged into an open-ended pitfall for patent-supported commerce." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1373 (Fed. Cir. 1998).

In its original patent misuse defense, CRISP failed to allege any specific conduct amounting to misuse. D.I. 45 at 18 (¶ 18). CRISP's second attempt fares no better. CRISP adds two new allegations, but neither allegation is cognizable as patent misuse.

First, CRISP contends that Audacious "us[ed] an unsupported claim of priority to March 15, 2013 . . ., effectively extending patent exclusivity to public-domain technology." CC at 20 (¶ 22). This allegation is premised on conduct that occurred before the patents issued, but "[i]mpermissible broadening of a patent *grant* cannot occur before that patent is granted." *In re Aflibercept Pat. Litig.*, No. 24-cv-3103, 2026 WL 1961865, at *8 (N.D.W. Va. July 7, 2026).

Second, CRISP contends that Audacious "assert[ed] the patents against CRISP Maryland's activities within its perpetual, paid-up license." CC at 20 (¶ 22). Even if true (which Audacious disputes), that is not patent misuse. Under 35 U.S.C. § 271(d)(3), a patent owner will not be deemed guilty of patent misuse by seeking "to enforce his patent rights against infringement or contributory infringement." At most, CRISP raises a dispute on interpretation of the license, but not patent misuse.

## V. CONCLUSION

For all the reasons set forth herein, CRISP's antitrust attempted monopolization counterclaim (Eighth Counterclaim), inequitable conduct counterclaims (Third and Sixth Counterclaims) and unenforceability defense (Seventh Affirmative Defense), and patent misuse defense (Tenth Affirmative Defense) should be dismissed or struck.

Dated: November 20, 2026

Respectfully submitted,

*/s/ Brian T. Burgess*

Brian T. Burgess (Bar No. 19251)
William C. Jackson (*pro hac vice* forthcoming)
**GOODWIN PROCTER LLP**
1900 N Street, N.W.
Washington, D.C. 20036-1612
Telephone: (202) 346-4444
Fax: (202) 346-4444
WJackson@goodwinlaw.com
BBurgess@goodwinlaw.com

Srikanth K. Reddy (*pro hac vice*)
Kevin J. DeJong (*pro hac vice*)
Anna Zhou (*pro hac vice* forthcoming)
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Telephone: (617) 570-1000
Fax: (617) 523-1231
SReddy@goodwinlaw.com
KDeJong@goodwinlaw.com
AZhou@goodwinlaw.com

*Attorneys for Plaintiffs Audacious Inquiry LLC and Collective Medical Technologies, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on November 20, 2026.

*/s/ Brian T. Burgess*
Brian T. Burgess